**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KATHARINE ANN FREDRIKSEN

                Plaintiff,

v.

CONSOL ENERGY INC.

                Defendant.

Civil Action No. 2:18-CV-00379

Honorable Marilyn J. Horan
United States District Judge

**CONSOL ENERGY INC.'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 3

STANDARD OF REVIEW ..................................................................................... 5

ARGUMENT ........................................................................................................... 6

I.   PLAINTIFF CANNOT ESTABLISH THAT CONSOL VIOLATED EITHER
     THE EQUAL PAY ACT OR TITLE VII PRIOR TO NOVEMBER 28, 2017
     BECAUSE SHE WAS NOT EMPLOYED BY IT AT THAT TIME. ............................. 6

II.  EVEN ASSUMING, ARGUENDO, THAT CONSOL COULD BE LIABLE FOR
     PLAINTIFF'S CLAIMS PRIOR TO NOVEMBER 28, 2017, PLAINTIFF
     CANNOT ESTABLISH THAT SHE WAS PAID DISPARATE WAGES DUE
     TO HER GENDER IN VIOLATION OF THE EPA OR TITLE VII. ............................ 7

     A.   Plaintiff Cannot Establish She Was Paid Less Than Male Employees
          Performing "Substantially Equal" Work. ................................................. 9

          1.   Neither Mr. Khani nor Mr. McCaffrey Performed "Substantially
               Equal" Jobs, a Fact Conceded by Plaintiff. ................................. 9

          2.   Plaintiff Did Not Perform a "Substantially Similar" Job to Louis
               Barletta, Plaintiff's Predecessor in Her Safety Role, Because the
               Coal Business Was Substantially Reduced by the Time She
               Assumed the Safety Responsibilities. ...................................... 12

          3.   Nicholas DeIuliis Did Not Perform "Substantially Equal" Work
               Because He Worked for a Different Company and Had Different
               Responsibilities. ................................................................ 14

     B.   Even If Plaintiff Could Establish Disparate Pay to a Male Employee
          Performing Substantially Equal Work, Defendant Has Met Its Burden of
          Establishing an Affirmative Defense. ................................................... 16

     C.   Plaintiff Has Not Offered Sufficient Evidence of Pretext for Her Title VII
          Claim for Wage Discrimination. .......................................................... 18

III. PLAINTIFF CANNOT ESTABLISH THAT SHE WAS RETALIATED
     AGAINST FOR HER ALLEGED COMPLAINTS ABOUT HER
     COMPENSATION IN VIOLATION OF THE EPA OR TITLE VII. ........................... 19

     A.   Plaintiff Cannot Establish a Prima Facie Case of Retaliation. ........................ 20

          1.   Plaintiff's Complaints Do Not Rise to the Level of "Protected
               Activity." ........................................................................ 20

          2.   Plaintiff Cannot Show Any Causal Connection Between Her
               Informal Complaints and Her Termination. ................................. 23

     B.   Defendant Had a Legitimate, Non-Discriminatory Reason for Terminating
          Plaintiff. ....................................................................................... 26

# TABLE OF CONTENTS
(continued)

**Page**

C.   Plaintiff Cannot Establish that Defendant's Reason for Termination Was Pretextual. ........................................................................................... 28

    1.   Plaintiff Has Not Offered Any Evidence That the Proffered Reason for Plaintiff's Termination – For Financial Reasons – Cannot Be Believed. ............................................................................................ 28

    2.   Plaintiff Has Not Offered Any Evidence That Discrimination Was More Likely Than Not the Motivating Cause of Her Termination.......... 30

IV.   PLAINTIFF CANNOT ESTABLISH HER TITLE VII CLAIM THAT SHE WAS TERMINATED BECAUSE OF HER GENDER. ......................................... 33

A.   Plaintiff Has Not Offered Any Direct Evidence of Gender Discrimination. ....... 33

B.   Plaintiff Cannot Establish a Claim of Gender Discrimination through Indirect Evidence Under McDonnell Douglas. ................................................... 34

CONCLUSION ................................................................................................................ 35

CERTIFICATE OF SERVICE ......................................................................................... 37

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aguirre v. SBC Comms., Inc.*,
  No. H-05-3198, 2007 U.S. Dist. LEXIS 51687 (S.D. Tex. July 17, 2007) .............................7

*Akins-Brakefield v. Philip Envtl. Servs. Corp.*,
  No. 08–cv–710–DRH, 2010 WL 1032627 (S.D. Ill. Mar. 17, 2010) .......................................7

*Allen v. PetSmart, Inc.*,
  512 F. Supp. 2d 288 (E.D. Pa.2007) .....................................................................................29

*Andersen v. Mack Trucks, Inc.*,
  118 F. Supp. 3d 723 (E.D. Pa. 2015) ....................................................................................27

*Anderson v. Bell Atlantic Tel. Co.*,
  No. 85-1057, 1986 U.S. Dist. LEXIS 30038 (E.D. Pa. Jan. 27, 1986 .....................................7

*Anderson v. Boeing Co.*,
  No. 15-3073, 2016 U.S. Dist. LEXIS 191074 (E.D. Pa. Aug. 30, 2016) ...............................29

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)........................................................................................................5, 6

*Barber v. CSX Distrib. Servs.*,
  68 F.3d 694 (3d Cir. 1995)...................................................................................................22

*Blount v. Alabama Coop. Extension Serv.*,
  869 F. Supp. 1543 (1994) ...................................................................................................17

*Brobst v. Columbus Servs. Int'l*,
  761 F.2d 148 (3d Cir. 1985)...................................................................................................9

*Butia v. Bank of N.Y. Mellon*,
  No. 12-1248, 2014 U.S. Dist. LEXIS 111677 (W.D. Pa. 2014) (Kelly, J.)............................34

*Churchill v. Int'l Bus. Machines, Inc.*,
  759 F. Supp. 1089 (D.N.J. 1991) ..........................................................................................8

*Clarkson v. Septa*,
  No. 14-2510, 2016 WL 1637279 (E.D. Pa. Apr. 25, 2016)....................................................24

*Corning Glass Works v. Brennan*,
  417 U.S. 188 (1974)............................................................................................................17

*Davis v. Comcast Corp., Inc.*,
  Case No. 1:13-cv-01513, 2015 WL 11111066 (E.D. Va. Jan. 26, 2015) ................................9

*Doe v. Winter*,
  No. 04-2170, 2007 WL 1074206 (M.D. Pa. Apr. 5, 2007) ......................................................24

*Drury v. Waterfront Media, Inc.*,
  No. 05 Civ. 10646, 2007 U.S. Dist. LEXIS 18435 (S.D.N.Y. Mar. 8, 2007)..........................11

*Emswiler v. Great Eastern Resort Corp.*,
  602 F. Supp. 2d 737 (W.D. Va. 2017) ...................................................................................14

*Eshelman v. Magee-Womens Hosp. of Univ. of Pittsburgh Med. Ctr.*
  No. 02:03CV1990, 2005 WL 2546445 (W.D. Pa. 2005) ........................................................27

*Evans v. D.E. Foxx & Assocs.*,
  No. 11-261, 2013 U.S. Dist. LEXIS 104375 (S.D. Ohio July 24, 2013)................................23

*Farrell v. Planters Lifesavers Co.*,
  22 F. Supp. 2d 372 (D.N.J. 1998), *rev'd on other grounds,* 206 F.3d 271
  (D.N.J. 1998).......................................................................................................................8, 23

*Fayson v. Kaleida Health, Inc.*,
  No. 00-cv-0860E(Sr), 2002 U.S. Dist. LEXIS 18591 (W.D.N.Y. Sept. 18,
  2002) ........................................................................................................................................19

*Fuentes v. Perskie*,
  32 F.3d 759 (3d Cir. 2008).................................................................................28, 29, 30, 32

*Fuller v. Global Custom Decorating*,
  No. 3:2004-285, 2007 U.S. Dist. LEXIS 473 (W.D. Pa. Jan. 5, 2007)
  (Gibson,J.)...................................................................................................................................8

*Galarraga v. Marriott Emps. Fed. Credit Union*,
  No. JFM-94-1986, 1996 U.S. Dist. LEXIS 8987 (D. Md. Apr. 24, 1995) .............................11

*Glass v. First Judicial Dist. of Pa.*,
  No. 16-5449, 2017 U.S. Dist. LEXIS 121322 (E.D. Pa. Aug. 2, 2017) .................................22

*Grant v. New York Times Co.*,
  No. 16-cv-03175 (PKC), 2017 U.S. Dist. LEXIS 149403 (S.D.N.Y. Sept. 14,
  2017) ........................................................................................................................................32

*Hook v. Ernst & Young*,
  28 F.3d 366 (3d Cir. 1994)......................................................................................................34

*Isler v. Keystone Sch. Dist.*,
   No. 07-cv-1335, 2008 U.S. Dist. LEXIS 65902 (W.D. Pa. Aug. 12, 2008)
   (Schwab, J.) ................................................................................................................22

*Iyer v. Everson*,
   382 F. Supp. 2d 749 (E.D. Pa. 2005) ...........................................................................25

*Jalil v. Avdel Corp.*,
   873 F.2d 701 (3d Cir. 1989) ........................................................................................20

*Johnson v. Fed. Express Corp.*,
   604 Fed. Appx. 183 (3d Cir. 2015) ................................................................................8

*Jones v. WDAS FM/AM Radio Stations*,
   74 F. Supp. 2d 455 (E.D. Pa. 1999) ......................................................................27, 35

*Kaufmann v. Eppstein Uhen Architects, Inc.*,
   No. 13–cv–0674, 2015 WL 520616 (E.D. Wisc. 2015) ...............................................32

*Kier v. Lackland & Sons, LLC*,
   72 F. Supp. 3d 597 (E.D. Pa. 2014) .................................................................21, 24, 25

*Killen v. Northwestern Human Servs.*,
   No. 06-4100, 2007 U.S. Dist. LEXIS 66602 (E.D. Pa. Sept. 7, 2007) .......................25

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*,
   503 F.3d 217 (3d Cir. 2007) ........................................................................................20

*In re Liberty Nat'l Ins. Cases*,
   No. 2:99-cv-3262-UWC, 2006 WL 8436814 (N.D. Ala. Mar 31, 2006) ....................14

*Martin v. Healthcare Bus. Res.*,
   No. 00–3244, 2002 WL 467749 (E.D. Pa. Mar. 26, 2002) ..........................................29

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973) .............................................................................8, 19, 33, 34

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988) ....................................................................................................18

*Meeks v. Computer Assocs. Int'l*,
   15 F.3d 1013 (11th Cir. 1994) .......................................................................................8

*Moore v. City of Philadelphia*,
   461 F.3d 331 (3d Cir. 2006) ........................................................................................20

*Moore v. Shinseki*,
   No. 10-4463, 2011 U.S. Dist. LEXIS 123213 (E.D. Pa. Oct. 25, 2011) ....................25

*Motto v. Wal-Mart Stores East, LP*,
563 Fed. Appx. 160 (3d Cir. 2014)......................................................................................25

*Nesselrotte v. Allegheny Energy, Inc.*,
No. 06-1390, 2009 U.S. Dist. LEXIS 207677 (W.D. Pa. Mar. 16, 2009)
(Fischer, J.)........................................................................................................................34

*Perry v. Harvey*,
332 Fed. Appx. 728 (3d Cir. 2009)......................................................................................22

*Prise v. Alderwoods Group, Inc.*,
657 F. Supp. 2d 564 (W.D. Pa. 2009) (Conti, J.)..........................................................16, 29

*Puchakjian v. Twp. of Winslow*,
804 F. Supp. 2d 288 (D.N.J. 2011) ................................................................................11, 17

*Randall v. Rolls-Royce Corp.*,
742 F. Supp. 2d 974 (N.D. Ind. 2010) ...........................................................................12, 24

*Red v. Potter*,
211 Fed. Appx. 82 (3d Cir. 2006) .......................................................................................19

*Rhoades v. YWCA of Greater Pittsburgh*,
No. 09-0261, 2010 U.S. Dist. LEXIS 75426 (W.D. Pa. July 27, 2010) .....................17, 30, 32

*Robinson v. City of Pittsburgh*,
120 F.3d 1286 (3d Cir. 1997)..............................................................................................25

*Rowland v. Certainteed Corp.*,
No. 08-3671, 2009 U.S. Dist. LEXIS 43706 (E.D. Pa. May 21, 2009).................................14

*Sampath v. Concurrent Techs. Corp.*,
No. 3-cv-264, 2008 U.S. Dist. LEXIS 25715 (W.D. Pa. Mar. 31, 2008)
(Gibson, J.)............................................................................................................20, 21, 23, 24

*Sanders v. Tikras Tech. Solutions Corp.*,
No. 1:16-cv-00985, 2017 WL 3123660 (E.D. Va. July 21, 2017)........................................14

*Scheske v. Univ. of Mich. Health Sys.*,
59 F. Supp. 3d 820 (E.D. Mich. 2014)................................................................................23

*Shine v. Bayonne Bd. of Educ.*,
633 Fed. Appx. 820 (3d Cir. 2015)......................................................................................18

*Simpson v. Kay Jewelers*,
142 F.3d 639 (3d Cir. 1998)..........................................................................................29, 30

*Sims-Fingers v. City of Indianapolis*,
    493 F.3d 768 (7th Cir. 2007) ................................................16

*Slagle v. County of Clarion*,
    435 F.3d 262 (3d Cir. 2006).................................................20

*Smith v. ABF Freight Sys.*,
    No. 04-2231, 2007 U.S. Dist. LEXIS 79801 (M.D. Pa. Oct. 29, 2007) .................................25

*Stanziale v. Jargowsky*,
    200 F.3d 101 (3d Cir. 2000).................................................8

*Stopka v. Alliance of Am. Insurers*,
    141 F.3d 681 (7th Cir. 1998) ................................................11

*Tenkku v. Normandy Bank*,
    348 F.3d 737 (8th Cir. 2003) ................................................13

*Warfield v. SEPTA*,
    460 Fed. Appx. 127 (3d Cir. 2012).......................................22, 23, 24

*Waters v. Turner, Wood & Smith Ins. Agency, Inc.*,
    874 F.2d 797 (11th Cir. 1989) ................................................9

*Weightman v. Bank of N.Y. Mellon Corp.*,
    772 F. ................................................32

*Weightman v. Bank of N.Y. Mellon Corp.*,
    772 F. Supp. 2d 693 (W.D. Pa. 2011).......................................33, 34

*Wildi v. Alle-Kiski Med. Ctr.*,
    659 F. Supp. 2d 640 (W.D. Pa. 2009) (Conti, J.)................9, 14, 19, 20, 27, 28, 29, 30, 31, 32

*Williams-McCoy v. Starz Encore Group*,
    No. 02-5125, 2004 U.S. Dist. LEXIS 2600 (E.D. Pa. Feb. 5, 2004) .......................................31

*Wilson v. Firestone Tire & Rubber Co.*,
    932 F.2d 510 (6th Cir. 1991) ................................................34

*Woodson v. Scott Paper Co.*,
    109 F.3d 913 (3d Cir. 1997)................................................23, 26

*Zmyslo v. NCR Corp.*,
    No. C–3–89–501, 1992 WL 1258521 (S.D. Ohio May 20, 1992).........................................17

## Other Authorities

Fed. R. Civ. P. 56(c) ................................................5

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATHARINE ANN FREDRIKSEN | |
| Plaintiff, | Civil Action No. 2:18-CV-00379 |
| v. | Honorable Marilyn J. Horan<br>United States District Judge |
| CONSOL ENERGY INC. | |
| Defendant. | |

## CONSOL ENERGY INC.'S MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Defendant CONSOL Energy Inc. ("CONSOL") files this Memorandum in support of its

Motion for Summary Judgment (the "Motion") and states as follows:

## INTRODUCTION

In this case, Plaintiff asserts claims for violations of the Equal Pay Act ("EPA") and/or

Title VII by alleging: (1) she was paid less than certain male senior executives between December

2014 and December 2017; (2) she was terminated because she complained that her compensation

was not adjusted when she was appointed the President of CONSOL Mining Corporation, a

wholly-owned subsidiary of CNX Resources Corporation ("CNX"); and (3) she was terminated

because of her gender.  None of these claims should survive summary judgment.

First, Plaintiff claims that she was paid less than certain male senior executives, whom

Plaintiff admits held different positions than she with little or no overlapping responsibilities.  As

an initial matter, CONSOL did not exist as an independent company and was not Plaintiff's

employer prior to November 28, 2017, when it was spun off from CNX, and CONSOL cannot be

liable for any alleged wage disparity prior to that date.  Moreover, Plaintiff cannot establish that any of her alleged comparators performed "substantially similar" work.  The mere fact that these alleged comparators are also senior executives does not render them "substantially similar." Neither the EPA nor Title VII requires equal pay for employees performing different work, and the Court should decline Plaintiff's invitation to extend the application of these statutes to the compensation of executives with disparate responsibilities.

Second, Plaintiff claims she was terminated in retaliation for her alleged complaints about the failure to adjust her compensation after she was appointed President of CONSOL Mining, a subsidiary of CNX.  Such claims, however, are belied by Plaintiff's admission in a text message that she does not think she was let go because she asked for pay raise.  Based on this admission alone, Plaintiff's retaliation claims should be dismissed.   In any event, Plaintiff's alleged compensation complaints fall well short of "protected activity" because: (1) no reasonable person could believe CNX was engaged in discriminatory conduct because it determined not to adjust the compensation of ***any*** of the officers of CONSOL Mining until after the spinoff from CNX; and (2) Plaintiff never explicitly complained she was being discriminated on the basis of her gender. Further, Plaintiff cannot show that the ultimate decision-makers for her termination – the independent members of the Board of Directors – were aware of her alleged complaints, let alone that they were motivated by discriminatory animus.  As such, Plaintiff cannot make out a *prima case* for retaliation.  Even if she could, CONSOL has offered a non-discriminatory reason for her termination, namely, that it eliminated the separation position of President for financial reasons. Plaintiff cannot show that this explanation is mere pretext.

Third, Plaintiff claims she was terminated due to her gender.  Plaintiff has no direct evidence of discrimination and cannot show that the circumstances of her termination give rise to

an inference of discrimination, nor can she show that the reason for her termination is pretext.

For the foregoing reasons, CONSOL requests that its Motion for Summary Judgment be granted and that the Court dismiss all of the claims in Plaintiff's Amended Complaint.

## STATEMENT OF FACTS

Prior to November 28, 2017, CNX Resources Corporation ("CNX"), then known as CONSOL Energy, Inc. ("CEI"), consisted of two separate business lines: (1) a natural gas exploration and production ("E&P") business; and (2) a coal mining business. (SOF ¶ 6).[1] Between January 2011 and November 28, 2017, Plaintiff was an employee of CNX (then known as CEI). (SOF ¶ 4). Between 2011 and 2015, Plaintiff served as the Senior Vice President of Environmental Strategy and Regulatory Affairs. (SOF ¶ 19). Between August 2015 and June 2016, Plaintiff served as the Senior Vice President of Health, Safety, and Environmental Affairs. (SOF ¶ 23). Between June 2016 and July 2017, Plaintiff served as the Senior Vice President for Diversified Units and Environmental Affairs. (SOF ¶ 25).

In January 2017, CNX announced its intention to "spin off" the coal business. (SOF ¶ 12). In June 2017, CNX formed CONSOL Mining Corporation ("CONSOL Mining"), a wholly-owned subsidiary, to hold CNX's coal business until the spinoff. (SOF ¶ 1). In early July 2017, CNX Chief Executive Officer ("CEO") Nicholas DeIuliis offered James Brock the position of CEO of CONSOL Mining and Plaintiff the position of President of CONSOL Mining. (SOF ¶ 42). Upon being offered the CEO position, Mr. Brock told Mr. DeIuliis that he did not believe a President's position was necessary. (SOF ¶ 43). Later that summer, after Mr. DeIuliis had asked William Powell to serve as the chairman of CONSOL after the spinoff, Mr. Brock expressed this same view to Mr. Powell, and Mr. Powell agreed. (SOF ¶¶ 52-54). At that time, however, CONSOL did not

---

[1] "SOF" refers to Defendant's Concise Statement of Undisputed Material Facts filed herewith.

exist independently of CNX, and the future board of CONSOL did not have the ability to make any changes, including personnel and compensation changes.  (SOF ¶ 55).

After the appointment of the officers of CONSOL Mining, Mr. DeIuliis made the determination not to adjust the compensation of any of the newly-appointed officers prior to the spinoff. (SOF ¶ 61).  He believed that because CONSOL Mining would be a new, public company, compensation decisions should be left for the new board after the spinoff.  (SOF ¶ 61).  In addition, in the summer and fall of 2017, it was far from clear that CONSOL Mining would have the necessary financing to separate from CNX.  (SOF ¶ 61).  Therefore, ***none*** of newly-appointed officers of CONSOL Mining received compensation adjustments until January 2018, two months after the spinoff.  (SOF ¶ 63).

Beginning in or about August 2017, Plaintiff asked Kurt Salvatori, the Chief Administrative Officer of CONSOL Mining, on a couple of occasions, why her compensation had not been adjusted since being named President.  (SOF ¶¶ 67-68).  In those conversations, Plaintiff referred to male employees, including Donald Rush who had taken on new roles with CNX (as opposed to CONSOL Mining) and had received a compensation increase.  (SOF ¶¶ 67- 68). In the second conversation, she referenced her gender.  (SOF ¶ 68).  Mr. Salvatori, however, advised Plaintiff that Mr. DeIuliis had determined that CNX was not going to adjust the compensation of the newly-appointed officers of CONSOL Mining prior to the spinoff.  (SOF ¶ 69).  During fall 2017, Mr. Powell, CONSOL's future Chairman, also met individually with the officers of CONSOL Mining, including Plaintiff, and advised that after the spinoff the CONSOL Board would form a Compensation Committee and make adjustments after that time.  (SOF ¶¶ 70-71).  Plaintiff never complained to Mr. Powell that she believed her compensation was affected by her gender, and no one ever advised him of any such complaints.  (SOF ¶¶ 73-74).

In November 2017, CONSOL Mining secured the necessary financing to effectuate the spinoff, but it was accompanied by significant liabilities.  (SOF ¶ 84).  On November 28, 2017, CNX effected the spinoff of CONSOL Mining, which became CONSOL Energy Inc.  (SOF ¶ 86).  Around the time of the spinoff, Mr. Brock discussed with Mr. Powell the proposed salary of the President position and stated that CONSOL did not need the additional expense of the President position, a position he had always believed was unnecessary.  (SOF ¶¶ 88-89).  Mr. Powell agreed.  (SOF ¶ 90).   On December 4, 2017, the CONSOL Board held a meeting, and CONSOL management formally recommended that the President position be eliminated and the Plaintiff terminated so CONSOL could operate as a "lean public company."  (SOF ¶¶ 94-96).    After executive session deliberations, the Board unanimously approved the termination of Plaintiff and the assumption of the President role by Mr. Brock.  (SOF ¶ 97).  Plaintiff was terminated that day.  (SOF ¶ 99).  Since her termination, Mr. Brock has performed the duties of President and CONSOL has not hired anyone to fill the President role.  (SOF ¶¶ 100, 102).

On March 9, 2018, shortly before filing her complaint alleging, *inter alia*, she was retaliated against because of her alleged complaints about her compensation, Plaintiff sent a text message to a friend in which she admitted, "So while I don't think I was let go [because] I asked for a pay raise, my attorney said to make them prove it."  (SOF ¶ 108).

## **STANDARD OF REVIEW**

Summary judgment is proper when there exists "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 247-48 (1986).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  *Id.* at 252.  While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 250.

## ARGUMENT

I. **PLAINTIFF CANNOT ESTABLISH THAT CONSOL VIOLATED EITHER THE EQUAL PAY ACT OR TITLE VII PRIOR TO NOVEMBER 28, 2017 BECAUSE SHE WAS NOT EMPLOYED BY IT AT THAT TIME.**

Plaintiff asserts claims against CONSOL for violations of the EPA between December 2014 and December 2017.  (ECF No. 23, ¶¶ 45, 52).  CONSOL, however, was not Plaintiff's employer until November 28, 2017, the date that CNX effected the spinoff of CONSOL Mining, now known as CONSOL, and CONSOL separated from the gas business.  (SOF ¶¶ 3-4, 13).  Prior to that time, Plaintiff was an employee of CNX (then named CONSOL Energy, Inc.), and CNX made the determinations regarding her compensation.  (SOF ¶¶ 4, 58).  Plaintiff and her prior counsel were well aware of this distinction between CONSOL and CNX months before Plaintiff commenced this action. (SOF ¶¶ 106-107) (Plaintiff stating in a December 20, 2017 email to Mr. Garraux that "RemainCo" – CNX – "will try to distance themselves" from a decision by SpinCo – CONSOL – but "the pay equity issue implicates [CNX], from a reach back perspective" and Mr. Garraux stating in a December 26, 2017 email that "[t]wo separate FedEx overnights" were required for CONSOL and CNX because, "[t]echnically, the 'defendants' are two separate

companies"). Nevertheless, Plaintiff only named CONSOL in this action.[2]

CONSOL cannot be liable for any alleged violations prior to November 28, 2017 when it "was not the plaintiff['s] employer" during that time period, was not an independent company, and did not make determinations regarding Plaintiff's salary. *Aguirre v. SBC Comms., Inc.*, No. H-05-3198, 2007 U.S. Dist. LEXIS 51687, at *4-6 (S.D. Tex. July 17, 2007) (granting Southwestern Bell Telephone Company's summary judgment motion because it did not exist during the time period of plaintiffs' claims).[3] As a tacit admission that she sued the wrong entity for the pre-November 28, 2017 period, Plaintiff has filed a Praecipe of for a Writ of Summons against CNX in the Court of Common Pleas of Allegheny County. (SOF ¶ 114). Accordingly, the Court should dismiss all claims against CONSOL for alleged conduct prior to November 28, 2017.

## II. EVEN ASSUMING, *ARGUENDO*, THAT CONSOL COULD BE LIABLE FOR PLAINTIFF'S CLAIMS PRIOR TO NOVEMBER 28, 2017, PLAINTIFF CANNOT ESTABLISH THAT SHE WAS PAID DISPARATE WAGES DUE TO HER GENDER IN VIOLATION OF THE EPA OR TITLE VII.

Plaintiff alleges CONSOL violated the EPA by paying her disparate wages between December 2014 and December 4, 2017. (ECF No. 23 ¶ 45). Claims under the EPA are evaluated using a two-step burden-shifting paradigm. Plaintiff must first establish her *prima facie* case "by demonstrating that employees of the opposite sex were paid differently for performing 'equal

---

[2] CONSOL also brought this issue to Plaintiff's attention in its response to Plaintiff's EEOC charge. *See* Appendix Ex. 21E. Nevertheless, when Plaintiff amended her complaint on August 28, 2018, she did not add CNX as a defendant. (ECF No. 23).

[3] *See also Akins-Brakefield v. Philip Envtl. Servs. Corp.*, No. 08–cv–710–DRH, 2010 WL 1032627, at *1 (S.D. Ill. Mar. 17, 2010) ("[B]ecause PSC, LLC was not in existence at the time of Plaintiff's employment or subsequent termination, it cannot be held liable in its own right for any of Plaintiff's claims."); *Anderson v. Bell Atlantic Tel. Co.*, No. 85-1057, 1986 U.S. Dist. LEXIS 30038, at *7 (E.D. Pa. Jan. 27, 1986) ("In light of this Court's conclusions that Bell Atlantic was never plaintiff's employer and was not in existence during plaintiff's employment with New Jersey Bell, Bell Atlantic cannot be liable to plaintiff for discrimination related to her contract of employment with New Jersey Bell under 42 U.S.C. § 1981.").

work' — work of substantially equal skill, effort and responsibility, under similar working conditions." *Johnson v. Fed. Express Corp.*, 604 Fed. Appx. 183, 187 (3d Cir. 2015) (quoting *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000)). If Plaintiff makes this showing, then the burden shifts to CONSOL to demonstrate the applicability of one of the four enumerated affirmative defenses in the EPA: "(i) a bona fide seniority system, (ii) a merit system, (iii) a system which measures earnings by quantity or quality of production, or (iv) a differential based on any factor other than sex." *Id.* (quoting *Stanziale*, 200 F.3d at 107 & n.6).

Plaintiff also appears to allege a claim for wage discrimination under Title VII. (ECF No. 23 ¶ 52). Courts in the Third Circuit have applied the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to Title VII claims for sex-based wage discrimination. *See, e.g., Fuller v. Global Custom Decorating*, No. 3:2004-285, 2007 U.S. Dist. LEXIS 473, at *45-46 (W.D. Pa. Jan. 5, 2007) (Gibson, J.); *Farrell v. Planters Lifesavers Co.*, 22 F. Supp. 2d 372, 388-89 (D.N.J. 1998), *rev'd on other grounds*, 206 F.3d 271, 275 n.2 (D.N.J. 1998); *Churchill v. Int'l Bus. Machines, Inc.*, 759 F. Supp. 1089, 1097 (D.N.J. 1991). Similar to the EPA claim, the Plaintiff must establish her *prima facie* case "by showing that 'she occupies a job similar to that of higher paid males.'" *Farrell*, 22 F. Supp. 2d at 389 (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)). The burden of production then shifts to CONSOL "to establish that the salary disparity results from one of the four defenses under the Equal Pay Act." *Churchill*, 759 F. Supp. at 1100. Plaintiff then has the burden of persuasion that the affirmative defense(s) offered by CONSOL are mere pretext. *Id.*

Even assuming, *arguendo*, that CONSOL could be liable for acts or omissions prior to November 28, 2017, Plaintiff cannot establish her *prima facie* case under either the EPA or Title VII. Even if she could, CONSOL can establish affirmative defenses and Plaintiff cannot satisfy

her burden of persuasion that the affirmative defenses offered by CONSOL are mere pretext, such that her Title VII wage discrimination claim fails.

A.     **Plaintiff Cannot Establish She Was Paid Less Than Male Employees Performing "Substantially Equal" Work.**

As noted, Plaintiff first "must show she was paid less than males performing work of substantially equal skill, effort, and responsibility, under similar working conditions." *Wildi v. Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640, 658 (W.D. Pa. 2009) (Conti, J.). To be considered "substantially equal," the jobs must have "a 'common core' of identical (or substantially similar) tasks." *Id.* (quoting *Brobst v. Columbus Servs. Int'l*, 761 F.2d 148, 156 (3d Cir. 1985)). "[T]he standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.,* 874 F.2d 797, 799 (11th Cir. 1989); *see also Davis v. Comcast Corp., Inc.*, Case No. 1:13-cv-01513, 2015 WL 11111066, at *8 (E.D. Va. Jan. 26, 2015). Here, Plaintiff has not remotely met that high standard.

1.     Neither Mr. Khani nor Mr. McCaffrey Performed "Substantially Equal" Jobs, a Fact Conceded by Plaintiff.

In her Amended Complaint, Plaintiff identifies David Khani and James McCaffrey as "similarly situated men who performed jobs requiring substantially similar skill, effort, and responsibility." (ECF No. 23, ¶¶ 26-28). Between December 2014 and July 10, 2017, Plaintiff served as the Senior Vice President of Environmental Strategy (2011 to 2014), the Senior Vice President of Health, Safety and Environmental Affairs (Aug. 2015 to June 2016), and Senior Vice President for Diversified Business Units and Environmental Affairs (June 2016 to July 2017). (SOF ¶¶ 19, 23, 25). Mr. Khani was the Executive Vice President and Chief Financial Officer ("CFO") at CNX between March 1, 2013 and August 2, 2017, was the CFO of CONSOL Mining between August 2, 2017 and November 28, 2017, and has been the Executive Vice President,

Treasurer and Chief Financial Officer of CONSOL since November 28, 2017.  (SOF ¶¶ 126, 132-133).   Mr. McCaffrey was the Senior Vice President – Energy Marketing for CONSOL Pennsylvania Coal Company between January 2013 and June 2016, was the Senior Vice President - Sales of CONSOL Pennsylvania Coal Company, a wholly-owned subsidiary of CNX, between June 2016 and July 10, 2017, was the Senior Vice President – Coal Marketing of CONSOL Mining between July 10, 2017 and November 28, 2017, and has been the Senior Vice President of Coal Marketing of CONSOL since November 28, 2017.  (SOF ¶¶ 135-138).

Despite identifying Mr. Khani and Mr. McCaffrey as "similarly situated employees who performed jobs requiring substantially similar skill, effort, and responsibility," Ms. Fredriksen conceded the following during her deposition:

> Q.   And the only area that you and Mr. McCaffrey – and you didn't really share responsibilities, even at the same time, was responsibility for that shipping treat – facility in Baltimore, right?
> A.   Correct.
> Q.   You had different jobs?
> A.   Correct.
> Q.   And for that matter, you and Mr. Khani had different jobs?
> A.   Yes.

*See* Appendix Ex. 3 at 39:15-40:3.  Indeed, Plaintiff admitted that she and Messrs. Khani and McCaffrey had very different responsibilities in their respective positions, with minimal, if any, overlap.  For example, Plaintiff testified that as CFO, Mr. Khani was "responsible for the filing of our accounting reporting for the FCC [sic], the accounting function, the tax function, and the judgment function," as well as signing documents submitted to the SEC, and that she did not have responsibility for any of the functions for which Mr. Khani was responsible.  *See* Appendix Ex 3 at 23:4-16; 25:18-26:22.   Plaintiff also admitted that Mr. Khani, as Chief Financial Officer, reported directly to the Chief Executive Officer, whereas she did not.  (SOF ¶¶ 27, 127).  Thus, the jobs performed by Plaintiff and Mr. Khani clearly were not "substantially equal."

Nor did Mr. McCaffrey perform a "substantially similar" job.  As the Vice President of Sales or Marketing, Mr. McCaffrey was responsible for sales and marketing of coal, a role the Plaintiff did not share.  (SOF ¶¶ 139-140).  The only overlap of their duties was responsibility for the Baltimore terminal, which they did not handle during the same time period.  (SOF ¶ 141).

Plaintiff also testified that neither Mr. Khani nor Mr. McCaffrey were responsible for the job functions she performed, including environmental compliance for coal and gas, regulatory permitting and affairs, mine reclamation, sustainability reporting, corporate safety, operational safety, and water treatment.  (SOF ¶ 142).  As the Eastern District of New York found in *Lenzi v. Systemax, Inc.*, "by her own testimony, Plaintiff eviscerates her unequal pay claims" based on Messrs. Khani and McCaffrey.  No. 14-cv-7509, slip op. at 46 (Mar. 9, 2018), attached as Appendix Ex. 24; *see also Puchakjian v. Twp. of Winslow*, 804 F. Supp. 2d 288, 298 (D.N.J. 2011) (entering summary judgment in favor of defendant where "plaintiff admitted that her responsibilities as municipal clerk were neither similar or equal to the responsibilities of the other department heads").  Under such circumstances, neither Mr. Khani nor Mr. McCaffrey can be deemed to have performed "substantially similar" jobs.[4]

---

[4] Numerous other courts have found that senior executive positions with different responsibilities, such as those at issue here, are not "substantially equal" for purposes of the EPA.  *See, e.g., Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 686 (7th Cir. 1998) (affirming entry of summary judgment in favor of the defendant on plaintiff's EPA claim because, despite the fact plaintiff and her comparators were all vice presidents, "the other vice presidents performed tasks substantially different from those performed by [the plaintiff]"); *Lenzi,* No. 14-cv-7509, slip op. at 42, attached as Appendix Ex. 24 ("Plaintiff cannot make out a prima facie case of unequal pay. Notwithstanding that Plaintiff and her comparators shared a title of "Vice President" and performed certain generic management functions, such as, e.g., budgeting, supervising other employees, creating and implementing policies and guidelines, their jobs were different."); *Drury v. Waterfront Media, Inc.*, No. 05 Civ. 10646, 2007 U.S. Dist. LEXIS 18435, at *11 (S.D.N.Y. Mar. 8, 2007) (finding that while other comparators "were vice presidents, managed employees and budgets, and reported to one of Waterfront's founders, each of their positions demanded entirely different skills and entailed entirely different responsibilities"); *Galarraga v. Marriott Emps. Fed. Credit Union*, No. JFM-94-1986, 1996 U.S. Dist. LEXIS 8987, at *10 (D. Md. Apr. 24, 1995) (holding that as a

The fact that the Plaintiff claims she was on the same or higher level of management as Messrs. Khani and McCaffrey does not render the positions "substantially similar" for purposes of the EPA or Title VII.  To the contrary, as the Northern District of Indiana has held,

> nothing in the EPA indicates it is designed to address disparities in pay between men and women occupying distinctly different upper-level management positions within the hierarchy of a company's administration.  The Act is instead aimed at remedying gender-based disparities where the work and working environment are homogeneous rather than heterogeneous.

*Randall v. Rolls-Royce Corp.*, 742 F. Supp. 2d 974, 984 (N.D. Ind. 2010) (holding that the "uniqueness" of upper-management positions "forecloses relief under the EPA").  In *Chiaramonte v. Animal Medical Center*, the Second Circuit rejected plaintiff's argument that department heads with similar credentials and significant responsibilities performed equivalent work, stating:

> The fact that Chiaramonte and the alleged comparators are department heads whose positions share some common responsibilities is insufficient to demonstrate substantially equal work in light of the drastic differences in job content—that is, the differences in specialties, patient loads, supervision, teaching, and research contributions.  Other than the broad generalizations drawn from the fact that the alleged comparators are department heads and veterinarians, their work content is simply not equivalent to that of Chiaramonte.

677 Fed. Appx. 689, 691-92 (2d Cir. 2017) (internal citations omitted).  Here, as in *Chiaramonte*, aside from the fact that Messrs. Khani and McCaffrey are senior executives, "their work content is simply not equivalent to that of [Plaintiff.]."  *Id.* at 692.

> 2.  Plaintiff Did Not Perform a "Substantially Similar" Job to Louis Barletta, Plaintiff's Predecessor in Her Safety Role, Because the Coal Business Was Substantially Reduced by the Time She Assumed the Safety Responsibilities.

In her deposition after detailing the disparities in job functions between the comparators identified in her complaint, Plaintiff came up with Louis Barletta, her alleged predecessor, as

---

matter of law a CEO was "not an appropriate comparator, since, as a CEO she had more responsibilities than Plaintiff," a Chief Operating Officer).

another alleged comparator who was not identified in any of her pleadings.  (SOF ¶ 143; ECF No. 23).  Mr. Barletta was the Vice President of Corporate Safety between April 7, 2008 and August 2, 2015.  (SOF ¶ 145).  Plaintiff did not perform similar tasks to Mr. Barletta until she assumed responsibility for corporate safety in August 2015.  (SOF ¶¶ 151-152).

When Plaintiff assumed responsibility for corporate safety, Plaintiff's responsibilities were substantially different from what Mr. Barletta's responsibilities had been.  On December 5, 2013, prior to Plaintiff assuming responsibility for corporate safety, CNX sold five coal mines which accounted for approximately half of its coal production, thereby substantially reducing the safety oversight responsibilities and, subsequently, the duties Plaintiff assumed.  (SOF ¶¶ 7-8, 150).  In August 2015, CNX assigned his responsibilities to the Plaintiff and Mr. Barletta assumed a new position with a reduced salary.  (SOF ¶ 151).  On March 31, 2016, CNX sold another large mine, the Buchanan Mine, further reducing CNX's coal production.  (SOF ¶¶ 9, 153).  Thus, by April 2016, Plaintiff's responsibilities for corporate safety were very different than Mr. Barletta's corporate safety responsibilities.  (SOF ¶ 156).  Indeed, prior to 2014, the position of Vice President of Corporate Safety was a full-time job, heavily focused on the coal business, whereas during the August 2015 through June 2017 period the Plaintiff was able to perform the corporate safety responsibilities along with her other responsibilities for environmental, regulatory affairs, and diversified business units (SOF ¶ 149).  Courts have found that that predecessors or successors are not sufficient comparators where, as here, the position or level of responsibilities are not the same.[5]  Thus, Plaintiff's post-August 2015 responsibilities with respect to corporate safety were not "substantially equal" to Mr. Barletta's responsibilities.  (SOF ¶ 156).

---

[5] *See, e.g., Tenkku v. Normandy Bank*, 348 F.3d 737, 741 (8th Cir. 2003) (rejecting Plaintiff's "conclusory allegation that that her total work responsibilities were equivalent" to those performed by [her predecessor]" where plaintiff did not assume all of her predecessor's responsibilities);

3. Nicholas DeIuliis Did Not Perform "Substantially Equal" Work Because He Worked for a Different Company and Had Different Responsibilities.

Plaintiff also claims that between July 10, 2017 and December 4, 2017, she – with the title of President of CONSOL Mining and, for six days, President of CONSOL – was paid less than Nicholas DeIuliis, who held the position of President of CNX between February 2011 and May 2014. (SOF ¶ 121). Despite the similarity in title, however, Plaintiff cannot establish that Mr. DeIuliis performed "substantially similar" work to her in her role as President of CONSOL Mining, a subsidiary, until November 28, 2017, and President of CONSOL Energy Inc., a new corporation, between November 28, 2017 and December 4, 2017. As an initial matter, between 2011 and 2014 Mr. DeIuliis was the President of a ***different corporate entity***, CNX (then known as CONSOL Energy, Inc.). (SOF ¶ 121). As the President of a different corporate entity, Mr. DeIuliis cannot, as a matter of law, be a comparator to Plaintiff. *See, e.g.*, *Sanders v. Tikras Tech. Solutions Corp.*, No. 1:16-cv-00985, 2017 WL 3123660, at *3 (E.D. Va. July 21, 2017) ("An employee of a different company cannot be a comparator-employee."); *In re Liberty Nat'l Ins. Cases*, No. 2:99-cv-3262-UWC, 2006 WL 8436814, at n.7 (N.D. Ala. Mar 31, 2006) ("In the employment discrimination context, a number of courts have concluded that an employee cannot be deemed a similarly situated comparator if she worked in different offices, departments or divisions of the same company—let alone an entirely different company—from the plaintiff.").

In any event, the fact that Plaintiff and Mr. DeIuliis both had the title of President "is not determinative evidence that the positions were substantially equal." *Wildi*, 659 F. Supp. 2d at 659; *see also Rowland v. Certainteed Corp.*, No. 08-3671, 2009 U.S. Dist. LEXIS 43706, at *25 (E.D.

---

*Emswiler v. Great Eastern Resort Corp.*, 602 F. Supp. 2d 737, 753 (W.D. Va. 2017) (holding as a matter of law that the jobs held by plaintiff and her successors "are not substantially equal" because of the new responsibilities assigned to plaintiff's male successors, including oversight of new indoor waterpark at the resort).

Pa. May 21, 2009) (stating the plaintiff "cannot rely on job titles to survive summary judgment"). Indeed, the similarities end with the title. Between 2011 and 2014, Mr. DeIuliis was responsible for both coal *and* gas businesses of CNX. (SOF ¶ 122). By contrast, Plaintiff was never the President of any entity that included the E&P business. (SOF ¶ 56). In addition, the combined coal and gas company of which Mr. DeIuliis was President between 2011 and 2014 was a substantially larger company than CONSOL Mining, of which Plaintiff became the President. The following table illustrates some key differences:

| | CNX for year ending Dec. 31, 2012[6] | CONSOL Mining for year ending Dec. 31, 2017[7] |
|---|---|---|
| Tons of coal produced | 56.0 million tons | 26.1 million tons |
| Number of coal mines | 11 coal mines | 3 mines |
| Natural gas produced | 156.3 net billion cubic feet | 0 |
| Number of gas wells | 15,000 gross natural gas wells | 0 |
| Number of employees | 8,896 employees | 1,692 employees |
| Total revenue and other income | $5.4 billion | $1.4 billion |

Another key difference between Mr. DeIuliis' role as President of CNX and the Plaintiff's role was as President of CONSOL Mining was that Mr. DeIuliis was responsible for ***both*** coal and gas operations, while Plaintiff concedes that she did not have responsibility for operations of coal or gas during her tenure as President of CONSOL Mining and, for six days, CONSOL. (SOF ¶¶ 56-57, 123). Accordingly, Mr. DeIuliis's position of President of CNX between 2011 and 2014 clearly is not "substantially equal" to the Plaintiff's position as President.

Because Plaintiff has not established that any of her alleged comparators performed "substantially equal" work, she cannot state a claim for disparate pay under either the EPA or Title

---

[6] This information is contained in CNX's Form 10-K filed on Feb. 7, 2013. *See* Appendix Ex. 8E E at 5, 29, 59.

[7] This information is contained in CONSOL's Form 10-K filed on Feb. 16, 2018. *See* Appendix Ex. 25 at 7-8, 18, 26, 52.

VII.  *See Sims-Fingers v. City of Indianapolis*, 493 F.3d 768, 772 (7th Cir. 2007) ("So merely showing that a man and a woman who perform different jobs for the same employer are paid differently does not get a Title VII plaintiff to first base.").

>    **B.**    **Even If Plaintiff Could Establish Disparate Pay to a Male Employee Performing Substantially Equal Work, Defendant Has Met Its Burden of Establishing an Affirmative Defense.**

Even assuming, *arguendo*, that Plaintiff can establish a *prima facie* case of wage disparity, there are legitimate, non-discriminatory reasons for any pay differential that preclude Plaintiff's claim as a matter of law.  "A difference in payment between opposite sexes is permissible if it is made pursuant to: (1) a seniority system, (2) a merit system, (3) a system which measures earnings by quantity or quality of production, or (4) a system based upon any other factor other than sex (the 'catchall defense')."  *Prise v. Alderwoods Group, Inc.*, 657 F. Supp. 2d 564, 616 (W.D. Pa. 2009) (Conti, J.).  "While length of service (i.e., degree of experience) is not relevant at the prima facie stage, it is clearly relevant when an employer relies upon it as a 'factor other than sex' to establish the applicability of an affirmative defense available under the Equal Pay Act."  *Id.*

With the exception of Mr. Khani, Plaintiff's comparators all has substantially greater tenure at CNX longer than Plaintiff.  Plaintiff only began work at CNX in 2011.  (SOF ¶ 19).  Mr. McCaffrey worked at CNX, and later CONSOL, for over forty years, having started as a coal miner in 1976.  (SOF ¶ 134).  Mr. DeIuliis has been with CNX for over twenty-five years.  (SOF ¶ 120). Mr. Barletta was an employee of CNX and its predecessors and/or affiliates for over forty years. (SOF ¶ 144).  Employees of CNX receive annual merit, or cost of living, increases to their salaries and bonuses, typically within the 2% to 4% range.  (SOF ¶ 28).  Long-time employees such as Messrs. McCaffrey, DeIuliis, and Barletta would have received such annual increases.  Thus, any alleged wage disparity between Messrs McCaffrey, DeIuiliis, and Barletta and the Plaintiff is the

result of Messrs McCaffrey, DeIuiliis, and Barletta's long tenure with CNX, as well as their different responsibilities (*see* Section II.A, *infra*).

As for Mr. Khani, he joined CNX in 2011. (SOF ¶ 124). Mr. Khani had investment banking experience. (SOF ¶ 125). To recruit an experienced professional with a Wall Street background to join CNX and ultimately serve as CFO, CNX had to offer Mr. Khani a competitive compensation package. "An employer may consider the marketplace value of the skills of a particular individual when determining his or her salary." *Rhoades v. YWCA of Greater Pittsburgh*, No. 09-0261, 2010 U.S. Dist. LEXIS 75426, at *24-25 (W.D. Pa. July 27, 2010). In *Rhoades*, this Court granted defendant's summary judgment motion on plaintiff's EPA claim where, as here, the defendant established a comparator was paid more based on market conditions.[8] *Id.*

Further, with respect to the period between July 10, 2017 and December 4, 2017, there is an additional non-discriminatory reason for any alleged wage disparity between Plaintiff and Mr. DeIuliis (whom CONSOL denies performed substantially similar work). At the time of Plaintiff's

---

[8] It is well-established that regular increases to salary and bonuses on the basis of tenure or longevity are an affirmative defense to EPA claims. Indeed, the U.S. Supreme Court held that the EPA "contemplates that a male employee with 20 years' seniority can receive a higher wage than a woman with two years' seniority." *Corning Glass Works v. Brennan*, 417 U.S. 188, 204 (1974). Courts have entered summary judgment in favor of employers where the employers have established that any wage disparity is the result of regular increases over time to an employee's salary or incentive compensation. *See, e.g., Puchakjian*, 804 F. Supp. 2d at 297 (holding that that a comparator's raises "were not the result of gender discrimination, but rather were reflective of his long tenure as Municipal Clerk"); *Blount v. Alabama Coop. Extension Serv.*, 869 F. Supp. 1543, 1554 (1994) (holding that where defendants submitted affidavits stating that "individual employee's length and history of service are primary factors in the determination of an employee's pay, and those factors dictate the fact that all DA's salaries will not be equal" defendants "successfully asserted the affirmative defense of experience or longevity of service"); *Zmyslo v. NCR Corp.*, No. C–3–89–501, 1992 WL 1258521, at *3 (S.D. Ohio May 20, 1992) (concluding "that Defendant acted in accordance with a legitimate business reason by paying the salaries to the co-workers based upon their long-time tenure as employees" and granting summary judgment to defendant on plaintiff's EPA claim).

appointment as President of CONSOL Mining, it was unclear whether the spinoff of the coal business would occur, and if it did, Mr. DeIuliis determined that any compensation adjustments for the newly-appointed officers of CONSOL Mining should be made after the spinoff by the new Compensation Committee of CONSOL.  (SOF ¶ 61).  Adjustments to the new officers' salaries and incentive compensation targets were not approved by the new board of CONSOL until January 2018, after the spinoff and the termination of Plaintiff.  (SOF ¶ 104).   Accordingly, ***none*** of the other officers of CONSOL received compensation adjustments prior to January 2018.[9]  (SOF ¶ 104).  This gender-neutral determination was based on a "factor other than sex," such that it constitutes a defense to Plaintiff's EPA and Title VII claims with respect to her compensation between July 10, 2017 and December 4, 2017.

Thus, CONSOL has demonstrated the applicability of one or more of the enumerated defenses, and Plaintiff's EPA claim fails as a matter of law.[10]

### C.    Plaintiff Has Not Offered Sufficient Evidence of Pretext for Her Title VII Claim for Wage Discrimination.

Not only has Plaintiff failed to establish her *prima facie* case under both the EPA and Title VII, but Plaintiff has utterly failed to show that any of the proffered reasons for any alleged

---

[9] Plaintiff claims that two newly-appointed male officers of CNX, Don Rush and Jason Mumford, received compensation adjustments prior to the spinoff.  Mr. Rush and Mr. Mumford, however, assumed new positions and were going to remain with CNX post-spinoff, unlike Plaintiff.  (SOF ¶¶ 66, 77).  Therefore, these employees are not comparable to Plaintiff.

[10] Plaintiff cannot establish a violation of the EPA, let alone a willful violation.  Under the EPA, back pay is available for a period of two years prior to the filing of the EPA claims, unless the violation is willful, in which case the period is extended to three years.  "A violation is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited.'"  *Shine v. Bayonne Bd. of Educ.*, 633 Fed. Appx. 820, n.6 (3d Cir. 2015) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  Plaintiff has adduced no evidence that any alleged violation of the EPA was willful.  As such, Plaintiff is not entitled to any damages prior to March 23, 2016 (i.e., two years prior to the filing of her complaint on March 23, 2018).

disparity are mere pretext, as required for Title VII.  Prior to November 28, 2017, Steve Johnson and, ultimately, Nicholas DeIuliis, were responsible for determining Plaintiff's salary.  (SOF ¶ 29). Plaintiff testified that Mr. Johnson and Mr. DeIuliis were supporters and promoters of her.  (SOF ¶ 30).  Indeed, Mr. DeIuliis selected Plaintiff to be President of CONSOL Mining.  (SOF ¶ 42). Courts have found that any claim of discriminatory intent is undermined when a plaintiff was promoted during the relevant time period.[11]  Between July 10, 2017 and November 28, 2017, Mr. DeIuliis made the determination to leave any salary adjustments of the newly-appointed officers of CONSOL Mining to the new board of CONSOL after the spin-off.   (SOF ¶ 61).  Plaintiff has not offered any evidence showing that other officers of CONSOL Mining received salary adjustments during this time, or that this reason is mere pretext.  Thus, Plaintiff has failed to carry her burden on her Title VII wage disparity claim.

### III.   PLAINTIFF CANNOT ESTABLISH THAT SHE WAS RETALIATED AGAINST FOR HER ALLEGED COMPLAINTS ABOUT HER COMPENSATION IN VIOLATION OF THE EPA OR TITLE VII.

In analyzing retaliation claims under either the EPA or Title VII, courts in the Third Circuit (and elsewhere) apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Wildi*, 659 F. Supp. 2d at 664.  In order to establish a *prima facie* case of retaliation under either the EPA or Title VII, Ms. Fredriksen must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) a causal connection existed between the protected activity and the asserted adverse action.  *See Red v. Potter*, 211 Fed. Appx. 82, 84 (3d Cir. 2006); *Wildi*, 659 F. Supp. 2d at 664.   If the Plaintiff

---

[11] *See, e.g., Fayson v. Kaleida Health, Inc.*, No. 00-cv-0860E(Sr), 2002 U.S. Dist. LEXIS 18591, at *21 (W.D.N.Y. Sept. 18, 2002) (holding that Plaintiff's allegations that Kaleida harbored discriminatory intent against her (or African Americans or females generally), however, is undermined by the fact that Kaleida gave her multiple promotions and raises during the relevant time frame").

establishes her *prima facie* case, the burden then shifts to CONSOL "to establish a legitimate, nonretaliatory reason for the adverse employment action." *Wildi*, 659 F. Supp. 2d at 664. If CONSOL establishes a legitimate, nonretaliatory reason for the adverse action, "the ultimate burden of persuasion shifts back to the plaintiff to prove 'that the alleged reasons offered by the defendant were pretextual and that the defendant intentionally discriminated against the plaintiff." *Id.* (quoting *Jalil v. Avdel Corp.*, 873 F.2d 701, 706 (3d Cir. 1989)).

A.     **Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation.**

Plaintiff cannot establish a *prima facie* case of retaliation because (1) her alleged informal complaints regarding her compensation do not constitute "protected activity"; and (2) she cannot demonstrate a causal connection between her alleged complaints and her termination.

1.     Plaintiff's Complaints Do Not Rise to the Level of "Protected Activity."

Plaintiff asserts that she complained about being paid less than "comparable male executives." While informal complaints may constitute "protected activity," for the protection to apply Plaintiff must show that "a reasonable person in these circumstances would have concluded that the employer was engaging in discriminatory conduct." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 n.9 (3d Cir. 2007) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 343 (3d Cir. 2006)). "Plaintiff's complaint must also allege discrimination 'on the basis of race, color, sex, religion, or national origin'; a 'general complaint of unfair treatment' is 'facially invalid' and therefore not sufficient to invoke the protections of § 2000e-3(a). *Sampath v. Concurrent Techs. Corp.*, No. 3-cv-264, 2008 U.S. Dist. LEXIS 25715, at *102-103 (W.D. Pa. Mar. 31, 2008) (Gibson, J.) (quoting *Slagle v. County of Clarion*, 435 F.3d 262, 265-67 (3d Cir. 2006)). Under the circumstances here, Plaintiff's informal complaints do not, as a matter of law, rise to the level of "protected activity."

20

Plaintiff alleges that she was retaliated against because she complained that she, as a woman, was paid less than certain male executives.  (EFC No. 23 ¶¶ 48-49, 55).  No reasonable person under these circumstances, however, could have concluded that CNX was engaging in discriminatory conduct in refusing to adjust the compensation of the newly-appointed officers of CONSOL Mining, including Plaintiff, prior to the spinoff.  Mr. DeIuliis determined that any compensation adjustments for the newly-appointed officers of CONSOL Mining should be made after the spinoff by the new Compensation Committee of CONSOL.  (SOF ¶ 61).  Plaintiff was advised of this determination, and does not dispute that ***none*** of the newly-appointed officers of CONSOL received compensation adjustments prior to January 2018.  (SOF ¶ 61, 104).  In *Zappan v. Pa. Bd. of Prob. & Parole*, the Eastern District of Pennsylvania held that a plaintiff's expression of concern that another employee had instructed three employees to be disciplined "for not doing their job" did not constitute "protected activity" because "no reasonable person could believe it was based on race."  No. 00-1409, 2002 U.S. Dist. LEXIS 23424, at *24 (E.D. Pa. Nov. 25, 2002).  This Court should reach the same result: no reasonable person could conclude that CNX's gender-neutral determination to defer compensation decisions for ***all*** future officers of CONSOL to the CONSOL Compensation Committee post-spinoff was discriminatory.  Thus, Plaintiff's alleged complaints about that decision do not constitute "protected activity."  *See id.* at *26 (finding that plaintiff's expression of concern "is not protected activity" and that "[t]his finding without more is enough for the defendants to prevail in a Title VII summary judgment motion").

Second, in her alleged complaints Plaintiff failed to allege discrimination on the basis of gender, which is fatal.  "The Third Circuit has been clear that an employee has not engaged in protected opposition activity when he or she complains about unfair treatment, but stops short of referencing a protected characteristic as the basis for the unfair treatment."  *Kier v. Lackland &*

*Sons, LLC*, 72 F. Supp. 3d 597, 616 (E.D. Pa. 2014); *see also Isler v. Keystone Sch. Dist.*, No. 07-cv-1335, 2008 U.S. Dist. LEXIS 65902, at *28-29 (W.D. Pa. Aug. 12, 2008) (Schwab, J.) (stating that to qualify as protected activity, "the message must at a minimum convey the speaker's express or implicit protest of discriminatory practices that violate the federal anti-discrimination statutes"). In some of her alleged complaints, Plaintiff did not even reference gender.  For example, during her March 2017 discussion with Steve Johnson when she asked for a compensation review because she had taken on corporate safety responsibilities, Plaintiff never brought up her gender or complained she was being treated differently because she is a woman.  (SOF ¶¶ 39).  Similarly, Plaintiff never told Mr. Powell that she thought her compensation was affected by her gender. (SOF ¶¶ 73).  Absent any claim of unfair treatment on the basis of her gender, such general complaints regarding unfair treatment do not constitute protected activity.[12]

Plaintiff's other alleged complaints fare no better.  Plaintiff's alleged complaints that her compensation was not adjusted when male employees assuming new roles with CNX (as opposed to CONSOL Mining) – Donald Rush and Jason Mumford – received adjustments similarly do not rise to the level of protected activity.  "The mere mention of [gender] does not transform a general list of grievances into opposition to unlawful activity under Title VII."  *Perry v. Harvey*, 332 Fed. Appx. 728, 733 (3d Cir. 2009).  The fact that Plaintiff compared herself to a male employee, without more, did not put CNX "on notice that [Plaintiff] was alleging [CNX] was engaging in an

---

[12] *See, e.g., Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir 1995) (holding that a letter "complain[ing] about unfair treatment in general…does not constitute the requisite 'protected conduct' for a prima facie case of retaliation"); *Warfield v. SEPTA*, 460 Fed. Appx. 127, 131 (3d Cir. 2012) (stating that "protected activity" "does not include very generalized complaints about unfair treatment"); *Glass v. First Judicial Dist. of Pa.*, No. 16-5449, 2017 U.S. Dist. LEXIS 121322, *15 (E.D. Pa. Aug. 2, 2017) (holding that Plaintiff's supervisor "cannot have retaliated against Plaintiff for complaints about gender discrimination if Glass never mentioned or gave any indication of his belief that discrimination was occurring").

unlawful employment practice." *Warfield*, 460 Fed. Appx. at 131 (holding that plaintiff's generalized complaints that she was being treated differently than a white male "were not sufficient to place McKenzie or SEPTA on notice that [plaintiff] was alleging that McKenzie was engaging in an unlawful employment practice").[13]  Thus, none of Plaintiff's alleged complaints constitute "protected activity."

2.    <u>Plaintiff Cannot Show Any Causal Connection Between Her Informal<br>Complaints and Her Termination.</u>

Plaintiff alleges that CONSOL terminated her because she complained about her compensation.  (ECF No. 23 ¶¶ 48-49, 55).  This allegation, however, is belied by Plaintiff's admission in a text message she sent to a friend shortly before filing this action, which stated, "…while I don't think I was let go bc I asked for a pay raise, my attorney said to make them prove it." (SOF ¶ 108).  By virtue of her admission that she does not believe she was terminated because she "asked for a pay raise," Plaintiff is estopped from asserting any causal connection between her alleged complaints and her termination.  Any such claims are, at best, disingenuous.

Even assuming Plaintiff had not admitted that her termination was not caused by her complaints, in order to show a causal connection, Plaintiff must establish that her termination "was motivated by 'retaliatory animus' and that this animus had a 'determinative effect' on the complained-of decision."  *Sampath*, No. 3-cv-264, 2008 U.S. Dist. LEXIS 25715, at *103-04 (internal citation omitted) (quoting *Farrell*, 206 F.3d at 281, 284, and *Woodson v. Scott Paper Co.*, 109 F.3d 913, 935 (3d Cir. 1997)). "As an initial matter, however, Plaintiff must show that

---

[13] *See also Scheske v. Univ. of Mich. Health Sys.*, 59 F. Supp. 3d 820, 829 (E.D. Mich. 2014) ("The mere mention and comparison of men in the presentation does not make it a protected activity opposing gender discrimination."); *Evans v. D.E. Foxx & Assocs.*, No. 11-261, 2013 U.S. Dist. LEXIS 104375, at *51-52 (S.D. Ohio July 24, 2013) (holding that "plaintiff did not engage in protected activity" where she vaguely referred to pay issues for females).

23

the party or parties who took the adverse actions were aware of Plaintiff's protected activities." *Id.* at \*104; *see also Warfield*, 460 Fed. Appx. at 132 ("Knowledge of an employee's protected conduct is an essential element of establishing a causal connection."); *Kier*, 72 F. Supp. 3d at 618 ("It is only intuitive that for protected conduct to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct."). Here, Plaintiff cannot make this showing, as neither Mr. Brock nor the Board were aware of Plaintiff's alleged complaints about her compensation. Even if they were, Plaintiff does not have other evidence of a causal link between her alleged complaints and her termination.

First, Plaintiff cannot show that the ultimate decision-makers with respect to her termination – the Board of Directors – were aware of her complaints with respect to her compensation, which is fatal to her retaliation claim. Plaintiff has not alleged any conversations with members of the CONSOL Board except William Powell. Plaintiff admits that she did not tell Mr. Powell that she believed her compensation was affected by her gender. (SOF ¶ 73). "Proof that the decision-makers have of [Plaintiff's] engagement in protected activity cannot be established by inferences or assumptions; there must be evidence to prove that fact." *Randall,* 742 F. Supp. 2d at 991. Because Plaintiff has not offered any evidence that the Board of Directors had knowledge that she engaged in protected activity, she cannot show a causal connection between her complaints and her termination and "her retaliation claim fails at the *prima facie* stage." *Id.*[14]

---

[14] *See also Clarkson v. Septa*, No. 14-2510, 2016 WL 1637279, at \*10 (E.D. Pa. Apr. 25, 2016) ("In addition, Ms. Clarkson has failed to demonstrate the necessary causal connection, because there is a lack of evidence in the record showing that either Mr. Merrigan or Ms. Dickerson knew of the Complaints during the time of the alleged retaliatory conduct."); *Kier*, 72 F. Supp. 3d at 618 (holding that plaintiff's Title VII retaliation claim failed because Plaintiff had no evidence that the decision-maker "was privy to any discussion regarding Plaintiff's comments to Gulini regarding racism"); *Doe v. Winter*, No. 04-2170, 2007 WL 1074206, at \*9 (M.D. Pa. Apr. 5, 2007) (finding that "Defendant has proffered uncontroverted evidence that none of the individuals responsible for taking the adverse employment actions against Doe were aware of his prior EEO activity" such

Moreover, Plaintiff cannot show a causal connection based on the mere fact that she was terminated weeks or months after she informally complained about her compensation.  The Third Circuit has held that "the mere fact that adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events."  *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997).  In *Kier,* the Eastern District of Pennsylvania found that "[a]bsent some intervening antagonism, Plaintiff cannot rest solely on a temporal proximity of more than one week."  72 F. Supp. 3d at 618.  Here, CONSOL terminated Plaintiff on December 4, 2017, weeks or even months after she complained about her compensation.  (SOF ¶¶ 68, 99).  Courts in the Third Circuit have found that the separation of protected activity and an adverse employment action by weeks or months, as here, is not "unusually suggestive."[15]  Accordingly, Plaintiff cannot establish a causal connection between her alleged complaints and her termination by virtue of temporal proximity.

Nor can Plaintiff show that her termination was motivated by discriminatory animus.

---

that plaintiff's retaliation claim could not survive summary judgment); *Iyer v. Everson*, 382 F. Supp. 2d 749, 758 (E.D. Pa. 2005) (holding plaintiff failed to establish a causal link between EEO filings and his nonselection for a position where "[t]here is unrebutted evidence that Thomas, the selecting official for the attorney position, had no knowledge of [plaintiff's] complaints when Thomas made the sections for the attorney position").

[15] *See, e.g., Motto v. Wal-Mart Stores East, LP*, 563 Fed. Appx. 160, 163 (3d Cir. 2014) (holding that eleven days between plaintiff's protected activity and termination was not "unusually suggestive of retaliatory motive"); *Moore v. Shinseki*, No. 10-4463,  2011 U.S. Dist. LEXIS 123213, at *25 (E.D. Pa. Oct. 25, 2011) (holding that the "nearly two months" between notice of the plaintiff's EEO activity and notice of proposed removal of plaintiff "is not unduly suggestive of a causal connection under Third Circuit precedent"); *Smith v. ABF Freight Sys.*, No. 04-2231, 2007 U.S. Dist. LEXIS 79801, at *43 (M.D. Pa. Oct. 29, 2007) (holding that one-and-a-half months between the plaintiff's protected activities and an adverse employment action "is not so unduly suggestive as to give rise to an inference of causation"); *Killen v. Northwestern Human Servs.*, No. 06-4100, 2007 U.S. Dist. LEXIS 66602, at *27 (E.D. Pa. Sept. 7, 2007) (refusing to find that period of seventeen days between plaintiff's protected activity and her termination was "unusually suggestive"); *Zappan*, No. 00- 1409, 2002 U.S. Dist. LEXIS 23424, at *28 (holding that two months between the plaintiff's alleged protective activity and the adverse employment action "is not unusually suggestive enough to demonstrate causation without more evidence").

Plaintiff has not offered any evidence that Mr. Brock, let alone the Board of Directors who ultimately approved her termination, had a discriminatory animus against women.  While Plaintiff contends that Mr. Brock told her that he did not support her as President because he would have a hard time getting the guys to accept her, this statement had absolutely nothing to do with Plaintiff's gender.  Rather, it was based on the fact that Plaintiff had never worked in a coal mine and had only been underground in a mine "a couple dozen" times in her life for tours, and Mr. Brock believed other employees would think they had more experience and were more qualified for the position of President of CONSOL.  (SOF ¶¶ 46-47).  Moreover, Plaintiff has not offered any evidence that any of the outside board members who ultimately approved her termination were motivated by a discriminatory animus.  Indeed, Plaintiff did not even take their depositions during discovery.  Absent any evidence of discriminatory animus by Mr. Brock or the Board, Plaintiff cannot show a causal connection between her alleged complaints and her termination.

Because Plaintiff cannot establish any of the elements of her *prima facie* case, her retaliation claims under both Title VII and the EPA fail as a matter of law.

### B.      Defendant Had a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff.

Even if Plaintiff can make out a *prima facie* case, CONSOL has a legitimate, non-discriminatory reason for terminating the Plaintiff.  "The defendant's burden at this stage is relatively light: it is satisfied if the defendant articulates any legitimate reason for the discharge; the defendant need not prove that the articulated reason actually motivated the discharge." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997).  CONSOL easily satisfies this light burden.

CONSOL terminated the Plaintiff because it eliminated the separate position of President for financial reasons, and the current Chief Executive Officer, James Brock, assumed the duties of

President.  (SOF ¶¶ 96, 100).  From the time Mr. DeIuliis proposed a split CEO and President management structure for the new coal company, Mr. Brock felt that that the separate President position was unnecessary.  (SOF ¶¶ 43, 52).  In light of the significant liabilities accompanying the CONSOL's financing for the spin and the need for CONSOL to operate as a lean public company, Mr. Brock proposed the elimination of the separate position of President and the termination of Plaintiff after the spinoff.  (SOF ¶¶ 85, 89).  In a December 4, 2017 presentation to the Board of Directors, CONSOL management formally recommended the elimination of the separate president role for the following reasons:

- Company's post-spin strategic focus is on flexibility and low cost structure
- Highly experienced small staff must operate with extreme efficiency to achieve corporate goals
- Separate CEO and president unnecessary for lean public company
  -- Operational functions typically performed by president currently performed by CEO
  -- Current presidential role has brief tenure (e.g., appointment made in August 2017) and is limited in scope

(SOF ¶ 96).  Following the presentation by management, the Board unanimously approved the termination of Plaintiff and Mr. Brock's assumption of the role of President.  (SOF ¶ 97). Plaintiff's gender did not have anything to do with the Board's decision.  (SOF ¶ 98).

This Court (and others) have found that the elimination of a position for financial reasons, as here, is a legitimate, non-discriminatory reason for the termination of an individual.[16]  *See Wildi*, 659 F. Supp. 2d at 668 ("Defendant articulated a legitimate and nonretaliatory reason for Wildi's termination, stating that her position was eliminated for strictly financial reasons."); *Eshelman v.*

---

[16] *See also Andersen v. Mack Trucks, Inc.*, 118 F. Supp. 3d 723, 740 (E.D. Pa. 2015) ("The termination of an employee in connection with a financially necessary RIF constitutes a legitimate, nondiscriminatory reason for the termination."); *Jones v. WDAS FM/AM Radio Stations*, 74 F. Supp. 2d 455, 465-66 (E.D. Pa. 1999) (holding that defendant satisfied its burden of production by showing that it eliminated the plaintiff's position as part of restructuring).

*Magee-Womens Hosp. of Univ. of Pittsburgh Med. Ctr.* No. 02:03CV1990, 2005 WL 2546445, at

*6 (W.D. Pa. 2005) (granting summary judgment in favor of defendant where it was "undisputed

that Plaintiff's job functions were eliminated as a result of the integration").  As such, CONSOL

has met its burden by offering a legitimate, non-discriminatory reason for Plaintiff's termination.

C. **Plaintiff Cannot Establish that Defendant's Reason for Termination Was Pretextual.**

Plaintiff claims that the proffered reason for her termination is mere pretext, because "there

was no other cause" aside from her alleged compensation complaints.  Appendix Ex 3 at 156:6-

16.  In determining whether a plaintiff has submitted sufficient evidence to create a genuine issue

of material fact with respect to pretext, the Third Circuit applies a two-prong test:

> to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 2008).  Here, Plaintiff cannot establish pretext under

either prong.

1. Plaintiff Has Not Offered Any Evidence That the Proffered Reason for Plaintiff's Termination – For Financial Reasons – Cannot Be Believed.

Under the first prong of the *Fuentes* test, Plaintiff must submit evidence "from which a fact

finder could reasonably disbelieve the defendants' articulated legitimate reasons for plaintiff's

termination."  *Wildi*, 659 F. Supp. 2d at 668-69.  Specifically,

> [t]he plaintiff must, however, point to 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them

"unworthy of credence" and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action.

*Id*., at 686 (citing *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998)). "It is not the function of this court to determine whether defendants' business judgment in terminating plaintiff was correct." *Prise*, 657 F. Supp. 2d at 596. Rather, "the inquiry must focus on the perception of the decision-maker." *Wildi*, 659 F. Supp. 2d at 670.

Plaintiff has not offered any evidence that CONSOL's termination of Plaintiff for financial reasons should be disbelieved. Plaintiff does not dispute that the separate position of President was eliminated and Mr. Brock assumed the responsibilities of President. See Appendix Ex. 3 at 156:20-25, 159:9-17. Nor can she dispute the financial challenges facing CONSOL, as she admitted that prior to the spinoff the coal and gas businesses, as well as corporate, "went through a reduction in force...pretty much every year." *See* Appendix Ex. 3 at 184:9-10. Plaintiff's subjective belief that there could be "no other cause" for her termination aside from her alleged compensation complaints and/or gender," *see* Appendix Ex. 3 at 156:5-16, does not constitute evidence, let alone sufficient evidence from which a fact finder could reasonably disbelieve CONSOL's proffered reason for the termination.[17] Thus, Plaintiff "did not adduce sufficient evidence under the first prong of *Fuentes*." *Wildi*, 659 F. Supp. 2d at 670.

---

[17] *See, e.g., Anderson v. Boeing Co.*, No. 15-3073, 2016 U.S. Dist. LEXIS 191074, at *65 (E.D. Pa. Aug. 30, 2016) (stating that plaintiff's personal belief or "speculation, standing alone, is insufficient to create a material dispute of fact"); *Allen v. PetSmart, Inc.*, 512 F. Supp. 2d 288, 293 (E.D. Pa.2007) (a plaintiff's "own unsubstantiated, subjective beliefs or suspicions alone would not suffice to persuade a rational trier of fact that age was a factor in the termination decision"); *Martin v. Healthcare Bus. Res.*, No. 00–3244, 2002 WL 467749, at *6 (E.D. Pa. Mar. 26, 2002) ("Plaintiff's mere pronouncement or subjective belief that she was terminated because of her race, gender and age is not a substitute for competent evidence.").

2.     Plaintiff Has Not Offered Any Evidence That Discrimination Was
       More Likely Than Not the Motivating Cause of Her Termination.

Under the second prong of the *Fuentes* test, Plaintiff must submit evidence that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762.  To show that discrimination was more likely than not a cause for her termination, Plaintiff must point to "evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that gender was a motivating or determinative factor in the employment decision." *See Simpson*, 142 F.3d at 644-45.  Examples of the evidence required include: (1) that the employer previously discriminated against the plaintiff; (2) that the employer has discriminated against other women; or (3) that the employer has treated more favorably similarly situated male employees.  *Id.* at 645.

Plaintiff has not offered ***any competent evidence*** that CONSOL previously discriminated against Plaintiff.  Indeed, CONSOL was not Plaintiff's employer until November 28, 2017, and Plaintiff has not alleged any discrimination in six days between the spinoff and her termination, aside from her Equal Pay Act claim which does not constitute evidence of pretext in a retaliation claim.  *See Wildi*, 659 F. Supp. 2d at 671 (holding that plaintiff's complaint that the pay structure violated the EPA "does not implicate 'previous discrimination'" under the second prong of the *Fuentes* pretext analysis); *Rhoades*, No. 09-0261, 2010 U.S. Dist. LEXIS 75426, at *33-34 (holding that plaintiff failed to satisfy the second prong of the *Fuentes* pretext analysis where she did not adduce any evidence of prior discrimination aside from her complaint of an EPA violation).

Even if conduct prior to November 28, 2017 is attributable to CONSOL (which it is not), Plaintiff has not offered sufficient evidence of prior discrimination.  Plaintiff's claims that she was excluded from meetings and the "roadshow" are incorrect as a matter of fact, insufficient as a matter of law, or both.  First, Plaintiff claims that she was excluded from a lunch meeting with Mr. Powell

30

because of her gender.  *See* Appendix Ex. 3 at 235:8-24.  Contrary to her claims, there was never a planned lunch meeting with Mr. Powell.  Rather, Mr. Powell was meeting with Mr. Brock at CONSOL.  (SOF ¶ 81).  The meeting ran through lunchtime, and they placed an impromptu order for sandwiches and extended a last minute invitation to the other future executives of CONSOL to join them, including the Plaintiff.  (SOF ¶ 82).  Plaintiff declined the invitation.  (SOF ¶ 83).  Thus, Plaintiff was not excluded from the lunch meeting with Mr. Powell.  In any event, in *Wildi* this Court rejected similar evidence of exclusion from a meeting as evidence of pretext, stating "social unpleasantries…cannot give rise to an inference of unlawful discrimination where not one single [gender]-based comment is alleged and there is no logical inference that the comments made were, in fact, [gender]-based."  *Wildi*, 659 F. Supp. 2d at 671 (quoting *Williams-McCoy v. Starz Encore Group*, No. 02-5125, 2004 U.S. Dist. LEXIS 2600, at *8 (E.D. Pa. Feb. 5, 2004)).

Plaintiff similarly claims she was excluded from the "roadshow," which was a series of presentations that certain members of CONSOL Mining management made to potential investors and/or institutional buyers in October and November 2017 in order to obtain financing for the spinoff.  (EFC No. 23 ¶ 38; SOF ¶ 78).  Contrary to Plaintiff's claims, however, the reason Plaintiff did not participate in the "roadshow" has nothing to do with her gender.  Rather, Mr. Brock selected individuals to participate in the "roadshow" based on their ability to talk about certain topics.  (SOF ¶ 80).  Plaintiff cannot show that there was a work-related reason for her to be on the roadshow, aside from her conclusory statement that as President she had "a rightful role in those preparations and those meetings."  *See* Appendix Ex. 3 at 151:3-8.  Further, the fact that "Plaintiff may have 'felt excluded by coworkers or unsupported by her managers'…cannot give rise to an inference of unlawful discrimination…."  *Wildi*, 659 F. Supp. 2d at 671.

Finally, Plaintiff contends that Mr. Brock's use of words "girl" and "her" in reference to

her is somehow evidence of a discriminatory animus. Plaintiff, however, has referred to herself as a "girl" in work-related emails to colleagues, thereby undermining her claim that the use of "girl" evidences discriminatory motive. (SOF ¶¶ 115-116). More importantly, as the Southern District of New York recently noted, "[s]tray remarks, even if made by a decision maker, do not constitute sufficient evidence [to support] a case of employment discrimination." *Grant v. New York Times Co.*, No. 16-cv-03175 (PKC), 2017 U.S. Dist. LEXIS 149403, at *18 (S.D.N.Y. Sept. 14, 2017) (holding that a supervisor's comments that a plaintiff was a "tough girl" "does not betray an animus based on gender").[18] Accordingly, Mr. Brock's use of gender-specific terms or pronouns does not make it more likely than not that discrimination was the cause of Plaintiff's termination.

Finally, Plaintiff cannot show that CONSOL has discriminated against other women, or that male employees were treated more favorably. Her claim that (non-comparable) male executives were paid more than she was does not satisfy the second prong of *Fuentes*, as the very conduct of which she complained is not sufficient evidence of pretext. *Wildi*, 659 F. Supp. 2d at 672. As such, Plaintiff has not offered sufficient evidence to create a genuine issue of material fact that CONSOL's elimination of the separate position of President was pretext for retaliation. *Id.* (granting summary judgment to Defendant on Plaintiff's EPA retaliation claim); *Rhoades*, No. 09-0261, 2010 U.S. Dist. LEXIS 75426, at *34 (same). Accordingly, because Plaintiff has not established her *prima facie* case and cannot show that the proffered explanation for her termination

---

[18] *See also Weightman v. Bank of N.Y. Mellon Corp.*, 772 F. sup. 2d 693, 707 (W.D. Pa. 2011) (Lancaster, J.) ("As a general rule, a single stray comment, made outside the context of the decision-making process, does not constitute direct evidence of discrimination"). Moreover, the use of non-discriminatory pronouns such as "her" does not make it more likely than not that gender was a motivating factor in Plaintiff's termination. *See Kaufmann v. Eppstein Uhen Architects, Inc.*, No. 13–cv–0674, 2015 WL 520616, at *2 (E.D. Wisc. 2015) (holding the use of gender-specific pronouns such as "she" and "her" "are not enough to enable a reasonable factfinder to infer a gender-discriminatory motive").

was mere pretext, Plaintiff's retaliation claims pursuant to the EPA and Title VII fail as a matter of law.

## IV.  PLAINTIFF CANNOT ESTABLISH HER TITLE VII CLAIM THAT SHE WAS TERMINATED BECAUSE OF HER GENDER.

Plaintiff also claims she was terminated because of her gender in violation of Title VII. Am. Comp. ¶¶ 52-53.  "An employee can establish gender discrimination under Title VII in one of two ways: (1) by direct evidence that the employer's decision was motivated by discrimination; or (2) by indirect evidence that creates an inference of discrimination." *Weightman v. Bank of N.Y. Mellon Corp.*, 772 F. Supp. 2d 693, 702 (W.D. Pa. 2011).  Here, Plaintiff cannot establish gender discrimination through either direct or indirect evidence.

### A.   Plaintiff Has Not Offered Any Direct Evidence of Gender Discrimination.

As this Court has previously noted,

> "[D]irect evidence of discrimination is evidence that demonstrates that 'decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision.  If the trier of fact must infer discrimination from the employer's remarks or actions, then the evidence is not direct evidence of discrimination.  Only the most blatant remarks, whose intent could be nothing other than to discriminate in reaching an employment decision, are considered sufficient to constitute direct evidence of discrimination.  Derogatory comments or stray remarks in the workplace that are unrelated to employment decisions, even when uttered by decision-makers, do not constitute direct evidence of discrimination….An employee attempting to prove discrimination with direct evidence faces a "high hurdle."

*Id.* (internal citations omitted).  Plaintiff has not offered a scintilla of evidence that the decision to terminate her was based on her gender.  At best, Plaintiff offers "stray remarks" by Mr. Brock with non-discriminatory gender references made months before her termination.  Such "evidence" does not remotely relate to the decision to terminate her, let alone clear the "high hurdle" for direct evidence of discrimination.  *See id.*

33

**B.**     **Plaintiff Cannot Establish a Claim of Gender Discrimination through Indirect Evidence Under *McDonnell Douglas*.**

Plaintiff fares no better with respect to indirect evidence of discrimination. Indirect evidence is analyzed under the *McDonnell Douglas* burden-shifting paradigm. *Id.* at 702-703. To establish her *prima facie* case of gender discrimination, Plaintiff must show: "(1) she is a member of a protected class; (2) she was qualified for the position; (3) she was terminated; and (4) the circumstances of her termination give rise to an inference of discrimination." *Nesselrotte v. Allegheny Energy, Inc.*, No. 06-1390, 2009 U.S. Dist. LEXIS 207677, at *29 (W.D. Pa. Mar. 16, 2009) (Fischer, J.). Then the burden shifts to CONSOL to establish a non-discriminatory reason for the termination, and Plaintiff bears the burden of persuasion that the proffered reason for her termination is mere pretext. *See id.* at *21. Importantly, the Third Circuit has recognized that "a plaintiff whose employment position is eliminated in a corporate reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons." *Hook v. Ernst & Young*, 28 F.3d 366, 375 (3d Cir. 1994) (quoting *Wilson v. Firestone Tire & Rubber Co.*, 932 F.2d 510, 517 (6th Cir. 1991)).

Here, Plaintiff cannot establish gender discrimination in violation of Title VII. First, Plaintiff cannot establish the fourth element of her *prima facie* case that her termination occurred under circumstances "giv[ing] rise to an inference of discrimination." *Nesselrotte*, No. 06-1390, 2009 U.S. Dist. LEXIS 207677, at *29. As discussed in Sections II and III, *supra*, Plaintiff cannot establish that "she was treated less favorably than a male comparator" or that the circumstances here raise an inference of discrimination. *Id.* at *35-36. Moreover, for the reasons discussed in Sections III.B and III.C, *supra,* CONSOL has offered a legitimate, non-discriminatory reason for Plaintiff's termination, and Plaintiff cannot establish that CONSOL's reason is pretextual. As such, Plaintiff's claim for gender discrimination fails. *See, e.g., Butia v. Bank of N.Y. Mellon*, No.

12-1248, 2014 U.S. Dist. LEXIS 111677, at *50-51 (W.D. Pa. 2014) (Kelly, J.) (granting summary judgment in favor of employer on plaintiff's gender discrimination claim because plaintiff "failed to proffer sufficient evidence permitting a reasonable fact-finder to conclude that BNY's proffered reasons for her termination are pretext for discrimination based upon gender"); *Jones*, 74 F. Supp. 2d at 465-66 (holding that "because plaintiff has not presented sufficient evidence to rebut [the employer's] proffered legitimate, nondiscriminatory reason for eliminating plaintiff's position, plaintiff's age and gender discrimination claims also must fail).

## **CONCLUSION**

WHEREFORE, Defendant CONSOL Energy Inc. respectfully requests that judgment be entered in its favor and against Plaintiff, that it be awarded reasonable attorney's fees and costs, and that the Court enter such further relief as is just, necessary and proper.

Dated:  January 17, 2019                    Respectfully submitted,

/s/ Gerald J. Stubenhofer, Jr.
Gerald J. Stubenhofer, Jr.
Pa. Id. No. 72921
Courtney S. Schorr
Pa. Id. No. 317370
MCGUIREWOODS LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA  15222
(412) 667-6000
gstubenhofer@mcguirewoods.com
cschorr@mcguirewoods.com

*Counsel for Defendant CONSOL Energy Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served upon the following counsel of record via the Court's CM/ECF Notification System, this 17th day of January, 2019:

Samuel J. Cordes
John E. Black, III
Rothman Gordon, P.C.
310 Grant Street, Third Floor
Pittsburgh, PA 15219


<u>/s/ Gerald J. Stubenhofer, Jr.</u>
