**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KATHARINE ANN  FREDRIKSEN,      Civil Action

                                     No. 18-379
                 Plaintiff,
   vs.                           Judge Horan

CONSOL ENERGY INC.,

             Defendant.          JURY TRIAL DEMANDED

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Samuel J. Cordes
John E. Black, III

Pa.I.D. No. 54874 (Cordes)
Pa.I.D. No. 83727 (Black)

Rothman Gordon, P.C.
310 Grant Street
Third Floor, Grant Building
Pittsburgh, PA 15219
(412) 338-1100

## TABLE OF CONTENTS

I.      Facts...................................................................... 1

II.     Argument................................................................. 1

        A.      Coal-Co is Liable Under the Successor In Interest Doctrine
                Because It Agreed to Accept Liabilities For Employment
                Practices Arising Pre-And Post-Spin............................ 1

                1.      Coal-Co is an "employer" and was Fredriksen's
                        employer under the Equal Pay Act........................ 2

                2.      Even if Coal-Co was not Fredriksen's "employer"
                        from July 10, 2017 through Nov. 28, 2017, it still
                        is Liable for any EPA or Title VII violation. ........... 5

        B.      Defendant is Not Entitled to Summary Judgment On
                Fredriksen's Pay Discrimination Claims......................... 6

                1.      Defendant's claim that a President or other vice
                        presidents with different areas of responsibility
                        are improper comparators is not compelled as a
                        matter of law and is not proper for resolution on a
                        summary judgment record as a matter of fact. .......... 14

                2.      Defendant must establish its Affirmative Defense so
                        clearly that no rational jury could find otherwise. ...... 16

                        a.      An "authorization to decide" is not a legitimate
                                reason why the decision was made................ 18

                        b.      Defendant does not pay employees Pursuant to
                                Bona Fide Seniority System...................... 19

                                i.      A "seniority system" is a term of art with
                                        specific requirements................... 20

        C.      Material Factual Issues Preclude Summary Judgment on
                Fredriksen's Retaliation Claim................................. 21

                1.      Fredriksen need only implicitly complain about
                        conduct she reasonably believed was discriminatory....... 22

2.      Fredriksen both explicitly and implicitly complained to Brock, Powell and Salvatori that Defendant paid her less than men and did so because she was a woman. . . . . . . . . . . . . . . . . . 22

3.      Factual issues exist on Fredriksen's causation element.. . . . . . . 24

     a.      Fredriksen's text message musings to her friend prove nothing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     b.      Causation is shown in a number of ways.. . . . . . . . . . . . 25

          i.      Record evidence shows Brock and Powell were aware Fredriksen had complained about gender based compensation discrimination. . . . . . . . . . . 25

          ii.      The record shows abundant evidence linking Fredriksen's complaints to her discharge.. . . . . . 26

          iii.      Brock began the process of firing Fredriksen less than three weeks after her final complaint to him, and within three days of when Defendant admits he could act on his own... . . . . . . . . . . . . . . . . . . . 27

          iv.      Record evidence shows animus in the fact of Fredriksen's complaints to Brock. . . . . . . . . . . . 29

4.      Defendant Does not State a Sufficient Legitimate Non-Discriminatory Reason for Firing Fredriksen. . . . . . . . . . . 30

     a.      Defendant must state a legitimate non-discriminatory reason for its decision.. . . . . . . . . . . . . . . . . . . . . . . . . . . 30

     b.      Job elimination or "financial concerns" are not reasons... 31

     c.      Defendant's ever evolving inconsistent reasons for firing Fredriksen preclude summary judgment.. . . . . . . . . . . . . 31

5.      The record also presents evidence of Brock's gender and retaliatory based animus.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

# TABLE OF AUTHORITIES

## Cases

*Abramson v. William Patterson Coll.*,
260 F.3d 265 (3d Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 24, 25, 32

*Aman v. Cort Furniture Rental Corp.*,
85 F.3d 1074 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 34

*Azzaro v. Cnty of Allegheny*,
110 F.3d 968  (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Barber v. CSX Distribution Servs.*
68 F.3d 694 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bates v. United States Postal Service, slip op.*,
No. 97-3090 (3d Cir. Jan. 16, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 30

*Bertaini v. Westmoreland County*,
212 F. Supp.3d 564 (W.D. Pa. 2014).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

 *Brinkley-Obu v. Hughes Training, Inc.*,
36 F.3d 336 (4th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Brobst v. Columbus Servs. Int'l*,
761 F.2d 148 (3d Cir.1985) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*Brock v. Georgia Southwestern College*,
765 F.2d 1026 (11th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 20

*Butt v. United Bhd. of Carpenters & Joiners of Am.*
512 Fed. Appx. 233 (3d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*California Brewers Assn. v. Bryant*,
444 U.S. 598 (1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Chipollini v. Spencer Gifts, Inc.*,
814 F.2d 893,  (3d Cir. 1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Connelly v. Lane Const. Corp.*,
809 F.3d 780 (3d Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Corning Glass Works v. Brennan,*
417 U.S. 188 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 17

*Crabtree v. Baptist Hosp. of Gadsden, Inc.*,
1983 WL 30400 (N.D. Ala. Dec. 7, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Crabtree v. Baptist Hosp. Of Gadsden, Inc.,*
749 F.2d 1501 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Delima v. Home Depot U.S.A., Inc.,*
616 F. Supp. 2d 1055 (D. Or. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Denman v. Youngstown State Univ.,*
545 F. Supp. 2d 671 (N.D. Ohio 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 15

*Dubowsky v. Stern,*
922 F.Supp. 985 (D.N.J.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8, 9, 16

*EEOC v. Whitin Machine Corp*.,
635 F.2d 1095 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*EEOC v. J.C. Penny Co., Inc.,*
843 F.2d 249 (6th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*EEOC v. Aetna Ins. Co.,*
616 F.2d 719 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*EEOC v. School Board, East Allegheny School District,* 29 Fair Emp. Prac. Cases (BNA) 1
767 (W.D. Pa. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*EEOC v. Del. Dep't of Health & Soc. Servs.,*
865 F.2d 1408 (3d Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 9, 16, 17

*Fasold v. Justice,*
409 F.3d 178 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Fizzano Brothers Concrete Products, Inc. v. XLN, Inc.,*
973 A.2d 1016 (Pa. Super. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Fuentes v. Perskie,*
32 F.3d 759 (3d Cir 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Galderi-Amborsini v. Nat'l Realty & Development Corp.,*
136 F.3d 276 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Goldberg v. Whitaker House Co-op., Inc.*,
366 U.S. 28 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Haybarger v. Lawrence County Adult Probation and Parole*,
667 F.3d 408 (3d Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5

*Hicks v. Forest Preserve Dist. of Cook County*,
2009 WL 5064772 (N.D.Ill.,2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

 *Hill v. City of Scranton*,
411 F.3d 118 (3d Cir. 2005).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1, 27

*Hodgens v. General Dynamics Corp.*,
144 F.3d 157 (1st Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

*Tomasso v. Boeing Co.*,
445 F.3d 702 (3d Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

*Husser v. New York City Dep't of Educ.*,
2015 WL 5774741 (E.D.N.Y. Sept. 30, 2015).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Iadimarco v. Runyon*,
190 F.3d 151 (3d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18, 30

*In re Carnegie Ctr. Assocs.*,
129 F.3d 290 (3d Cir. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   31

*In re Enterprise Rent-A-Car Wage & Hour Emp't Prac. Litig.*
683 F.3d 462 (3d Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3,5

*Irby v. Bittick*,
44 F.3d 949 (11th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hodgson v. The Washington Hospital*,
1971 WL 128 (W.D. Pa. April 22, 1971).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*Jarzabek v. UPMC Passavant Hospital.*,
2009 WL 693251  (W.D. Pa. March 13, 2009)(Conti, J) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
563 U.S. 1 (2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Kellerman v. UPMC St. Margaret,*
317 Fed. Appx. 290 (3d Cir. March 19, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Kelley v. Sun Microsystems, Inc.,*
520 F. Supp. 2d 388 (D. Conn. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lauterbach v. Illinois State Police,*
2015 WL 4555548 (C.D. Ill. July 28, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*LeBoon v. Lancaster Jewish Community Center, Assn.,*
503 F.3d 217 (3d Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Lenzi v. Systemax, Inc.,*
2015 WL 6507842 (E.D.N.Y. Oct. 26, 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Marra v. Phila. Hous. Auth.,*
497 F.3d 286 (3d Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 24, 26, 27

*Marzano v. Computer Science Corp., Inc.,*
91 F.3d 497 (3d Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Masterpiece Cakeshop, LTD v. Colorado Civil Rights Commission, et. al.,*
138 S.Ct. 1719 (June 4, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*McDonnell Douglas Corp v. Green,*
411 U.S. 792 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31,34

*McGuire v. City of Springfield,*
280 F.3d 794 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*McMillan v. Massachusetts Soc. for Prevention of Cruelty To Animals,*
140 F.3d 288 (1st Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mikulski v. Bucks Cty. Cmty. Coll.,*
2011 WL 1584081 (E.D. Pa. Apr. 27, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Minarsky v. Susquehanna Cty,*
895 F.3d 303 (3d Cir. 2018).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Miranda v. B&B Cash Grocery Store, Inc.,*
975 F.2d 1518 (11th Cir. 1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Moore v. City of Philadelphia,*
61 F.3d 331 (3d Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Mulhall v. Advance Sec., Inc.,*
19 F.3d 586 (11th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 16

*Nationwide Mut. Ins. Co. v. Darden,*
503 U.S. 318 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Olson v. General Elec. Astrospace.,*
101 F.3d 947, 955 (3d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Porter v. California Dep't of Corrections,*
383 F.3d 1018 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Price v. Thompson,*
380 F.3d 209 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Reeves v. Sanderson Plumbing Products, Inc.,*
530 U.S. 133 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 35

*Rinaldi v. World Book, Inc.,*
2001 WL 477145 (N.D. Ill. May 3, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9 15

*Roehrig v. W.G. Tomko, Inc.,*
2016 WL 2755177  (W.D. Pa. May 12, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 32

*Roney v. Allegheny Intermediate Unit,*
568 Fed. Appx. 172 (3d Cir. June 11, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Rutherford Food Corp. v. McComb,*
331 U.S. 772 (1947). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

*Ryder v. Westinghouse Elec. Corp.,*
128 F.3d 128 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Sabbrese v. Lowe's Home Ctrs, Inc.,*
320 F. Supp.2d 311 (W.D. Pa. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Seyoung Ra v. Gerhard's Inc.,*
2019 WL 95473 (E.D. Pa. Jan. 3, 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Shellenburger v. Summit Bancorp., Inc.,*
318 F.3d 183 (3d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Showalter v. UPMC,*
190 F.3d 231 (3d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Shultz v. Wheaton Glass Co.,*
421 F.2d 259 (3d Cir.1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Simpson v. Merch. & Planters Bank,*
441 F.2d 572 (8th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Smith v. Borough of Wilkinsburg,*
147 F.3d 272 (3d Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Smith v. Davis,*
248 F.3d 249 (3d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*St. Mary's Honor Center v. Hicks,*
509 U.S. 502 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Staub v. Proctor Hospital,*
562 U.S. 411  (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Straub v. First Media Radio, LLC,*
2005 WL 3158042  (W.D. Pa. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Surman v. UPMC Presbyterian Shadyside,*
2018 WL 4901107 (W.D. Pa. Oct. 9, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Taylor v. Philips Industries, Inc.*
593 F.2d 783 (7th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Thompson v. Real Estate Mortg. Network*
748 F.3d 142  (3d Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 5, 6

*Tomka v. Seiler Corp.*
66 F.3d 1295 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

*United States v. Rosenwasser,*
323 U.S. 360 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Usery v. Allegheny County Institution Dist.,*
544 F.2d 148 (3d Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*Veprinsky v. Fluor Daniel, Inc.,*
87 F.3d 881 (7th Cir. Ill. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Wildi v. Alle-Kiski Medical Center*,
659 F. Supp.2d 640 (W.D. Pa. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 21, 22

## Statutes and Rules

29 C.F.R. § 791.2.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

29 C.F.R. § 1620.16(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

29 C.F.R. § 1620.15(a);. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

29 C.F.R. § 1620.17(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


29 U.S.C. §206(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 U.S.C. §201-219. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

42 U.S.C. §2000e-3(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I. Facts

Katharine Fredriksen incorporates by reference the facts set forth in her Statement of Facts Precluding Summary Judgment.

## II. Argument

Summary judgment in an employment discrimination case  is proper only if Defendant persuades the court that no reasonable jury could find in Fredriksen's favor, even drawing all inferences from the record evidence and viewing it in a light most favorable to her.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-151 (2000).[1]

### A.   Coal-Co is Liable Under the Successor In Interest Doctrine Because It Agreed to Accept Liabilities for Employment Practices Arising Pre- And Post-spin

Defendant Consol Energy Inc, (hereafter Defendant or "Coal-Co.")   first seeks summary judgment because, it claims, it was not Fredriksen's employer until November 28, 2017, and thus cannot be liable for any EPA violations before then. (Defendant's Brief at ¶ 7).  Defendant is wrong both legally and factually.

First, of course, Defendant admits Fredriksen was its President when it fired her, and also admits any pay disparity after Nov. 28 is not even arguably any other employer's responsibility.

Likewise, Consol Mining Corporation, (Coal-Company)  which was then renamed Consol Energy Inc.,  agreed to accept "Coal Liabilities" owned by what was then called Consol Energy Inc. (Plaintiff's Statement of Material Facts, ¶¶40-41)(hereafter PSMF ).

---

[1] On a summary judgment record, evidence of the non-movant is to be believed, while evidence supporting the moving party is given credence only when uncontradicted, unimpeached and from disinterested witnesses. *Id.*; *Hill v. City of Scranton*, 411 F.3d 118, 129 n. 16, 132  n. 22 (3d Cir. 2005). The Court "may not make credibility determinations or weigh the evidence." *Reeves.*, 530 U.S. at  150, and must deny summary judgment if a jury could reasonably find for the nonmovant. *Minarsky v. Susquehanna Cty*, 895 F.3d 303, 309 (3d Cir. 2018). Courts must be cautious when granting summary judgment to an employer where intent and credibility are issues, because credibility determinations are jury functions. *Reeves*, 530 U.S. at 151.

Pursuant to that agreement the Coal Company assumed all liabilities of the former Consol Energy Inc. related to Coal Operations, including, all claims, made by either Consol Energy Inc. or Coal-Co's respective officers and employees arising out of the Coal Business,[2] or relating to Coal Liabilities–stated against either entity-- ***regardless of when or where they arose*** or whether the facts on which they are based occurred ***prior to or subsequent to November 28, 2017.*** (PSMF ¶¶40-44) (emphasis added).

Thus  Defendant's claim it was not Fredriksen's employer fails as a matter of law because under Pennsylvania (and Federal) law, it is liable as a successor corporation because it expressly agreed to assume the liabilities of CNX/Consol for any claims arising out of either the Coal-Co or CNX's actions involving employees if those actions involve Coal-Co  management.

Defendant is a mere continuation of CNX/Consol Energy/Coal-Co because it so agreed  and therefore is accountable for those companies' legal liabilities arising out of management of the Coal-Co's business.  *See Fizzano Brothers Concrete Products, Inc. v. XLN, Inc.*, 973 A.2d 1016, 1019 (Pa. Super. 2009), *aff'd* 615 Pa. 242 (2012)(express assumption of liability makes successor company a mere continuation of predecessor); *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 149-150  (3d Cir. 2014).

**1.     Coal-Co is an "employer" and was Fredriksen's employer under the Equal Pay Act**

But even if Coal-Co had not expressly agreed to accept any liabilities for any actions of either its predecessor, or its Parent for events arising both after its spin off and before, it is responsible for its EPA (and Title VII) violation because between July 10, 2017 and November 28, 2017 it was

---

[2]Coal Business in turn was defined as any business or operation owned by either the Parent or Coal Company, or their current or historic Affiliates which directly or indirectly relate or are related to, *inter alia*, ownership of any interest in coal.  (PSMF  ¶44,  ¶ Coal Business(v)).

Fredriksen's "employer" within the meaning of the Equal Pay Act.

The Equal Pay Act, 29 U.S.C. §206(d) §§201-219, precludes an employer from paying unequal wages to a member of one gender than it pays to a member of another gender who performs work involving substantially similar skill, effort and responsibility. 29 U.S.C. §206(d)(1).

An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee. 29 U.S.C. §203(d). "Person" means an individual, partnership, corporation or any organized group of persons. Id. §203(a). An "employee" is "any individual employed by an employer," Id.,§203(e)(1). To "employ" means to suffer or permit to work. Id., §203(g).

Moreover, aside from the corporate entity itself, a company's owners, agents or principals, may also constitute joint employers for purposes of EPA liability. *Thompson*, 748 F.3d at 153.

The breadth of these definitions is both intentional and obvious. When determining the question, "economic reality, rather than technical concepts, is to be the test of employment." *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *In re Enterprise Rent-A-Car Wage & Hour Emp't Prac. Litig.*, 683 F.3d 462, 467-68 (3d Cir. 2012).

The EPA defines employer "expansively" and with "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992), *citing Rutherford Food Corp. v. McComb*, 331 U.S. 772, 730 (1947). The EPA definition of employer is "the broadest definition" ever included in any one act. *United States v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945).

Thus in determining whether Coal-Co was Fredriksen's employer before Nov. 28, 2017, the focus is on the totality of circumstances rather than technical concepts of the employment relationship, and relationships between the corporate entities, and must be viewed broadly. *Thompson*, 748 F.3d at 154; *Haybarger v. Lawrence County Adult Probation and Parole*, 667 F.3d

408, 418 (3d Cir. 2012).

Here, the economic realities of the situation at a minimum create issues of material facts on whether Defendant employed Fredriksen from July 10, 2017 to December 4, 2017.

First, on July 10, 2017, Defendant's Board formally appointed Fredriksen President, effective that day. (PSMF ¶31). Defendant clearly had the authority to do so, and indeed exercised that authority to set Fredriksen's conditions of employment, and was involved in her daily supervision.

From July 10, 2017 until November 27, 2017, Fredriksen worked for and reported to three people: Nick DeIuliis, the CEO of Consol Energy; James Brock, the CEO of Consol Mining Corp, and Steve Johnson, Executive Vice President of Consol Energy. (PSMF ¶¶36-37).

During the same period, the Coal-Company had the authority to hire and fire, and to adjust compensation of its employees. For example, in an October 10, 2017 email to CEO Brock, Salvatori, Coal-Co's Human Resources Vice President, reminded Brock that *Coal-Co did not adjust pay*, clearly showing it had the authority to do so. (PSMF ¶¶62-63).

Coal-Co, both before and after the November 2017 spin transaction, adopted in total the employment policies of the Parent company. (PSMF ¶64). Both before and after Nov. 28, 2017 Brock and the Coal Company were obligated by the Parent company's EEO policy. (PSMF ¶65). Employment policies carried forward from the Parent company into Coal-Co. (PSMF ¶¶64-66).

Moreover, during the period from July through December 2017, Brock as CEO assigned various employment tasks to Fredriksen. (PSMF ¶67). Indeed, according to Brock, during the period between July and December 2017 he gave Fredriksen "free reign" to run with some things she wanted to accomplish. (PSMF ¶68). Giving someone "free reign" itself shows that Brock made, and had authority to make such a decision. During the same period, Brock precluded Fredriksen from

performing various tasks and from attending various meetings. (PSMF ¶69).

To be sure Brock claims that prior to Nov. 28, 2017 he made "no decisions involving [Coal-Co]" ***at all***, but then Brock admitted he made decisions concerning Fredriksen, and for example, specifically decided to not include Fredriksen, President of Coal-Co, in a presentation to institutional investors. (PSMF ¶70).

The question here is whether Defendant had the right to control Fredriksen, not–as Defendant's brief appears to imply–whether any one individual manager had "ultimate control."

When Defendant appointed Fredriksen its President, it chose to not adjust her pay. It could have done so at any time. Indeed, its own Vice President of Human Resources all but admits it had the authority to do so, when he noted in an October 2017 email that the Company "did not adjust" Fredriksen's pay although she was working since July 10, 2017 as its President. (PSMF ¶¶62-63).

Based on all of the above, a rational juror could find that Defendant had sufficient control over Fredriksen's employment to subject it to liability for a violation of the EPA, either directly or as a joint employer with the Parent Company *See Haybarger*, 667 F.3d at 418. (reversing summary judgment under FLSA economic realities test); *Enterprise Rent-A-Car*, 683 F.3d at 468; *Seyoung Ra v. Gerhard's Inc.*, 2019 WL 95473 at *5 (E.D. Pa. Jan. 3, 2019).[3]

    2.    **Even if Coal-Co was not Fredriksen's "employer" from July 10, 2017 through Nov. 28, 2017, it still is liable for any EPA or Title VII violation**

While Defendant all but admits it is a successor employer, Defendant claims the EPA

---

[3]Under the FLSA/EPA multiple entities can be responsible for a single employee's wages as "joint employers." 29 C.F.R. §791.2. When both employers exert significant control over the employee "by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer," each joint employer may be held jointly and severally liable for the EPA violations of the other, in addition to direct liability for its own violations. 29 C.F.R. §791.2(b)(3); *Thompson*, 748 F.3d at 148.

imposes liability only on "employers" and that Coal-Co was not always Fredriksen's employer.

But that is a distinction without a difference, and indeed, the Third Circuit has expressly rejected Defendant's precise argument.

As the Court noted, even if the predecessor may not have been an "employer," when successor liability is imposed in an EPA or a Title VII case the successor is still liable, *Thompson v. Real Estate Mortg. Network*, 784 F.3d 142, 151-152 (3d Cir. 2014), *citing Teed v. Thomas & Betts Power Solutions*, 711 F.3d 763, 765-67 (7th Cir. 2013).

*Thompson* binds this Court. The Third Circuit has expressly held that a successor employer is the employer under the FLSA/EPA, irrespective of whether the predecessor was technically an "employer." The Third Circuit has applied the federal successor liability doctrine to claims under the FLSA and Title VII. *Thompson*, 748 F.3d at 150-152, and the courts also have applied the successor liability doctrine to ERISA claims where the definition of employer is nearly identical to the definition under the FLSA. *Compare* 29 U.S.C. §203(d) *with* 29 U.S.C. § 1002(5). Successorship liability is applied to most all federal anti-discrimination laws. *See Thompson*, 748 F.3d at 150.

Here, Defendant is a successor in interest to CNX because it agreed to accept the liabilities arising from the employment practices of both it and CNX regarding coal operations. Because it is, the issue of whether it was Fredriksen's "employer" pre-spin is neither here nor there and Defendant's motion for summary judgment should be denied.

B. **Defendant Is Not Entitled to Summary Judgment On Fredriksen's Pay Discrimination Claims**

Defendant next claims that Fredriksen cannot state a prima facie case of wage discrimination under either the Equal Pay Act or Title VII of the Civil Rights Act of 1964. Defendant argues Fredricksen's position as President of Coal-Co is not similar to DeIuliis's position as President of

Coal-Co's predecessor. (Def's Brief at ¶14-16), and that different job duties make comparison to other vice presidents during the period before July 10, 2017 inappropriate. (Def's Brief at ¶9-14.)

Fedriksen was paid less than a male President even though she was President. To establish a *prima facie* case she need only show Defendant paid different wages to employees of the opposite sex for substantially equal work on jobs which required equal skill, effort, and responsibility, and all of which are performed under similar working conditions. *EEOC v. Del. Dep't of Health & Soc. Servs.,* 865 F.2d 1408, 1413 (3d Cir.1989); *Dubowsky v. Stern,* 922 F.Supp. 985, 990 (D.N.J.1996).

If a plaintiff is able to make a *prima facie* case, the burden shifts to the defendant. The defendant can raise one of the four affirmative defenses stated in the Equal Pay Act. But on a summary judgment record, an employer cannot prevail on an affirmative defense unless it can prove the existence of the affirmative defense "so clearly that no rational jury could have found to the contrary" *Del. Dep't of Health,* 865 F.2d at 1414. Under the EPA, Fredriksen does not need to prove Defendant intended to discriminate. A showing of intent, however, may be used to establish that an employer's affirmative defense is a pretext for discrimination. *Del. Dep't of Health*, 865 F.2d at 1414.

Compared jobs do not need to be identical in every respect. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 204 (1974). Equal means substantially equal. *Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265 (3d Cir.1970). This standard does not provide an employer with a justification for paying an employee of one sex less than an employee of the opposite sex because of inconsequential or trivial differences in their respective duties. *Usery v. Allegheny County Inst. Dist.,* 544 F.2d 148, 152–53 (3d Cir.1976). Moreover, at the *prima facie* stage the analysis focuses solely on the compared jobs, not on the individuals holding those jobs. *Miranda v. B&B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1533 (11th Cir. 1992); *Mulhall v. Advance Sec., Inc.,* 19 F.3d 586, 594 (11th Cir.

1994)("Individual employee qualifications are relevant only to defendant's affirmative defenses).

The critical question with respect to the issue of "equal work" is whether the jobs being compared have a "common core" of identical (or substantially similar) tasks. *Brobst v. Columbus Servs. Int'l,* 761 F.2d 148, 156 (3d Cir.1985).

This inquiry is informed by the Equal Pay Act's implementing regulations, which provide that "[s]kill includes consideration of such factors as experience, training, education, and ability," 29 C.F.R. § 1620.15(a); "[e]ffort is concerned with the measurement of the physical or mental exertion needed for the performance of a job, 29 C.F.R. § 1620.16(a); and "[r]esponsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation," 29 C.F.R. § 1620.17(a).

Determining equal responsibility requires an examination of the relative degree of accountability and importance of the job function to the employer. The equal pay standard applies to jobs the performance of which requires equal responsibility. Responsibility is concerned with the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation. 29 C.F.R. §1620.17(a).

The comparison may be made between currently employed individuals and Fredriksen, or it may be conducted between successive incumbents in a single job. Thus Fredriksen may establish her EPA claim by comparing herself to her predecessors, her contemporaries, or their successors. *Dubowsky*, 922 F.Supp. at 991; *Taylor v. Philips Industries, Inc.*, 593 F.2d 783 (7th Cir. 1979); *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 349 & n. 30 (4th Cir. 1994)(allowing comparison to predecessors and successors as well as co-workers performing similar work).

Because the comparison is made between jobs and not individuals, for purposes of a *prima*

8

*facie* case, *Mulhall*, 19 F.3d at 592, Fredriksen need only show she was paid differently because of her sex with respect to a single male employee. *Id.,* 19 F.3d at 590; *Brock v. Georgia Southwestern College*, 765 F.2d 1026, 1033 n. 10 (11th Cir. 1985); *Dubowsky*, 922 F. Supp. at 990.

Fredriksen does not have to prove Defendant intentionally discriminated against her on the basis of sex to prevail under the EPA. *Delaware Dept. of Health*, 865 F.2d at 1414 n. 8; *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1310 (2d Cir. 1995). The Equal Pay Act creates "strict liability." Unless Defendant proves an affirmative defense, it violates the EPA by paying different wages to members of the opposite sex performing substantially equal work. Moreover, the EPA applies to executives in different departments.[4]

Here the jobs occupied by Fredriksen and DeIuliis–President–are substantially similar. A reasonable jury could conclude that the role of President occupied by Fredriksen and DeIuliis at the Coal-Co, and its predecessors or successors, required the same experience, training, education and ability to perform their jobs, required the same effort, and had the same responsibilities.

First, DeIuliis himself noted that the single biggest risk the Company faces is regulatory. The ability to manage that risk is paramount to both the job of President, as well as to the Company's success. Indeed, the inability to manage that risk would result in the Company's demise. Fredriksen's skill set in that regard was the best that DeIuliis had ever seen with respect to management. (PSMF ¶¶97-98). As Defendant points out, neither Fredriksen nor DeIuliis had worked in a coal mine. (PSMF ¶174).

---

[4] *See e.g. Simpson v. Merch. & Planters Bank*, 441 F.2d 572, 578 (8th Cir. 2006)(vice presidents who did not perform identical jobs were substantially equal); *Crabtree v. Baptist Hosp. Of Gadsden, Inc.*, 749 F.2d 1501 (11th Cir. 1985)(assistant vice presidents who had different areas of departmental responsibly could be compared under the EPA); *Denman v. Youngstown State Univ.*,  545 F/ Supp. 2d 671, 677 (N.D. Ohio 2008)(general counsel and rest of the university president's cabinet performed substantially equal work, even though they oversaw different areas of the university); *Rinaldi v. World Book, Inc.*, 2001 WL 477145 at *9 (N.D. Ill. May 3, 2001)(vice presidents in different departments substantially equal because of common core of administrative tasks).

Moreover, DeIuliis compared his situation when he was President of first Consol's gas assets company and then of Consol, to the position of President of Coal-Co. He said the responsibilities of the President of Coal-Co should be similar to what they were for him when he was President of the gas portion of the Company. DeIuliis admitted his Presidency was the model for Fredriksen's Presidency at Coal-Co. (PSMF ¶¶84-88).

When DeIuliis was President of Consol Energy Inc, his duties, like the duties of Fredriksen, included the executive supervision of administrative and corporate matters. (ND. 14/ln 13-16/ln13, App. Ex. 1); As President of Coal Company, Fredriksen supervised functions for everything except the Chief Financial Officer, and she was slated to assume management of operations after the end of 2017. (PSMF ¶83).

When President, DeIuliis, like Fredriksen reported to the CEO. (PSMF ¶¶79-84). When DeIuliis was President of what was then CNX Gas Company, a subsidiary of the Parent Company, it managed the gas assets, just as the Coal-Company managed the coal assets. (PSMF ¶80, ¶91).[5]

DeIuliis described his situation as President as a similar situation to that of Fredriksen. In both cases, the CEO and president position of Consol Energy were split to allow for succession. And so DeIuliis was President for about 3 years before he assumed CEO position. He informed Fredriksen their positions were comparable. (PSMF ¶84).

Indeed, when he offered Fredriksen the position, DeIuliis told Fredriksen her role as President would be like it was for him when he was President. (PSMF ¶86). DeIuliis' position as President

---

[5]In 2005, DeIuliis was president of CNX Gas, which had been wholly owned by Consol Energy Inc. (PSMF ¶82).CNX Gas operated in such a manner for four years and then it was returned to wholly owned by Consol Energy Inc. (PSMF ¶83) For a period, CNX Gas was public company subsidiary of Consol Energy Inc–20% of it was publicly owned and the rest owned by Consol Energy Inc. (PSMF ¶¶82-83).

involved substantially similar skill, effort and responsibility as Fredriksen's position as President. (PSMF ¶87).

Moreover, the positions involved substantially similar situations because in 2014, DeIuliis' last year as  President, Consol, operated 3 or 4 coal mines and in 2017 when Fredriksen was President, Coal-Co operated 3 mines, with 1 idle (PSMF ¶¶89-90).

The fact DeIuliis was responsible for executive management of gas mines rather than coal mines is irrelevant because he viewed the natural gas management team and the coal management team as equivalent, and it is therefore, at least a disputed fact.  (PSMF ¶91).

Moreover, the responsibilities of both positions were the same.  Indeed, DeIuliis obviously saw his position as President and successor to the CEO as substantially similar to Fredriksen's position because he first proposed Fredriksen as the CEO of the Coal Co, and Brock as the President. He viewed the skill, effort and responsibilities of the CEO and the President as substantially similar. (PSMF ¶¶93-99).

Managing the regulatory risk, the most important aspect of managing Coal-Co, was the effort required by the highest level executives at both Consol Energy Inc., as well as Coal-Co, and Fredriksen's skill sets were the best DeIuliis had ever seen in that regard. (PSMF ¶¶97-99).

Moreover, the skill, effort and responsibility inherent in the position of President at both the gas and coal portions of the Company involved providing management depth, important for the public markets, where Coal-Co was seeking funding. (PSMF ¶99).

DeIuliis said he had been in a similar situation when he was the President of Consol and another person was the CEO. The plan was to split the positions to allow for a succession.  Thus, he was acting as President for about 3 years, before he assumed the CEO position. And so in his mind,

it would work at Coal-Co just the way it did when he was President. (PSMF ¶¶100-101).  Moreover, both positions shared the same title–President.

In enacting the Equal Pay Act, Congress did not intend to limit its applicability to ***identical*** work.  *Shultz v. Wheaton Glass Co.,* 421 F.2d 259, 265 (3d Cir. 1970), *cert denied*, 398 U.S. 905 (1970); *Brobst*, 761 F.2d at 155.  An employer may not rely on "inconsequential differences in job content" to defeat an Equal Pay Act claim.  *Usery v. Allegheny County Institution Dist.,* 544 F.2d 148, 152 (3d Cir. 1974); *Brobst*, 761 F.2d at 155.

Instead, "the crucial finding on the equal work issue is whether the jobs to be compared have a 'common core' of tasks, i.e., whether a significant portion of the two jobs is identical."  *Brobst*, 761 F.2d at 156; *Marriott*, 2006 WL 3805145 at *5.

A jury could easily view this decision as an admission by Defendant that each of the President positions  required equal skill, effort, and responsibility.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1311 (2d Cir. 1995)(employer's "decision to classify jobs similarly is evidence that the purported differences between the positions may not be substantial").

Viewing the facts in the light most favorable to Fredriksen, the two President positions shared a "common core" of tasks.  Fredriksen and DeIuliis, as President, were each high-level executives. Both jobs required the same responsibility. Fredriksen's and DeIuliis' degree of accountability were very high.  Both were responsible for managing the most important risks the Company faced–risks DeIuliis noted were highly significant to the continued existence of the Company. (PSMF ¶¶93-98). Both carried the title of President.  Both involved the executive supervision of administrative and corporate matters.(PSMF 78, 85); both were appointed by the Board of Directors. (PSMF ¶1).

Fredriksen's responsibilities initially were to drive the separation of the two companies, gas

12

and coal, including setting up different and separate systems for compliance, internal controls, financials and accounting, corporate electronic and telephonic communication systems, policies, human resources, public relations, branding and reputation, communicating to employees, and interfacing with the Board of Directors. She also was responsible for running the company, working with the CEO and Board to set strategic objectives, and then leading the company in meeting those objectives while utilizing capital judiciously. The President was also responsible for managing the company's significant liabilities, particularly with respect to reclamation of abandoned and closed mines, along with water treatment, to reduce the liabilities as well as the surety bonds (and any associated collateral) that make up the company debt. In addition, the President was responsible for management of liabilities associated with human capital, such as pension, black lung, and retirees. (PSMF ¶¶176-201).

In *Simpson v. Merchants & Planters Bank*, 441 F.3d 572 (8th Cir. 2005), the Court held that when comparing vice president positions, a reasonable jury could determine both employees possessed similar skills, and the jobs required the same effort and responsibility. Examining the first factor of skill, the court concluded both vice presidents possessed the same experience, training, education and ability to perform their jobs. *Id.* at 578. The second factor, effort, was determined to be equal because both employees were required to apply the same base of industry knowledge to their jobs. The third factor, responsibility, was also determined to be equal because both vice presidents did work that required a high degree of accountability. *Id.*

As in *Simpson*, here both positions required experience in the company's industry–Fredriksen at the time had more than 6 years experience; DeIuliis when he was appointed president had similar experience. Both positions required application of industry and regulatory knowledge to their jobs,

13

and both required a high degree of accountability–indeed, the President position required what in the final analysis was, as DeIuliis put it, the ability to manage what would otherwise result in the "death" of the company. (PSMF ¶¶75-102).

1. **Defendant's distinctions between President or other vice presidents are not compelled as a matter of law and improper for factual resolution on a summary judgment record**

Nor do differences in the Company's make up when DeIuliis was President change this analysis. Both DeIuliis when he was President, and every one of Fredriksen's comparators when she was a Vice President, had administrative responsibilities as head of the company (in DeIuliis' case), or their respective departments in the case of the vice presidents.

Defendant's arguments are questions of fact: whether differences in the size of the company affect the analysis of similarity or whether differences between DeIuliis' duties and Fredriksen's are significant, although DeIuliis said otherwise, are for a jury to decide. (PSMF ¶88, ¶102).

In *Husser v. New York City Dep't of Educ.*, 2015 WL 5774741 (E.D.N.Y. Sept. 30, 2015), the Court denied summary judgment where the plaintiff, Director of Labor Relations, identified male heads of departments as comparators. These comparators included the Directors of Information Technology, Human Resources, Maintenance, Facility Management Services, Emergency Preparedness, Program Management, Environmental Health and Safety and Field Operations. Although the comparators spanned different areas of expertise, the Court evaluated their administrative duties, focusing on their levels of responsibility, and ultimately concluded:

> [D]efendants can focus on the substantive differences among each director[']s duties and the wide array of their departments' respective sizes and budgets. In such circumstances, it is clearly the fact-finder's role to assess such evidence and determine whether [plaintiff] has made a *prima facie* showing that she and her colleagues had comparable jobs for purposes of the Equal Pay Act; summary judgment on this issue is therefore unavailable.

*Id.* at *11 (Comparators worked in same broad division, reported to a common supervisor, and had

specialized skills and experience).   *See also Lenzi v. Systemax, Inc.*,  2015 WL 6507842, at *1 (E.D.N.Y. Oct. 26, 2015) (question of fact as to whether Vice President and head of Risk Management performed substantially equivalent work as i) Vice President of Audit department, ii) Vice President and Controller, iii) International Controller, iv) General Counsel, v) Director of Facilities).[6]

The interpretation of the EPA that Defendant invites this Court to create, which considers employees of different departments, or Presidents of predecessor subsidiary companies to be incomparable as a matter of law, would read a de facto exemption for executive-level women  into the statute.[7] This reading takes the equivalency standard to an illogical conclusion, and more importantly asks this Court to create an exception to the 55-year-old EPA that Congress never either expressed or intended.

Because a reasonable jury could determine that Fredriksen was paid less than DeIuliis for the job of President, which required equal skill, effort and responsibility, material issues of fact exist and

---

[6]*See also Denman v. Youngstown State Univ.*, 545 F. Supp. 2d 671, 677 (N.D. Ohio 2008) (General Counsel and Assistant to President of university could compare herself to other members of President's cabinet, including Vice President of Administration and President's special assistant responsible for representing the President at meetings, drafting speeches and "trouble-shooting"); *Rinaldi v. World Book, Inc.*, 2001 WL 477145, at *9 (N.D. Ill. May 3, 2001) (question of material fact in EPA claim as to whether plaintiff Vice President of Sales was comparable to Vice President of IT Systems where both employees had common core of administrative responsibilities and specialized non-administrative responsibilities)*McMillan v. Massachusetts Soc. for Prevention of Cruelty to Animals*, 880 F. Supp. 900, 907 (D. Mass. 1998)(material issue of fact existed as to the comparability of department head jobs); *McMillan v. Massachusetts Soc. for Prevention of Cruelty To Animals*, 140 F.3d 288, 299 (1st Cir. 1998).  *See Crabtree v. Baptist Hosp. of Gadsden, Inc.*, 1983 WL 30400, at *4 (N.D. Ala. Dec. 7, 1983), *rev'd on other grounds,* 749 F.2d 1501 (11th Cir. 1985) (Vice President and head of human resources could compare herself to male colleagues who had supervision over other departments); *Delima v. Home Depot U.S.A., Inc.*, 616 F. Supp. 2d 1055, 1082-83 (D. Or. 2008) (plaintiff freight supervisor could compare herself to supervisors in other departments despite defendant's argument that her position was "unique"); *Lauterbach v. Illinois State Police*,  2015 WL 4555548, at *5 (C.D. Ill. July 28, 2015) (rejecting employer's argument that plaintiff's "male colleagues occupied distinct upper-management positions belying the notion of equal work" in case where plaintiff bureau chief compared herself to bureau chiefs in different areas).

[7]Defendant asks this court to hold, as a matter of law, that the EPA does not even apply to upper level management positions within the hierarchy of a company's administration. See (Def's Brief at ¶12).

Defendant's motion for summary judgment should be denied.

> **2.      Defendant must establish its Affirmative Defense so clearly that no rational jury could find otherwise.**

Next Defendant claims it is entitled to summary judgment because it "has met its burden of establishing an affirmative defense." (Def's Brief at ¶16-18).

Defendant's Brief offers two purported affirmative defenses: first, Defendant claims the vice presidents had longer tenure and therefore were paid more pursuant to a "seniority system" (Def's Brief at ¶16), and that between July 10, 2017 and December 4, 2017, it did not pay Fredriksen the same as it paid other presidents or even as much as it paid lower ranking executives who reported to her  because it decided not to do so. (Def's Brief at ¶17-18). But Defendant is wrong as a matter of law and incorrect as a matter of fact.

To obtain summary judgment on one of its affirmative defenses, Defendant's burden is heavy, *EEOC v. School Board, East Allegheny School District*, 29 Fair Emp. Prac. Cases (BNA) 1767 (W.D. Pa. 1980)--far exceeding the burden of articulation born by a defendant in a Title VII action.[8] Rather than just articulating a reason for its actions, an EPA defendant must ***prove*** every element of its Affirmative Defense. *Delaware Dept of Health*, 865 F.2d at 1415.

An employer may exempt itself from liability only by showing the differential salary was made pursuant to: (1) a seniority system, (2) a merit system (3) a system which measures earnings by quantity or quality of production, or (4) a differential based on any factor other than sex. 29 U.S.C. §206(d)(1).  Again, Defendant shoulders the burden of proving one or more of these defenses. *Corning Glass Works v. Brennan,*  417 U.S. 188, 196-97 (1974).

---

[8]In a Title VII action, the burden of persuasion always remains with the plaintiff. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993). However, in a EPA case, once a *prima facie* case is made,  the burden of persuasion shifts to the defendant. *Dubowsky,* 922 F. Supp. at 993; *Mulhall*, 19 F.3d at 590-91;

Even if Defendants succeed in proving an affirmative defense, Fredriksen may still survive summary judgment by pointing to evidence showing the nondiscriminatory justification provided by Defendant is a pretext for discrimination. *Delaware Dept of Health*, 865 F.2d at 1414, n. 8.

Here, Defendant claims it paid Fredriksen less than DeIuliis between July 10, 2017 and December 4, 2017 because it decided to pay her less–that is it made a decision to wait until after the spin. Defendant likewise attempts to explain the difference in pay between Fredriksen and her male subordinates by claiming they worked for the company longer–in short, Defendant claims it has a "bona fide seniority system." It claims both are Affirmative Defenses under the EPA, 29 U.S.C. §206(d)(1).

As set forth below, Defendant's "wait until the spin" reason is not an affirmative defense under the EPA. Nor does Defendant have a bona fide seniority system.

Defendant relies heavily on the fact that it decided to wait because "DeIuliis determined that any compensation adjustments for the newly-appointed officers of [Coal-Co] should be made after the spinoff by the new compensation committee of [Coal-Co]." (Def's Brief at ¶18)[9]

Thus, Defendant argues, its mere decision to not equalize pay for five months is apparently a factor other than sex, and therefore an affirmative defense. (Defendant's Brief at ¶17-18). In short--for no reason other than it decided to do so, and has the authority to do so, Defendant remarkably contends the Equal Pay Act provides a defense for this.

Defendant is wrong because its decision to let five months pass before paying Fredriksen the same as other Presidents, is nothing more than an authorization to decide what salary to pay, not a

---

[9]Defendant also seems to claim that it matters that it did not adjust compensation for other executives. But, of course that is irrelevant because an EPA plaintiff need not show others were subjected to gender-based decisions to show she was. *See Wildi*, 659 F. Supp. at 660 (plaintiff need only show discrimination in pay against an employee vis-a-vis one employee of the opposite sex to establish an Equal Pay Act violation).

reason for making such a decision. Thus it is not a "factor other than sex" under the EPA.  Finally, no ascertainable factors guided Defendant's decision,  when it made its decision, and therefore the mere fact  it decided not to equalize salaries without more, does not constitute a "factor other than sex" and therefore is not an EPA Affirmative Defense.

> **a.    An "authorization to decide" is not a legitimate reason why the decision was made.**

 Defendant is wrong when it claims its decision to wait to adjust compensation is a "factor other than sex," because Defendant misunderstands the nature of this defense.

The "factor other than sex"  Affirmative Defense does not provide employers with a blanket bar to all wage discrimination claims. It must have some relationship to a legitimate business reason, and  does not include, literally, any other factor, but, rather, includes only those factors related to the performance of the business.  *EEOC v. J.C. Penny Co., Inc.,* 843 F.2d 249, 253 (6th Cir. 1988).

In short, a "factor other than sex" must be a factor that explains ***why*** an employer made a decision to pay a woman less than a man for a substantially similar job, not, as here, an explanation of *how* the decision was made. It must be a reason for a decision, not an "authorization to decide." *See  Bates v. United States Postal Service*, *slip op.*, No. 97-3090, at 15 (3d Cir. Jan. 16, 1998)(Attached to Appendix as Exhibit 23); *see also Iadimarco v. Runyon*, 190 F.3d 151, 166-67 (3d Cir. 1999).

In *Bates*, the employer, in the face of a *prima facie* case of discrimination, merely pointed to regulations giving it the discretion to take the action it took. The Third Circuit held the employer's evidence was insufficient to meet even its light burden of articulating a legitimate nondiscriminatory reason:

The USPS thus offered an authorization to decide, rather than a nondiscriminatory

reason for its decision. Even if the USPS has broad discretion in hiring--an issue on which we need take no position--the ADEA requires it to exercise that discretion in a nondiscriminatory manner. Because the USPS failed to assert a legitimate nondiscriminatory reason for refusing to transfer Bates, the district court erred by granting summary judgment in favor of the USPS.

*Bate slip op.*, No. 97-3090, at 15-16 (3d Cir. Jan. 16, 1998)(Appendix, Exhibit 23).

Here, Defendant's "we decided" reason as a "factor other than sex" is precisely the same thing the Postal Service offered in *Bates*. Because Defendant's "we decided" and "we are allowed to do so" is nothing more than an "authorization to decide" it is not a factor other than sex, and Defendant's motion for summary judgment should be denied.

### b.    Defendant Does Not Pay Employees Pursuant to a Bona Fide Seniority System.

Finally, Defendant attempts to explain the difference between what it paid its President and the higher amount it paid a mere Vice President by claiming the existence of a bona fide seniority system, which it contends entitles it to an affirmative defense under the EPA, 29 U.S.C. §206(d)(1).

Defendant is wrong. Whatever Defendant's seniority explanation is, it is *not* a seniority system because (a) it is not in writing; (b) it contains no identifiable standards for measuring seniority (either in writing or in the air); (c) it is not systematically applied and observed; (d),was not a reason anyone has heretofore attributed to the differential in pay, and (e) neither Defendant's employees, nor Fredriksen, were even aware of the existence of this "system"--much less the standards governing it.

Because Defendant's after-the-fact "seniority" reason meets none of these criteria, it does not qualify as a "seniority system" and therefore cannot operate as an EPA Affirmative Defense.

### i.    A "seniority system" is a term of art with specific requirements.

Defendant claims its "greater tenure" justification is a bona fide seniority system because some of the   vice presidential comparators were long-time employees. (Def's Brief at ¶16). Defendant is wrong.

A "seniority system" is a scheme that, alone, or in tandem with non-seniority criteria, allots to employees ever-improving employment rights and benefits as their relative lengths of employment increase. *California Brewers Assn. v. Bryant*, 444 U.S. 598, 605-06 (1980). Unlike other methods for allocating employment benefits and opportunities, such as subjective evaluations or educational requirements, the principal feature of every "seniority system" is that preferential treatment is dispensed on the basis of some measure of time served in employment. *Id.* (footnotes omitted).

A  "seniority system" must be uniformly enforced and written. *Irby v. Bittick,*  44 F.3d 949, 954 (11th Cir. 1995);   *Brock v. Georgia Southwestern College,* 765 F.2d 1026, 1036 (11th Cir. 1985)(merit system). Before an unwritten system can pass muster, it must fulfill at least one additional requirement: the employees must be *aware* of it.  *EEOC v. Aetna Ins. Co.*, 616 F.2d 719, 725 (4th Cir. 1980); *EEOC v. Whitin Machine Corp*., 635 F.2d 1095, 1097 (4th Cir. 1980). Here,  Defendant has the burden of proof on this Affirmative Defense but has offered no evidence that any of its employees, nor, for that matter, its executives, are aware of the standards of Defendant's alleged seniority system.

If a seniority system based on longevity as a supervisor with Defendant is to be relied upon as an Affirmative Defense, Defendant must be able to identify standards for measuring seniority that are systematically applied and observed. *Irby*, 44 F.3d at 954, *citing Bryant*, 444 U.S. at 606-609, (requiring ancillary rules in order to constitute a valid seniority system); *Hodgson v. The Washington Hospital*, 1971 WL 128 (W.D. Pa.  April 22, 1971).

20

Here the raises Defendant calls "merit" increases are awarded not systematically, but apparently based on some un-specified criterion.  Fredriksen herself did not receive the mis-named "merit" increase during some of her years. In fact, relative lengths of pertinent employment has nothing to do with what each executive was paid.

Because Defendant's "longevity" explanation does not distinguish salary increases based on length of service, but merely provides across the board "merit" increases each year, regardless of hire date, Defendant does not have a "seniority system" and its motion for summary judgment should be denied.

### C.   Material Factual Issues Preclude Summary Judgment on Fredriksen's Retaliation Claims

The Equal Pay Act and Title VII  preclude discharge of an employee because she has filed any complaint under the act.  29 U.S.C. §215(a)(3); 42 U.S.C. §2000e-3(a).  These sections protect informal complaints of wage disparity to an employer. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011); *Wildi v. Alle-Kiski Medical Center*, 659 F. Supp.2d 640,664-65 (W.D. Pa. 2009), *vacated on other grounds slip op*  Civ. A. 08-284  Order of Nov. 6, 2009 [Doc. No. 46] (attached as Exhibit 24).

To state a *prima facie* case of retaliation, Fredriksen need only  point to evidence showing (1) she engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the adverse employment action and the protected activity. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007); *Abramson v. William Patterson Coll.*, 260 F.3d 265, 286 (3d Cir. 2001).   Here, Defendant claims Fredriksen did not engage in protected activity and cannot show causation.

However, the record is replete with evidence Fredriksen engaged in protected activity by

21

complaining about the gender disparity in wages to Brock, Powell and Salvatori.  Moreover, both the temporal proximity between her complaints and Brock's decision, as well as other evidence of inconsistencies, show causation.   Therefore, summary judgment should be denied.

> **1.    Fredriksen need only implicitly complain about conduct she reasonably believed[10] was discriminatory.**

An "employee is not required to use legal terms or buzzwords when opposing discrimination."  *Kelley v. Sun Microsystems, Inc.*, 520 F. Supp. 2d 388, 403 (D. Conn. 2007); *Wildi*, 659 F. Supp.2d at 665.  Fredriksen need only show the employer "understood, or reasonably could have understood, that her opposition was directed at conduct prohibited by the [Equal Pay Act]."  *Galderi-Amborsini v. Nat'l Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *Kelley,* 520 F. Supp. 2d at 403.

In *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995), the Third Circuit held that a complaint is protected opposition if it either ***explicitly or implicitly*** complains that an impermissible factor is involved.  *Id.* (emphasis added).  Here, Fredriksen did both.

> **2.    Fredriksen both explicitly and implicitly complained to Brock, Powell, and Salvatori that Defendant paid her less than men and did so because she was a woman.**

Fredriksen's testimony shows she explicitly complained to Brock, Salvatori and Powell that her pay was less because she was a woman. (PSMF ¶108-149).

She complained about her gender-based pay deficiencies at least two times to Brock–the first

---

[10]A retaliation plaintiff, need not prove the merits of the underlying discrimination complaint to be protected from retaliation; rather, she need only show she opposed conduct she in good faith believed to be discriminatory.  *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006);  *Abramson*, 260 F.3d at 286.  Importantly, Fredriksen need not be *correct* that the behavior about which she is complaining actually established an Equal Pay Act violation; instead, she need only have a good faith reasonable belief it did.  *See e.g. Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996).

in September 2017, the other in November 2017. (PSMF ¶108-149).[11]

Fredriksen also complained to Powell, Defendant's Board Chair about her compensation at the end of September 2017.  She told  Powell she was very concerned about her compensation; she was not being paid as a President, although she was the President. Fredriksen told Powell that she observed that  male executives who had moved to different and higher positions had been paid according to their new positions.  She specifically told Powell that Rush had his compensation adjusted to reflect his new position, and that she did not understand why hers was not, especially because she was a woman.  Fredriksen's complaint to Powell about her compensation being affected was a complaint that she was paid less because of her gender. (PSMF ¶¶142-145).

She raised this issue repeatedly with Salvatori, Defendant's Vice President of Human Resources. (PSMF  ¶¶110-115).

Even if this Court were to ignore Fredriksen's  testimony (which it cannot do on a summary judgment record), Salvatori admitted that Fredriksen's complaints were that she was paid less because of her gender.  (PSMF ¶114).[12]

Because Fredriksen explicitly complained of gender wage disparity, and Salvatori admitted as much, material issues of fact exist on whether Fredriksen engaged in protected conduct, and

---

[11]During the September 2017 conversation, Brock asked Fredriksen if he had seen the list of compensation on the proposed Form 10.  Fredriksen told Brock she was listed as the Company's President, but that she made less than the rest of the guys who report to her."   Brock acknowledged this and said  it was embarrassing because she was the only woman and her pay was the lowest, while she was in the position of President, the second highest position in the Coal Company. Fredriksen agreed it was embarrassing.   Fredriksen hit the table and told Brock she also had complained about this issue to Salvatori.  Brock responded by rolling his eyes. (PSMF ¶¶122-127).

[12] Fredriksen told Salvatori she was the only woman executive and that if she was not being paid based on her position, and she was the only woman in such a position, then  the decisions must be because she is a woman.  Salvatori told Fredriksen he did not think the pay differentials were gender based because the Company decided not to immediately pay her for the position she occupied but, rather, wait until the Company went public.  On another occasion when Fredriksen complained that pay decisions regarding her were gender-based, Salvatori said he did not know if the pay differentials were because she was a woman or not. (PSMF ¶¶112-120, 132-133).

Defendant's motion for summary judgement should be denied.

### 3.    Factual issues exist on Fredriksen's causation element.

Defendant next claims no evidence of causation exists. Defendant is wrong.

#### a.  Fredriksen's text message musings to her friend prove nothing.

Defendant first argues that in a March 2018 text message with a personal friend, Fredriksen admitted she did not think she was let go because she asked for a pay raise. (Def's Brief at ¶23). Defendant calls this an admission and claims it "estops" Fredriksen from asserting a causal connection. *Id.* The Third Circuit has held just the opposite.

Fredriksen's views on why Defendant fired her prove nothing. In *Olson v. General Elec. Astrospace.*, 101 F.3d 947, 955 (3d Cir. 1996) the defendant made much the same claim, asserting because plaintiff testified he did not think the decision-maker discriminated against him, no material issue of fact existed. The Third Circuit rejected such an argument as irrelevant whether Olson believed the defendant did not discriminate against him. *Id.* at 955 ("Olson's belief...does not establish that Sansoni's recommendation was not, in fact altered by his view of Olson's health"); *See also Marra v. Philadelphia Hsg. Aty*, 497 F.3d 286, 307-08 (3d Cir. 2007) (Marra's admission on cross examination that he did not believe he was retaliated against does not undercut a finding of pretext); *Cf. Moore v. City of Philadelphia*, 461 F.3d 331, 345 (3d Cir. 2006)(discrimination may manifest itself in the presence of the victim, or behind her back).

Defendant makes no attempt to deal with *Olson:* it simply ignores it.  Further, Brock's own testimony that he was primarily concerned with how much Coal-Co would have to pay Fredriksen as President when he decided to terminate her belies any assertion that Fredriksen's salary was not part of that decision.  (JB 93/ln. 5-14, App. Exh. 3).

b.      **Causation is shown in a number of ways**.

Defendant next claims causation cannot be shown because Brock (and Powell) were unaware she had complained. (Def's Brief at ¶24).

i.      **Record evidence shows Brock and Powell were aware Fredriksen had complained about gender based compensation discrimination**

The short answer is the record clearly shows a factual dispute about what Brock and Powell knew for all the reasons set forth, *supra,* pgs. 22-24.  Moreover, Defendant's argument that no causation exists because its Board ratified Brock's decision is legally untenable.

In *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), the Supreme Court held that if a supervisor performs an act motivated by a discriminatory animus that is intended by the supervisor to cause an adverse employment action, and if that act is the  proximate cause of the ultimate employment action, then the employer is liable, regardless of whether that supervisor is the formal decision maker. *Id.* at 422; *Abramson v. Wm. Patterson College of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001)(if biased subordinate played even some role in the decision, the employer is responsible,  even if that subordinate was not the final decision maker); *see also Azzaro v. Cnty of Allegheny*, 110 F.3d 968, 973-74  (3d Cir. 1997).

Even if the Board conducted its own investigation,  *Staub*, rejects a focus on the insulation of the formal decision maker, or the conduct of an investigation:  *Staub*, 562 U.S. at 419-420.

Defendant's current embellishment of that answer itself raises an issue of fact about the credibility of its now articulated reasons.  *See Roehrig v. W.G. Tomko, Inc.*, 2016 WL 2755177 at *3-4   (W.D. Pa. May 12, 2016); *Sabbrese v. Lowe's Home Ctrs, Inc.*, 320 F. Supp.2d 311, 320 (W.D. Pa. 2004)(employer's attempt to hide or embellish identity of decision maker creates fact issue

on its credibility precluding summary judgment).

### ii.    The record shows abundant evidence linking Fredriksen's complaints to her discharge.

A retaliation plaintiff can rely on a broad array of evidence to demonstrate a causal link between protected activity and adverse action taken against her. *Marra*, 497 F.3d at 302; *Farrell*, 206 F.3d at 284.

First, unusually suggestive proximity between the protected activity and the adverse action may itself suffice to establish the requisite causal connection. *Marra*, 497 F.3d at 302; *Fasold v. Justice*, 409 F.3d 178, 189 (3d Cir. 2005).  Two weeks or less  is sufficient *by itself* to provide an evidentiary basis from which an inference of causation can be drawn. [13]

This Court has held that a termination less than three months after the decision makers assumed office and were in a position to fire the plaintiff is itself "sufficient evidence supporting a contention that the plaintiff's protected affiliation motivated discharge. *Bertaini v. Westmoreland County*, 212 F. Supp.3d 564, 569-570 (W.D. Pa. 2014).

The time line evidence in this case is, in fact, "unusually suggestive" of a retaliatory motive. However, even if not, Fredriksen can substantiate a causal connection for purposes of a *prima facie* case through other types of circumstantial evidence.  *Farrell,* 206 F.3d at 281. Causation, not temporal proximity or evidence of antagonism, is the element of Fredriksen's case*. Id.*

If  the temporal relationship itself is not sufficient to create a factual issue over causation, a "time plus" other evidence can support it.  *Id.*, 206 F.3d at 280.  This "other" evidence may, but need

---

[13]*See  Shellenburger v. Summit Bancorp., Inc.*,  318 F.3d 183, 189 (3d Cir. 2003)(10 days unusually suggestive);  *Straub v. First Media Radio, LLC*, 2005 WL 3158042 at *15  (W.D. Pa. 2005)(Rejection of sexual advance in May 2002 followed in August 2002 by employer writing  note that led to plaintiff's discharge would raise a suspicion concerning the timing of the employer's action).

not, take the form of an intervening pattern of antagonism or other evidence of retaliatory animus. *Id.*, 206 F.3d at 281.  However, sufficient proof is not limited to timing and demonstrative evidence alone;  instead, this element may be satisfied by "other" evidence gleaned from the record as a whole, from which causation can be inferred.  *Id.  See Kellerman v. UPMC St. Margaret*, 317 Fed. Appx. 290, 293 (3d Cir. March 19, 2009).

**iii.    Brock began the process of firing
Fredriksen less than three weeks after her
final complaint to him, and within three
days of when Defendant admits he could act
on his own.**

The temporal proximity between Fredriksen's protected conduct and Brock's initiation of the discharge process is highly suggestive. A reasonable jury could find causation from the timing alone.

Defendant characterizes the timeline of events as a decision to fire Fredriksen "weeks or months" after she complained.  (Def's Brief at ¶25).  But the record shows much closer timing. Indeed a reasonable jury could believe that, as Defendant argues, Brock could not act on his own until November 28, 2017 when he became the sole decision maker.  He decided to fire Fredriksen two days later, on Dec. 1, 2017, and told Fredriksen the following Monday. (PSMF ¶¶158-161, 168).

Temporal proximity analysis looks to a comparison between the protected conduct and action by the employer that *sets in motion* the events leading to termination. *See Marra*, 497 F.3d at 305 (comparing date of protected conduct with *date employer resolved to discharge*); *Kachmar*, 109 F.3d at 178 (although employee not officially discharged until January 1994, her allegation that she was told her position would be offered to a male in November 1993 would show defendant had *resolved to discharge* her shortly after the latest protected activity in mid-1993); *Hill v. City of Scranton*, 411 F.3d 118, 133 (3d Cir. 2005) (considering as part of temporal proximity analysis fact that discharged

employee's pre-termination hearing initially was scheduled 3 months before actual discharge); *Jarzabek v. UPMC Passavant Hospital.*, 2009 WL 693251 at \*11 (W.D. Pa. March 13, 2009)(Conti, J).

Considering the correct sequence of operative events, the timing here is highly suggestive. Brock resolved to fire Fredriksen on November 30. (JB. 108/ln. 10-25, 109/ln. 1-24, App. Ex. 3). This is two days after he was able to do so on his own authority, and less than three weeks after Fredriksen's November complaint to him. (PSMF ¶¶135, 158).

Moreover the timing of Brock's decision to fire Fredriksen is unusually suggestive because it occurred within a mere 2 days after Brock had his first opportunity to do so. An adverse action can be retaliatory even years following protected complaints if it occurs shortly after the decisionmaker's first realistic opportunity to do so. *See Connelly v. Lane Const. Corp.,* 809 F.3d 780, 792-93 (3d Cir. 2016)(seasonal worker not re-hired may show decision maker retaliated at first opportunity, though adverse action was months after protected complaint)*; McGuire v. City of Springfield*, 280 F.3d 794, 796 (7th Cir. 2002) (adverse action could be retaliatory even though it followed protected activity by ten years because it was the employer's first opportunity to retaliate).[14]

Here, a reasonable juror could find that revenge is a dish best served cold, and that Brock, who rolled his eyes when Fredriksen hit the table and complained about her gender-based salary deficiencies, ( PSMF ¶126), simply bided his time until he could eliminate Fredriksen without the inconvenience of justifying her discharge to her supporter DeIuliis. *See Hicks v. Forest Preserve Dist.*

---

[14]*Porter v. California Dep't of Corrections*, 383 F.3d 1018 (9th Cir. 2004) (first chance to retaliate occurred two years later when plaintiff was put under supervision of person who retaliated); *Price v. Thompson*, 380 F.3d 209 at 213 (4th Cir. 2004) (adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case). If record evidence reasonably infers that a former employer waited in the weeds for five or ten years and then retaliated against her at the first opportunity to do so after her protected complaints, courts have no difficulty with allowing the case to go forward." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. Ill. 1996).

*of Cook County,* 2009 WL 5064772 at *12 (N.D.Ill. 2009)**.**

> ### iv.     Record evidence shows animus in the face of Fredriksen's complaints to Brock

A reasonable factfinder also could determine that a pattern of antagonism followed Fredriksen's complaints.  Fredriksen offers this evidence to meet both the causation and pretext elements.  The record is filled with factual disputes over whether Defendant's explanation for Fredriksen's discharge are pretextual.

Although examination of Defendant's proffered reasons for Fredriksen's discharge is frequently delayed until the second and third parts of the familiar *McDonnell Douglas* burden-shifting dance in pretext cases, both the Third Circuit, as well as this court have acknowledged that "evidence supporting the *prima facie* case is often helpful in the pretext stage. *LeBoon v. Lancaster Jewish Community Center, Assn.*, 503 F.3d 217, 234, n. 10 (3d Cir. 2007); *Marra,* 497 F.3d at 301, n. 13; *Farrell*, 206 F.3d at 286.

Here, in the immediate aftermath of Fredricksen's September/October 2017 salary complaints to Brock, he began to systematically exclude her from meetings and assignments that would otherwise be part of the obvious duties of the President.

After complaining in September 2017, Fredriksen was excluded from presentations to investors, and was precluded from attending meetings for those investor presentations, although her position as President would naturally include her attendance. (KF. 150/ln. 23-25, 151/ln. 1-8, 19-25, 152 1-4,  22-25, 153/ln. 1-17, App. Ex. 4).

Following Fredriksen's salary complaints, Brock began to speak of "her" in a very demeaning manner.  He said "I don't want 'her' involved.  I don't want "her" on the road show."  Fredriksen was the only "her" in the room. (PSMF ¶¶153-156).

As Fredriksen notes, one of the duties of President was to attend such meetings and presentations.  Even if Brock's exclusion of Fredriksen from meetings is not itself an adverse employment action, it clearly is evidence of antagonism  Indeed, in *Marra v. Philadelphia Housing Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) the Third Circuit found evidence of a pattern of antagonism where plaintiff was *inter alia* excluded from meetings, and was looked at with disgust.  Moreover, the temporal relationship between her complaint and her exclusion from work meetings suggests a causal link. *See Mikulski v. Bucks Cty. Cmty. Coll.*, 2011 WL 1584081, at *5 (E.D. Pa. Apr. 27, 2011).

> ### 4.     Defendant Does Not State A Sufficient Legitimate Non-Discriminatory Reason for Firing Fredriksen

Next, Defendant claims it has offered a legitimate nondiscriminatory reason for firing Fredriksen. (Def's Brief at ¶26-28).  But Defendant, again, is wrong.

At bottom, Defendant claims it fired Fredriksen because it eliminated her position, and that it eliminated her position for financial reasons.  (Def's Brief at ¶26-27).

> #### a.     Defendant Must State a Legitimate Non-Discriminatory Reason for its Decision.

Once a plaintiff has put forward a *prima facie* case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its decision. *McDonnell-Douglas*, 411 U.S. at 804.  The employer must provide a legally sufficient reason for its action: it cannot say simply it had discretion to act or it chose "the best person for the job." *Bates v. United States Postal Service*, *slip op.* No. 97-3090 (3d Cir. Jan. 16, 1998) (App. Ex. 23);  *Iadimarco v. Runyon*, 190 F.3d 151,166-67(3d Cir. 1999).  Further, hypothetical and possible reasons may not serve as a legitimate non-discriminatory reason. *See Smith v. Davis*, 248 F.3d 249, 252 (3d Cir. 2001).

### b.   Job elimination or "financial concerns" are not reasons.

Defendant contends the evidence is undisputed that it fired Fredriksen because of "financial reasons" (Def's Brief at ¶27),  Further, Defendant contends "elimination of a position for financial reasons...is a legitimate, non-discriminatory reason for termination of an individual."

It is not enough for the employer to claim Fredriksen was included in what was a one-person money saving reduction; the employer must provide a reason *why* it chose to include the Plaintiff in the elimination. *Marzano v. Computer Science Corp., Inc.*, 91 F.3d 497, 508-509 & n. 4 (3d Cir. 1996)(using a RIF to eliminate black employees is illegal even if RIF valid).

While an employer may reduce or reorganize its staff as necessary, it may not use a RIF to illegally rid itself of protected employees.

> ...[A]n employer may not use its RIF/reorganization/improved-efficiency rationale as a pretext to mask actual discrimination or retaliation; the mere incantation of the mantra of "efficiency" is not a talisman insulating an employer from liability for invidious discrimination.

*Hodgens v. General Dynamics Corp.*, 144 F.3d 157, 166. (1st Cir. 1998); *see also  Tomasso v. Boeing Co.*, 445 F.3d 702, 707  (3d Cir. 2006); *Showalter v. UPMC*, 190 F.3d 231, 236-38 (3d Cir. 1999).[15]

### c.   Defendant's ever evolving inconsistent reasons for firing Fredriksen preclude summary judgment

But even if Defendant's financial-based job elimination would suffice to meet its burden, summary judgment still should be denied because it has been inconsistent when explaining its reasons for firing Fredriksen.  A reasonable juror could find those inconsistent reasons to be pretextual, and therefore could disbelieve the articulated reason Defendant has settled on for its reason.

---

[15]Moreover, record evidence shows Fredriksen has met the fourth element of the *McDonnell Douglas* test because it retained men in the face of what it apparently claims was a job elimination/reorganization. The fourth prong requires only that Defendant retained men while at the same time firing Fredriksen who is a woman and is undisputedly qualified.  *Surman v. UPMC Presbyterian Shadyside,* 2018 WL 4901107 at *8  (W.D. Pa. Oct. 9, 2018), *citing In re Carnegie Ctr. Assocs.*, 129 F.3d 290, 295 (3d Cir. 1997);  *Marzano*, 91 F.3d at, 502, 510-11.

When Brock fired Fredriksen he told her it was just because he was eliminating her position–nothing else. (PSMF ¶¶153-154). But, then, Defendant told the EEOC that Fredriksen's discharge was also motivated by conflicting management styles. (PSMF ¶170).

Indeed, Brock then changed his story again during his deposition and testified that Fredriksen is no longer employed by Defendant in any capacity because he:

> "Didn't feel like she would be a good team player, and didn't feel like it would be the best thing for the company."

(PSMF ¶15).

Eliminating the President position does not explain why Fredriksen was fired, it just explains why she could not occupy that position. But Defendant admits that if Fredriksen no longer was President, she could remain in an executive position. (PSMF ¶175). Brock never told Fredriksen she was not a "good team player" and never said that was why he was firing her.

Defendant's changing reasons are important because inconsistencies in the employer's statements prior and subsequent to the employment decision support an inference of pretext precluding summary judgment. *Fuentes v. Perskie,* 32 F.3d 759, 764 3d Cir 1994).

If the reasons given for her termination do not remain consistent, beginning at the time they were proffered and continuing throughout the proceedings, this may be viewed as evidence of pretext and speak to Defendant's credibility, which can only be evaluated by the jury. *Abramson*, 260 F.3d at 284; *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 281 (3d Cir. 1998); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 895-896, 901 (3d Cir. 1987)(*en banc*); *Roehrig v. W.G. Tomko, Inc.*, 2016 WL 2755177 at *3 & n. 2 (W.D. Pa. May 12, 2016).

Here, Defendant's reasons have evolved from when Brock told Fredriksen she was dismissed simply because of job elimination to its attempt to create a management conflict and "not a team

player" reason before the EEOC and in Brock's deposition. *See and compare*: (PSMF ¶167-172); (PSMF ¶15)(nothing else but elimination of President position explaining why Fredriksen fired); *with* (PSMF ¶170)("different, conflicting management styles during transition to explain actions) *with* (PSMF ¶¶171-172 )(denying fired because of management style); with (PSMF ¶15) (Fredriksen no longer employed by Defendant because Brock "didn't feel like she would be a good team player, and didn't feel would be the best thing for the company."). In a similar context, the Third Circuit described the shifting explanations of an employer's decision maker during his deposition as "classic *Fuentes v. Perskie* inconsistency" that discredits the employer's reasons and precludes summary judgment. *Roney v. Allegheny Intermediate Unit*, 568 Fed. Appx. 172, 174  (3d Cir. June 11, 2014).

Because the record is replete with Defendant's inconsistent reasons for firing Fredriksen, a reasonable jury can disbelieve them and from that infer a retaliatory motive and Defendant's motion for summary judgment should be denied.

**5.     The record also presents evidence of Brock's gender and retaliatory based animus**

In addition, Fredriksen offers evidence of Brock's actions and comments that a reasonable factfinder could determine evidence a retaliatory or discriminatory mind set.  *See* (PSMF ¶¶2-7, 69, 151-157).

In *Butt v. United Bhd. of Carpenters & Joiners of Am.*, 512 Fed.Appx. 233, 235-36 (3d Cir. 2013), the Third Circuit found a genuine dispute of material fact existed as to what Defendant meant by the statement, "my people are out of work":

> Although the District Court interpreted this 'seemingly inappropriate' statement to mean 'merely that Durkalec did not personally identify with black female carpenters,' . . . this conflicted with Appellant Bronson's interpretation, [that 'she was not a white man and those were the ones that were his people'], which appears to be the only interpretation we can find in the record.

33

Thus, summary judgment for the employer was inappropriate. *Id.* at 236.

The comment in *Butt* that "my people are out of work" is analogous to Brock's initial comments to Fredriksen regarding her mere appointment as President–that "[his] guys" or "the guys" would not accept her in an authority position–and could be understood by a reasonable juror to mean Brock and "his guys" would consider Fredriksen's gender as a problem. (PSMF ¶¶3-5), *See also Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1083 (3d Cir. 1996)(intent to discriminate can be found in use of "code words").

A jury could view the entire scenario here as evidence that Fredriksen's gender played a role in her treatment.  Evidence of discrimination includes, *inter alia*, evidence of an employer's treatment of the employee during her employment; its reaction to the employee's complaints of gender discrimination, and its treatment in general of women. *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 804–05 (1973).

The guys' problem arose within a corporate culture that had issues with change. DeIuliis appointed Fredriksen President in part to "push the envelope and challenge the status quo in a coal culture that was notoriously hierarchical; set in its ways, and traditional."  (PSMF ¶56).

After emotionally and heatedly telling DeIuliis he would quit if Fredriksen was appointed, Brock then said  the idea wouldn't work because his 'guys' would have a hard time accepting her. He raised no performance reason, just that his guys would have a problem. (PSMF ¶¶2-4).

We know "the guys'" problem must not have been Fredriksen's lack of work as a coal miner, because Deluliis who was a man and also  President and CEO,  never worked in a coal mine either. (PSMF ¶174).  No evidence exists that "the guys" had any problem with that.

Although he had never worked with or for Fredriksen, Brock's first reaction to DeIuliis' plan

to appoint her CEO or President was to threaten to quit in an "emotional" and "heated" exchange. (PSMF ¶¶6-7). He was so appalled by even the suggestion that Fredriksen, a woman, would be appointed CEO that he made up a story intimating that DeIuliis was just joking about such a ridiculous concept, a story DeIuliis denied ever happened. (PSMF ¶202).

Brock's reactions to Fredriksen were made in response to first, her appointment, and then to her complaints. Taken as a whole and read in a light favoring Fredriksen, Brock's comments and actions are not "stray remarks" but evidence that he was motivated by a gender and retaliatory animus.[16]

Because Brock's actions and comments could be read by a reasonable juror to evidence gender based animus, material issues of fact exist and Defendant's motion for summary judgment should be denied.

---

[16]In *Masterpiece Cakeshop, LTD v. Colorado Civil Rights Commission, et. al.*, 138 S.Ct. 1719 (June 4, 2018), the Supreme Court held that comments of members of group involved in group decision is significant because it can infect a decision. The Court found such infection based on comments at two meetings by one person of the seven member Commission. First one commissioner said the business owners cannot refuse to provide services to LGBTQ persons because of those business owners' religious beliefs. That statement was made May 30, 2014, in the meeting in which the Commission voted unanimously to adopt the ALJ's recommended decision that the bakery violated the Anti-Discrimination Act. The other statement was made by another commissioner on July 25, 2014, almost two months later, in a hearing on a motion for a stay of the Commission's decision. Again, the Commission voted unanimously to deny the motion for stay. The Court said the first statement was "susceptible of different interpretations" *Id.*, 138 S.Ct. at 1729. The second statement–which the Court quoted at length–could not have infected the Commission's decision against the bakery, since it was made long after that decision. See id., 138 S.Ct. at 1729. Nonetheless the Court relied heavily on this statement in finding impermissible bias. Little remains of the "stray remarks" doctrine afer *Masterpiece Cakeshop*. Clearly the remarks of one of the commissioners made in July 2014, well after the actual decision was made is not "direct evidence" under any view of so called "stray remarks" However the Supreme Court characterized such evidence–and little else–as casting doubt on the motivation of the Commission in the baker's case. Id., at 1730. See also *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997)(discriminatory comments made a year after plaintiff fired does not make them irrelevant); Reeves, 530 U.S. at 151-153(Biased remarks by decision maker probative irrespective of time frame in which they were spoken).

Respectfully submitted,

**Rothman Gordon, P.C.**

/S/Samuel J. Cordes
Samuel J. Cordes
Pa. I.D. No. 54874

310 Grant Street
Third Floor, Grant Building
Pittsburgh, PA 15219
(412) 338-1100

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify on this 31ˢᵗ day of January, 2019, I served a copy of ***Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment*** via the Court's CM/ECF system which will send notice to:

Gerald J. Stubenhofer, Jr.
McGuire Woods LPP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222

/S/ Samuel J. Cordes
Samuel J. Cordes