**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATHARINE ANN FREDRIKSEN | |
| Plaintiff, | Civil Action No. 2:18-CV-00379 |
| v. | Honorable Marilyn J. Horan |
| | United States District Judge |
| CONSOL ENERGY INC. | |
| Defendant. | |

**DEFENDANT CONSOL ENERGY INC.'S
REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    CONSOL WAS NOT PLAINTIFF'S EMPLOYER PRIOR TO NOVEMBER 28,
      2017 AND IS NOT LIABLE AS A SUCCESSOR TO CNX ............................................3

      A.    CONSOL Was Not Plaintiff's "Employer" Until November 28, 2017 .................3

      B.    CONSOL Is Not Liable As a Successor to CNX.....................................................5

II.   PLAINTIFF CANNOT ESTABLISH HER WAGE DISCRIMINATION
      CLAIMS BECAUSE SHE CANNOT SHOW SHE WAS PAID LESS THAN A
      MALE IN A SUBSTANTIALLY SIMILAR POSITION AND, IN ANY EVENT,
      CONSOL HAS ESTABLISHED AFFIRMATIVE DEFENSES .......................................6

      A.    None of Plaintiff's Disputed "Facts" Can Establish that the Jobs Occupied
            By Plaintiff and Mr. DeIuliis Are "Substantially Similar" .....................................6

      B.    CONSOL Has Met Its Burden In Establishing Affirmative Defenses .................10

            1.    CNX's Decision Not to Adjust the Salaries of the Newly-
                  Appointed Officers of CONSOL Mining Is Based on a Legitimate
                  Business Reason and Qualifies as a "Factor Other Than Sex"
                  Affirmative Defense....................................................................................10

            2.    CNX's System of Awarding "Cost of Living" Increases
                  Constitutes An Affirmative Defense under the EPA, Even If It Is
                  Unwritten ....................................................................................................12

III.  THERE ARE NO MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT
      ON PLAINTIFF'S RETALIATION CLAIMS ...............................................................13

      A.    Despite Her Claim of Disputed "Facts," Plaintiff Still Cannot Establish
            Her *Prima Facie* Case of Retaliation......................................................................13

            1.    Plaintiff's Subjective Belief That She Was Being Discriminated
                  Was Not Reasonable, Such That Her Complaints Do Not
                  Constitute "Protected Activity" .................................................................13

            2.    Even Assuming, *Arguendo*, Plaintiff's Disputed "Facts" Are True,
                  Plaintiff Cannot Establish Causation .........................................................14

      B.    Plaintiff Cannot Show That CONSOL's Legitimate, Non-Discriminatory
            Reason for Terminating Plaintiff – Financial Reasons – Is Mere Pretext ............16

## TABLE OF CONTENTS
(continued)

                                                                                    **Page**

CONCLUSION ..........................................................................................................20

CERTIFICATE OF SERVICE ................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. United Defense Ind., Inc.*,
    No. 09-4273, 403 Fed. Appx. 751, 758 (3d Dec. 8, 2010) ............................................15

*Bates v. United States Post Service,*
    Pl.'s Ex. 23 ...................................................................................................................11

*Brzozowski v. Corr. Physician Servs., Inc.*,
    360 F.3d 173, 179 (3d Cir. 2004) ....................................................................................6

*Boaz v. Fed. Exp. Corp.*,
    107 F. Supp. 3d 861, 889 (W.D. Tenn. 2015) ................................................................10

*Butler v. Albany Int'l,*
    273 F. Supp. 2d 1278, 1291 (M.D. Ala. 2003), *aff'd*, 107 F. Appx. 184 (11th Cir.
    2004) ............................................................................................................................10

*Butt v. United Brotherhood of Carpenters & Joiners of Am.*,
    512 Fed. Appx. 233, 236 (3d Cir. 2013)........................................................................19

*Clark Cty. Sch. Dist. v. Breeden*,
    532 U.S. 268, 272 (2001)...............................................................................................15

*Daniels v. Sch. Dist. of Philadelphia*,
    776 F.3d 181, 197 (3d Cir. 2015)...................................................................................15

*Denman v. Youngstown State University,*
    545 F. Supp. 2d 671, 677 (N.D. Ohio 2008)................................................................. 8-9

*Diamond v. Morris, Manning & Martin, LLP,*
    No. 09-cv-28942011 U.S. Dist. LEXIS 162224, at *9-10 (N.D. Ga. Mar. 28, 2011) ....14

*EEOC v. Cox,*
    2001 U.S. Dist. LEXIS 25674, at *19 (M.D. Tenn. June 28, 2001)................................6

*Equal Employment Opportunity Comm'n v. Aetna Ins. Co.,*
    616 F.2d 719, 725 (4th Cir. 1980) .................................................................................12

*Howard Johnson Co. v. Hotel Employees*,
    417 U.S. 249, 257 (1974)................................................................................................6

*In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*,
683 F.3d 462, 468 (3d Cir. 2012).................................................................. 3-4

*Irby v. Bittick,*
44 F.3d 949, 954 (11th Cir. 1995) ..................................................................12

*Jackson v. Geo Group, Inc.*,
312 Fed. Appx. 229, 234 (11th Cir. Feb. 13, 2009)........................................14

*Jordan v. CSX Intermodal,*
991 F. Supp. 754, 759 (D. Md. 1998) ............................................................12

*Kaufmann v. Eppstein Uhen Architects, Inc.,*
No. 13–cv–0674, 2015 WL 520616, at *2 (E.D. Wisc. 2015).......................16

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Righs Comm'n,*
138 S. Ct. 1719 (2018) ...................................................................................18

*Muhammad v. Audio Visual Servs. Group,*
380 Fed. Appx. 864, 873 (11th Cir. May 26, 2010) ......................................14

*Pierce v. Duke Power Co.*,
811 F.2d 1505 (4th Cir. 1987) .......................................................................12

*Proudfoot v. Arnold Logistics, LLC,*
No. 14-4703, 2015 WL 5881530 (3d Cir. Oct. 8, 2015)................................15

*Randall v. Rolls Royce Corp.*,
742 F. Supp. 2d 974, 984 (N.D. Ind. 2010) .....................................................9

*Rego v. ARC Water Treatment Co. of Pa.*,
181 F.3d 396, 402 (3d Cir. 1999)....................................................................6

*Reeves v. Sanderson Plumbing Prods. Inc.*,
530 U.S. 133, 151 (2000)...............................................................................18

*Roney v. Allegheny Intermediate Unit,*
568 Fed. Appx. 172, 174 (3d Cir. June 11, 2014)..........................................18

*Ryder v. Westinghouse Corp.*,
128 F.3d 133 (3d Cir. 1997)...........................................................................18

*Sandvik v. United Rentals (N. Am.), Inc.*,
Civ. No. 04-105, 2005 U.S. Dist. LEXIS 10719, at *18 (D. Minn. June 2, 2005)...........8

*Shellenberger v. Summit Bancorp., Inc.*
    318 F.3d 183, 189 (3d Cir. 2003)..................................................................14

*Simpson v. Merchants & Planters Bank,*
    441 F3d 572 (8th Cir. 2005) ....................................................................8-9

*Straub v. First Media Radio, LLC*,
    No. 2003-237J, 2005 U.S. Dist. LEXIS 31617, at *36, 40
    (W.D. Pa. Nov. 28, 2005) .....................................................................14, 15

*Taylor v. White*,
    321 F.3d 710, 717-18 (8th Cir. 2003) ...........................................................10

*Thompson v. Real Estate Mortgage Network*,
    748 F.3d 142, 152 (3d Cir. 2014)...............................................................5-6

*Wildi v. Alle-Kiski Med. Ctr.*,
    659 F. Supp. 2d 640, 659 (W.D. Pa. 2009)..........................................7, 8, 16

*Windfelder v. May Dep't Stores Co.*,
    93 Fed. Appx 351, 355 (3d Cir. 2004)..........................................................15

**Other Authorities**

29 C.F.R. § 791.2(b) ...............................................................................................3

29 C.F.R. § 800.144...............................................................................................12

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATHARINE ANN FREDRIKSEN | |
| Plaintiff, | Civil Action No. 2:18-CV-00379 |
| v. | Honorable Marilyn J. Horan |
| | United States District Judge |
| CONSOL ENERGY INC. | |
| Defendant. | |

**DEFENDANT CONSOL ENERGY INC.'S
REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

In her Brief in Opposition to CONSOL's Motion ("Opposition" or "Opp."), Plaintiff[1] materially misrepresents the facts and misstates the law in an attempt to convince the Court that disputed issues of material fact preclude summary judgment in this case. Plaintiff's factual misrepresentations will be addressed throughout this Reply in their context, but to convey the magnitude of Plaintiff's misrepresentations CONSOL has prepared an exhibit that juxtaposes Plaintiff's misrepresentations with the facts in the record.[2] Once Plaintiff's factual misrepresentations and misstatements of law are dispelled, it is clear there are no genuine disputed issues of material fact that preclude summary judgment on Plaintiff's Title VII and EPA claims.

As an initial matter, Plaintiff cannot establish that either CONSOL or CONSOL Mining was her "employer" prior to November 28, 2017, or that CONSOL is liable as a successor. CONSOL Mining did not exercise the requisite control to be deemed her "employer" under the EPA or Title VII because Plaintiff admits that: (1) CNX CEO Nicholas DeIuliis, not CONSOL

---

[1] Capitalized terms have the same meanings given them in the Memorandum in Support of Defendant's Motion for Summary Judgment (ECF No. 41).

[2] *See* Def.'s Suppl. Exhibit 30.

Mining CEO James Brock, controlled her salary; (2) she still reported to Messrs. DeIuliis and Johnson of CNX between July 10, 2017 and November 28, 2017; and (3) CONSOL did not have the authority to terminate her employment until November 28, 2017.  Nor can Plaintiff establish that CONSOL is liable as a successor because CNX still exists and has been sued by Plaintiff.

With respect to Plaintiff's wage discrimination claims, Plaintiff fails to refute CONSOL's argument that none of Plaintiff's alleged comparators performed "substantially similar" jobs. Indeed, Plaintiff abandons her claim that Messrs. Khani, McCaffrey, and Barletta performed "substantially similar" positions, leaving only Mr. DeIuliiis, who was President of CNX – a legally distinct entity – when it had both the gas and coal business.  When stripped of her misrepresentations and legal conclusions, Plaintiff cannot establish that her position of President of CONSOL Mining, a wholly-owned subsidiary of CNX consisting only of the coal business, was "substantially similar" to Mr. DeIuliis' position as President of CNX at a time when it consisted of both the gas and coal business.

Plaintiff also fails to offer any actual disputed material facts that preclude summary judgment on her retaliation claims.  Plaintiff's complaints regarding her compensation do not constitute "protected activity" because no ***reasonable person*** under the circumstances would have believed that CNX was engaged in discriminatory conduct in delaying the salary adjustments of the newly-appointed officers of CONSOL Mining until such determinations could be properly made by the new Board after the spinoff – an argument Plaintiff utterly ignores in her Opposition. Even assuming, *arguendo*, that Plaintiff engaged in "protected activity," Plaintiff fails to establish causation; her temporal proximity argument is belied by the undisputed fact that the elimination of Plaintiff's position was contemplated well before she ever complained about her compensation. Having failed to establish a *prima facie* case of retaliation, the Court need go no further.  Even if

the Court finds Plaintiff has established her *prima facie* case, CONSOL has offered a legitimate, non-discriminatory reason for her termination.  Plaintiff all but concedes this in her Opposition, offering only inapposite case law regarding reductions in workforce, which this was not.  As evidence of pretext, Plaintiff only offers statements made by Mr. Brock that "the guys" would not accept Plaintiff as President and that he would retire before reporting to Plaintiff.  Neither of these statements, however, mention gender, let alone establish any gender animus.  As such, Plaintiff's retaliation claims fail as a matter of law.

For all of these reasons, Plaintiff's claims should be dismissed in their entirety.

## I.     CONSOL WAS NOT PLAINTIFF'S EMPLOYER PRIOR TO NOVEMBER 28, 2017 AND IS NOT LIABLE AS A SUCCESSOR TO CNX.

### A.     CONSOL Was Not Plaintiff's "Employer" Until November 28, 2017.

Plaintiff argues CONSOL Mining Corporation ("CONSOL Mining"), a wholly-owned subsidiary of CNX, was Plaintiff's "employer" under the EPA and Title VII between July 10, 2017 and November 28, 2017.  "A parent company and a wholly-owned subsidiary are deemed to be joint employers under the FLSA ***only*** if both entities "exert significant control over the same employees—[whether] from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment."  *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 468 (3d Cir. 2012) (emphasis added).[3]  Here, there is absolutely no evidence of record to show that CONSOL Mining exerted "significant control" over Plaintiff, and that is because it did not.  Plaintiff admits CNX CEO Nicholas DeIuliis, not

---

[3] *See also* 29 C.F.R. § 791.2(b) ("[A] joint employment relationship generally will be considered to exist in situations . . . [w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with another employer.").

CONSOL Mining CEO James Brock, made the determination not to adjust the compensation of any of the newly-appointed officers of CONSOL Mining Corporation, including Plaintiff.[4] *Compare* Def.'s SOF ¶ 61, *with* Pl.'s Response to SOF ¶ 61.  In addition, between July and November 2017, Plaintiff reported not only to Mr. Brock but also to Mr. DeIuliis and Steve Johnson of CNX.  Pl.'s Ex. 1 at 57:13-58:17; Tr. Dep. of K. Fredriksen, attached hereto as Def.'s Suppl. Exhibit 29. at 111:18 (Plaintiff stating "Steve [Johnson] was also still my boss").  In fact, during this time, Mr. Brock, along with the other newly-appointed officers of CONSOL Mining, was an employee of CNX, or its wholly-owned subsidiary Consol Pennsylvania Coal Company LLC.  Def.'s Appendix Ex. 4 at 97.  Moreover, Plaintiff admits that CONSOL Mining did not have the authority to terminate her employment until after November 28, 2017.  *See* Opp. at 28 ("Moreover the timing of Brock's decision to fire Fredriksen is unusually suggestive because it occurred within a mere 2 days after Brock had his first opportunity to do so."); *see also* Pl.'s Ex. 1 at 78:13-22 (CEO DeIuliis' testimony that Plaintiff had to be President and "that's as far as I basically can move on that").  Given that CONSOL Mining did not have authority over Plaintiff's salary or the ability to terminate her prior to November 28, 2017, CONSOL Mining, now CONSOL, cannot be deemed Plaintiff's employer prior to that date.  *In re Enterprise*, 683 F.3d at 471 (finding entity was not a joint employer because it had no authority to hire or fire plaintiff, no

---

[4] Plaintiff cites an October 10, 2017 e-mail from Kurt Salvatori as "evidence" that CONSOL Mining "had the authority to hire and fire, and to adjust compensation of its employees."  Opp. at 4.  Mr. Salvatori's email, however, says nothing of the sort.  Rather, in the email from Mr. Salvatori to Mr. Larre, a third party compensation consultant retained by CONSOL Mining to examine compensation for the future Board of CONSOL, Mr. Salvatori simply informed Mr. Larre that "as we transferred people into Coal Co, we did not adjust any pay, so you will see some disjointed pay levels."  Pl.'s Ex. 16.  Nowhere in the email does Mr. Salvatori state CONSOL Mining (as opposed to CNX) had the authority to adjust the compensation of its officers.  And Mr. Salvatori specifically testified that the compensation items identified in the email to Mr. Larre would need to be addressed "when the spin came."  Tr. of Def.'s Suppl. Exhibit. 25 [K. Salvatori Dep.] at 51:5-12.

authority to promulgate work rules or assignment, and no authority to set compensation, benefits, schedules, or rates of methods of payment).

**B.      CONSOL Is Not Liable As a Successor to CNX.**

Recognizing that neither CONSOL nor CONSOL Mining were Plaintiff's employer before July 10, 2017, Plaintiff argues that CONSOL is liable as a successor.  Plaintiff bases her argument on two grounds: (1) CONSOL assumed certain "Coal Liabilities" from CNX in the Separation and Distribution Agreement; and (2) CONSOL is liable as a "successor employer."  Opp. at 1-2, 5-6.  Both of these arguments fail.

First, contrary to Plaintiff's claims, CONSOL did not agree to accept liability for an employment action brought by Plaintiff, who was an employee of the "ParentCo" until November 27, 2017.   CONSOL only assumed liability for third party claims arising out of the "Coal Business."  Pl.'s Ex. 14 §§ 2.1(a)(ii), 2.4(j).  CNX, however, retained liability for third party claims (including claims by CoalCo's or Parent's officers) arising out of the "Parent Business," which includes the oil and gas exploration and production ("E&P") business.  *Id.* §§ 2.1(a)(iv), 2.5 (g).  Prior to July 10, 2017, Plaintiff's responsibilities included the E&P business.  Def.'s Appendix Ex. 3 at 9:3-7.  Thus, at a minimum, CNX retained liability for Plaintiff's claims to the extent they arose out of the E&P business.

Second, and more importantly, regardless of whether her pre-November 28, 2017 claims arose from the Coal or Parent business, CONSOL is not liable as a successor corporation.  Federal common law, not Pennsylvania law, governs whether a corporation is liable as a successor for employment discrimination claims.  *Thompson v. Real Estate Mortgage Network*, 748 F.3d 142, 152 (3d Cir. 2014).  "In determining whether an entity is a successor, courts in the Third Circuit look at the following factors: "(1) continuity in operations and work force of the successor and

predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and (3) ability of the predecessor to provide adequate relief directly." *Id.* Of paramount importance is the third factor – whether the predecessor is available to provide relief. *See Brzozowski v. Corr. Physician Servs., Inc.*, 360 F.3d 173, 179 (3d Cir. 2004) ("The doctrine of successor liability is premised on the idea that the creditor cannot obtain satisfaction from the predecessor."); *EEOC v. Cox*, 2001 U.S. Dist. LEXIS 25674, at *19 (M.D. Tenn. June 28, 2001) ("[T]o the extent that a predecessor is still an on-going entity capable of providing relief to the plaintiff, successor liability is not appropriate.") (citing *Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249, 257 (1974)). Here, not only is CONSOL's predecessor, CNX, available for relief, but Plaintiff has actually sued CNX in state court. Def.'s Appendix Ex. 21 ¶¶ 19-20. Thus, the successor liability doctrine is not applicable here, where Plaintiff can – and has – sought relief from CNX for conduct prior to November 28, 2017. *See, e.g., Rego v. ARC Water Treatment Co. of Pa.*, 181 F.3d 396, 402 (3d Cir. 1999) (refusing to apply successor liability where, *inter alia*, plaintiff "has not been left without a legally responsible party").

II. **PLAINTIFF CANNOT ESTABLISH HER WAGE DISCRIMINATION CLAIMS BECAUSE SHE CANNOT SHOW SHE WAS PAID LESS THAN A MALE IN A SUBSTANTIALLY SIMILAR POSITION AND, IN ANY EVENT, CONSOL HAS ESTABLISHED AFFIRMATIVE DEFENSES.**

A. **None of Plaintiff's Disputed "Facts" Can Establish that the Jobs Occupied By Plaintiff and Mr. DeIuliis Are "Substantially Similar."**

Based on her deposition testimony, Plaintiff had no choice but to abandon her allegations in her Amended Complaint that Messrs. Khani and McCaffrey were "similarly situated" male employees, leaving only her claim that her position as President was "substantially similar" to Mr. DeIuliis' position as President. Opp. at 9. Plaintiff attempts to portray her position of President of CONSOL Mining, a wholly owned subsidiary of CNX (then CEI), as "substantially similar" to

6

Mr. DeIuliis' position of President of CNX (then CEI) through a series of misrepresentations. Once these misrepresentations are dispelled, however, it is clear that these positions are not substantially similar, but rather quite different.

In an attempt to create a disputed issue of material fact, Plaintiff wholly misrepresents Mr. DeIuliis' testimony. Contrary to Plaintiff's claims, Mr. DeIuliis ***never*** testified that his position of President of CNX was "substantially similar" to Plaintiff's position of President of CONSOL Mining, nor did he state he viewed the natural gas management team and the coal management team as equivalent. *See* Opp. at 10, 11; PSMF ¶¶ 84, 91. None of the deposition testimony cited by Plaintiff supports such a claim. *See* Def.'s Suppl. Exhibit 30 (discussing PSMF ¶¶ 84, 91). In fact, Mr. DeIuliis does not recall ever stating to Plaintiff that her responsibilities should be the same as when he was President.[5] Def's Suppl. Exhibit. 26 [Tr. of N. DeIuliis] at 29:22-30:5. Moreover, when looking at the organization chart for CONSOL Mining Corporation, Mr. DeIuliis observed that the organizational chart when he was President was "different in some ways" from the CONSOL Mining organizational chart. *See* Pl.'s Ex. 1 at 28:14-18.

When stripped of these misrepresentations, Plaintiff is left with her testimony that Mr. DeIuliis indicated that succession "would work just the way it would when he was president." Opp. at 10, Pl.'s Ex. 4 at 101:13-15. The fact that Mr. DeIuliis may have viewed a similar

---

[5] Any dispute with respect to the question of whether Mr. DeIuliis did make such a statement does not create a genuine issue of material of fact that would preclude the entry of summary judgment because, even if he said it, it does not make it so. The question of whether the positions are substantially similar is a question of law for the Court based on its analysis of the positions' actual job duties. *See Wildi v. Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640, 660 (W.D. Pa. 2009) (stating, in the context of a summary judgment motion, that to determine "substantial equality," "[t]he court therefore must analyze the evidence of the actual job duties performed.").

succession plan, however, does not render the President positions of two separate corporate entities – with differing businesses, numbers of employees, and revenue[6] - "substantially similar."

Recognizing the glaring differences between CONSOL Mining Corporation and CNX, Plaintiff then resorts to discussing Mr. DeIuliis' role as President of *CNX Gas* in 2005 – a position he held approximately 14 years ago.  *See* Opp. at 10 & n.5.  Any alleged similarities between the President role at CONSOL Mining and the President role at CNX Gas in 2005 are red herrings to Plaintiff's claim that the position of President of CONSOL Mining was "substantially similar" to Mr. DeIuliis' position of President of CNX.

Plaintiff cannot create an issue of disputed material fact through her self-serving and uncollaborated belief that President of CONSOL Mining Corporation and President of CNX "involved substantially similar skill, effort and responsibility."  *See* PSMF ¶ 87.  "[C]onclusory allegations that the jobs are substantially equal does not establish a prima facie case under the Equal Pay Act."  *Sandvik v. United Rentals (N. Am.), Inc.*, Civ. No. 04-105, 2005 U.S. Dist. LEXIS 10719, at *18 (D. Minn. June 2, 2005).  Indeed, Plaintiff does not even attempt to describe the any of the "'common core' of tasks" she claims the positions shared.  *See* Opp. at 12. The fact that both of these positions were "high-level executive[]" positions," or that they "[b]oth carried the title of President," without more, does not render them substantially similar.  *Wildi*, 659 F. Supp. 2d at 659 ("The common title, however, is not determinative evidence that the positions were substantially equal.").

None of the cases cited by Plaintiff compel a different result.  Unlike here, *Simpson v. Merchants & Planters Bank* and *Denman v. Youngstown State University* involved individuals who worked for the same legal entity and who shared the same duties and

---

[6] *See* CONSOL's Opening Br. (ECF No. 41) at 15.

responsibilities. *Simpson* involved two Assistant Vice Presidents *of the same bank*. 441 F3d 572 (8th Cir. 2005). As a result of their similar duties for the same entity, it is not surprising that the Eighth Circuit opined that a reasonable jury could find that the two positions required the same skill, effort and responsibility. *Id.* at 578. Similarly, in *Denman,* the Northern District of Ohio held that the individuals performed substantially similar work because the employees all supervised and oversaw areas of Youngstown University and the University's former human resources director testified that the plaintiff was in the same job grade and job family as at least one of her comparators. 545 F. Supp. 2d 671, 677 (N.D. Ohio 2008). Here, by contrast, Plaintiff and Mr. DeIuliis were Presidents of different legal entities and had different responsibilities (e.g., Plaintiff did not have operational responsibility for the coal business, whereas Mr. DeIuliis was responsible for **both** gas and coal operations). As the Eighth Circuit recognized in *Simpson*, where a purported comparator's job has substantial additional duties, as is the case here, the jobs are found unequal even if there is an underlying "common core" of duties. 441 F.3d at 577-78.

Contrary to Plaintiff's claims, CONSOL is not asking the Court to read a de facto exemption into the statute for executive level woman. Rather, CONSOL is only asking the Court to rule, based on the facts currently before the Court, that Plaintiff's position of President of CONSOL Mining, a subsidiary, is not substantially similar to Mr. DeIuliis' position of President of CNX. To hold otherwise would put the Court in the business of making compensation decisions for differing senior executive positions, a result clearly not intended by the EPA. As the Northern District of Indiana held, "nothing in the EPA indicates it is designed to address disparities in pay between men and women occupying distinctly different upper-level management positions within the hierarchy of a company's administration." *Randall v. Rolls Royce Corp.*, 742 F. Supp. 2d 974, 984 (N.D. Ind. 2010).

**B.      CONSOL Has Met Its Burden In Establishing Affirmative Defenses.**

Given that Plaintiff cannot establish that her role as President of CONSOL Mining was substantially similar to Mr. DeIuliis' role as President of CNX, Plaintiff cannot establish her *prima facie* case under either the EPA or Title VII and the Court need not go any further.  Even assuming, *arguendo*, the Court finds the Plaintiff's and Mr. DeIuliis' respective President positions are substantially similar, CONSOL has established two affirmative defenses, which preclude Plaintiff's claim as a matter of law.

> 1.      CNX's Decision Not to Adjust the Salaries of the Newly-Appointed Officers of CONSOL Mining Is Based on a Legitimate Business Reason and Qualifies as a "Factor Other Than Sex" Affirmative Defense.

Plaintiff's argument that CNX's decision not to adjust the salaries of the newly-appointed officers of CONSOL Mining prior to the spin-off does not satisfy the "factor other than sex" or "catch-all" affirmative defense under the EPA is incorrect as a matter of law.  Courts have held that the adoption of gender-neutral compensation policies satisfy the "factor other than sex" affirmative defense.  *See, e.g., Taylor v. White*, 321 F.3d 710, 717-18 (8th Cir. 2003) (stating the "legislative history supports a broad interpretation of the catch-all exception" and holding that a salary retention policy can qualify as a "factor other than sex"); *Boaz v. Fed. Exp. Corp.*, 107 F. Supp. 3d 861, 889 (W.D. Tenn. 2015) (holding that FedEx's reclassification process that resulted in an approximately one year delay of a compensation adjustment for a new position was an affirmative defense to an EPA claim); *Butler v. Albany Int'l*, 273 F. Supp. 2d 1278, 1291 (M.D. Ala. 2003), *aff'd*, 107 F. Appx. 184 (11th Cir. 2004) (finding that defendant's policy of paying transferred employees their previous salary is not based upon sex" and that this "sex-neutral business policy…fits within the 'factor other than sex' exception to the EPA").  In addition, there was a legitimate business reason for Mr. DeIuliis' determination to delay the compensation adjustments: early on, it was unclear whether CONSOL Mining would spinoff, and if it did, Mr.

10

DeIuliis believed the compensation determinations for the future officers of a separate public company were best left for the new public company's board.  Def.'s Appendix Ex. 6 at 49:2-50:13. Accordingly, none of the newly-appointed officers of CONSOL – neither men nor women – had their compensation adjusted pre-spin.

Plaintiff's only support for her argument is an unpublished opinion in *Bates v. United States Post Service.*  Opp. at 18-19.  As an initial matter, the *Bates* case did not involve an EPA claim, and accordingly the Third Circuit did not make any holding with respect to the EPA's "factor other than sex" affirmative defense.  *See* Pl.'s Ex. 23.  Moreover, the Third Circuit's holding that USPS regulations affording discretion in how to fill a position was not a legitimate nondiscriminatory reason for the USPS's decision has no application in this case.  Here, Mr. DeIuliis – Plaintiff's self-described "supporter and promoter" – made a gender-neutral determination to delay compensation decisions for the newly-appointed officers of CONSOL Mining until the new Board of CONSOL was in place.  Unlike the policy in *Bates*, Mr. DeIuliis' determination did not allow any discretion in its implementation; it applied equally to male and female officers.[7]  Thus, this determination constitutes an affirmative defense under the EPA and Title VII, and precludes Plaintiff's claims as a matter of law.

---

[7] Plaintiff takes the untenable position that "all of the Coal Company male executives were already compensated for roles they held prior to being named executives" of CONSOL Mining, and she was the only one negatively impacted by this policy.  *See* PSMF ¶ 140.  Plaintiff, however, admits that none of the officers received compensation adjustments until after the spinoff.  *Compare* Def.'s SOF ¶ 63, *with* Pl.'s Resp. to SOF ¶ 63.  In fact, Mr. Brock, a male officer, did not receive his salary adjustment for his new role as CEO – from $420,250 to $650,000 – until February 16, 2018.  Def.'s Appendix Ex. 1 at 37, 47.

2.    CNX's System of Awarding "Cost of Living" Increases Constitutes An Affirmative Defense under the EPA, Even If It Is Unwritten.

Plaintiff tries to overcome CONSOL's second affirmative defense – CNX's seniority system – by claiming that a seniority system must be written and citing *Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir. 1995). Opp. at 20. Though the district court in *Irby* opined as much, the Eleventh Circuit reasoned that a seniority system simply must be *systematically applied and observed. Id.*; *see also Pierce v. Duke Power Co.*, 811 F.2d 1505 (4th Cir. 1987) (an employer will successfully defend against a charge of sex discrimination by demonstrating that it had an established seniority system "written *or unwritten*, formal *or informal*, the essential terms and conditions of which have been made known to the affected employees.") (emphasis added) citing 29 C.F.R. § 800.144; *Equal Employment Opportunity Comm'n v. Aetna Ins. Co.,* 616 F.2d 719, 725 (4th Cir. 1980) (holding that, "a merit system, to be recognized as valid, need not be in writing[;]" rather, employees must be aware of the system and it must not be based on sex); *Jordan v. CSX Intermodal*, 991 F. Supp. 754, 759 (D. Md. 1998) (rejecting plaintiff's argument that defendant may not rely on defense that "greater tenure and experience motivated the salary differentials" because there was no evidence of a written company policy). The court further found that the employer in *Irby* did not have a seniority system in place that, under the EPA, would justify variance in salary between employees of the opposite sex performing the same work because there was evidence that two less senior employees were paid more than others who were hired earlier. *Irby,* 44 F.3d at 955.

In contrast, here, it was well known amongst employees that CNX gave annual merit, or cost of living, increases to salaries and bonuses. *Compare* Def.'s SOF ¶ 28, *with* Pl.'s Resp. to SOF ¶ 28. There is no evidence that suggests that this system was not uniformly applied to all CNX employees, regardless of gender. Thus, CNX's annual increases, which were not based on

12

sex and resulted in employees with more longevity being paid more, is an affirmative defense to Plaintiff's claim.

## III.   THERE ARE NO MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIMS.

### A.   Despite Her Claim of Disputed "Facts," Plaintiff Still Cannot Establish Her *Prima Facie* Case of Retaliation.

1. Plaintiff's Subjective Belief That She Was Being Discriminated Was Not Reasonable, Such That Her Complaints Do Not Constitute "Protected Activity."

While Plaintiff devotes much of her Opposition to the various complaints she made regarding the fact that her compensation was not adjusted after being named President of CONSOL Mining and her ***subjective belief*** that it was because she is a woman, she utterly ignores the fact that to constitute "protected activity" a ***reasonable person*** in the circumstances must conclude that CNX engaged in discriminatory conduct.   Here, no reasonable person could conclude that CNX engaged in discriminatory conduct  in determining not to adjust the compensation of ***all*** of the newly-appointed officers until after the spinoff and the new board of CONSOL was in place. Plaintiff's subjective belief that she was being discriminated against was not objectively reasonable under these circumstances.   Plaintiff admits she was told multiple times by Mr. Salvatori that no adjustments to the compensation of any of the newly-appointed officers of CONSOL Mining would be made until after the spinoff.   *Compare* Def.'s SOF ¶ 69, *with* Pl.'s Resp. to SOF ¶ 69; PSMF ¶¶ 118-119.[8]  Plaintiff also admits that none of the other newly-appointed officers of CONSOL Mining Corporation received compensation adjustments prior to the spinoff. *Compare* Def.'s SOF ¶ 63, *with* Pl.'s Resp. to SOF ¶ 63.   While Plaintiff contends they were

---

[8] *See also* Def.'s Appendix Ex. 3 at 83:25-84:6, 94:8-95:24.

already been compensated at the appropriate levels for their roles (PSMF ¶ 140), this unsupported, self-serving statement is contradicted by the fact that several officers received significant compensation increases after the spinoff, including Mr. Brock, whose salary increased from $420,250 to $650,000.  Def.'s Appendix Ex. 1 at 37, 47.  Thus, regardless of Plaintiff's subjective belief, no reasonable person would have believed that CNX was discriminating against Plaintiff in refusing to adjust the compensation of **all** of newly-appointed officers of a future public company until after the spinoff and the new board could make compensation determinations.[9]

      2.    <u>Even Assuming, *Arguendo*, Plaintiff's Disputed "Facts" Are True, Plaintiff Cannot Establish Causation.</u>

While CONSOL disputes that Plaintiff directly complained to Messrs. Brock and Powell, even assuming, *arguendo*, that those facts are true, Plaintiff still cannot establish causation.  Contrary to Plaintiff's assertion, the timeline in this case is not "unusually suggestive."  *See* Opp. at 26.  As an initial matter, Plaintiff misstates the law that two weeks or less **alone** is sufficient to establish causation.  *See* Opp. 26.  Neither of the cases cited by Plaintiff support this proposition,[10]

---

[9] *See, e.g., Muhammad v. Audio Visual Servs. Group*, 380 Fed. Appx. 864, 873 (11th Cir. May 26, 2010) (affirming summary judgment and holding that plaintiff's "belief that race discrimination had occurred was not objectively reasonable" where plaintiff had "no evidence that white employees were treated more favorably than black employees regarding overtime pay rates"); *Jackson v. Geo Group, Inc.*, 312 Fed. Appx. 229, 234 (11th Cir. Feb. 13, 2009) (affirming summary judgment and holding that there was no reasonable basis for plaintiff's belief that his reassignment was due to racial discrimination when plaintiff was informed that it was for performance-related reasons); *Diamond v. Morris, Manning & Martin, LLP*, No. 09-cv-2894, 2011 U.S. Dist. LEXIS 162224, at *9-10 (N.D. Ga. Mar. 28, 2011) (granting summary judgment on retaliation claims and holding that where there was "no evidence that any similarly situated white paralegal received more favorable work assignments, more billable work, less problematic work or more resulting bonuses," no objectively reasonable person would have believed that Plaintiff was being discriminated against, regardless of her subjective beliefs).

[10] *See Shellenberger v. Summit Bancorp., Inc.* 318 F.3d 183, 189 (3d Cir. 2003) (finding "there is more than temporal proximity here"); *Straub v. First Media Radio, LLC*, No. 2003-237J, 2005 U.S. Dist. LEXIS 31617, at *36, 40 (W.D. Pa. Nov. 28, 2005) (noting that causality "is a context-based inquiry where the length of time between the two acts of the protected activity and the

and CONSOL has cited multiple cases holding that the separation of protected activity by weeks or months is not "usually suggestive."  *See* Def.'s Opening Br. (ECF No. 41) at 25 & n.15.

Moreover, while Mr. Brock formally recommended, and the Board approved, the elimination of the President position and Plaintiff's termination shortly after the spinoff, Mr. Brock discussed the elimination position long ***before*** Plaintiff made any complaints regarding her compensation.  Indeed, Plaintiff does not dispute that upon Mr. DeIuliis proposing her as President in July 2017, Mr. Brock told him a President position was unnecessary.  *Compare* Def.'s SOF ¶ 43, *with* Pl.'s Resp. to SOF ¶ 43.  Thus, Mr. Brock was already contemplating the elimination of the President position at this early date.  Courts have found no causal connection where, as here, an employment action was already contemplated prior to Plaintiff's complaints.[11]

---

retaliation is not established and static for purposes of every retaliation claim" and the "timing of the employer's action alone does not automatically establish causation").

[11] *See, e.g., Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (employers need not suspend previously planned employment decisions upon discovering that a plaintiff has engaged in a protected activity; "their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."); *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 197 (3d Cir. 2015) (no causal link where alleged adverse conduct began before actors could have possibly learned of protected activity); *Proudfoot v. Arnold Logistics, LLC*, No. 14-4703, 2015 WL 5881530 (3d Cir. Oct. 8, 2015) (one-day lapse between protected activity and termination was insufficient to establish causation where employer was previously conducting investigation which lead to termination); *Baker v. United Defense Ind., Inc.*, No. 09-4273, 403 Fed. Appx. 751, 758 (3d Dec. 8, 2010) (temporal proximity was not "unusually suggestive of retaliatory motive," as needed to support causation, where plaintiff filed EEOC charge approximately one month before his termination at the end of the first quarter, but it was undisputed that employer was contemplating terminating plaintiff at the end of the first quarter prior to his filing of a charge); *Windfelder v. May Dep't Stores Co.*, 93 Fed. Appx 351, 355 (3d Cir. 2004) (no evidence of causation where employer had begun termination proceedings prior to plaintiff alleging retaliation as "[a] contrary holding might impede employers from permissible terminations and encourage employees aware of an impending termination to attempt to create their own "severance package.""); *see also Straub*, 2005 U.S. Dist. LEXIS 31617, at *42 ("The Court agrees with the Defendant that had the Plaintiff's case rested upon only the Plaintiff's rejection of McGough in January 2003 and her inquiry into the sexual harassment policy that same month, the causal link would be missing as the evidence would show the decision to terminate the Plaintiff came around late October or November 2002 and thus such a decision to terminate the Plaintiff could not be actionable as it already would have been contemplated.").

Not only does Plaintiff's temporal proximity argument fail to establish causation, but also Plaintiff's "evidence" of "animus" similarly fails to establish any causal connection. *See* Opp. at 29. The fact that Plaintiff did not participate in the "road show" is not sufficient to support an inference of causation. Plaintiff does not dispute that Mr. Brock selected individuals to participate in the "road show" based on their knowledge and ability to speak about certain topics to investors. *Compare* SOF ¶ 88, *with* Pl.'s Resp. ¶ 80. Plaintiff does not contend that she was as or more knowledgeable than any of the individuals selected on the designated topics, only that she had a "rightful role", in her opinion, in such presentations. *See* PSMF ¶ 151. The Court is not required to accept such self-serving, conclusory statements, and in any event exclusion from meetings "cannot give rise to an inference of discrimination…."[12] *Wildi*, 659 F. Supp. 2d at 671. Nor does Mr. Brock's reference to Plaintiff as "her" establish animus, let alone causation. *See, e.g., Kaufmann v. Eppstein Uhen Architects, Inc.*, No. 13–cv–0674, 2015 WL 520616, at *2 (E.D. Wisc. 2015) (holding the use of gender-specific pronouns such as "she" and "her" "are not enough to enable a reasonable factfinder to infer a gender-discriminatory motive").

### B.   Plaintiff Cannot Show That CONSOL's Legitimate, Non-Discriminatory Reason for Terminating Plaintiff – Financial Reasons – Is Mere Pretext.

Plaintiff all but concedes that CONSOL has met its burden in offering a legitimate, non-discriminatory reason for her termination. Unable to dispute the myriad of cases holding that the termination of an employee for financial reasons is a legitimate, non-discriminatory reason,

---

[12] Unlike here, in *Marra v. Philadelphia Housing Authority*, cited by Plaintiff, there was "pattern of antagonism." 497 F.3d 286, 302 (3d Cir. 2007). Exclusion from a meeting was just one of the events that formed the "pattern," which also included more extreme events, such as the "vandalization" of plaintiff's computer. *Id.* In addition, in discussing the exclusion from a July 2001 meeting, the Third Circuit noted that the meeting "concern[ed] matters within [plaintiff's] province." *Id.* at 304. Here, Plaintiff has not contended that the topics involved in "road show" were uniquely within her province.

Plaintiff attempts to recast her termination as a reduction in workforce, subject to a different legal standard. *See* Opp. at 31. CONSOL, however, has never contended that Plaintiff's termination was a reduction in work force. Accordingly, the cases cited by Plaintiff on this issue are inapposite. Thus, for the reasons stated in its opening brief, CONSOL has met its burden of articulating a legitimate, non-discriminatory reason for Plaintiff's termination. *See* Def.'s Opening Br. (ECF No. 41) at 26-28.

Plaintiff attempts to show this legitimate, non-discriminatory reason is mere pretext by arguing that: (1) CONSOL has offered inconsistent reasons for Plaintiff's termination; and (2) Mr. Brock had a discriminatory animus. Plaintiff cannot establish either of these positions.

First, despite Plaintiff's attempt to manufacture an inconsistency, CONSOL's reason for terminating Plaintiff has been consistent at all times. Plaintiff admits that she was told she was being terminated because the President position was eliminated. *Compare* SOF ¶ 99, with Pl.'s Resp. ¶ 9. In its response to Plaintiff's charge of discrimination, CONSOL stated the following:

> Mr. Brock never believed that the President position was necessary given the size of the newly created company, and the need to operate as a lean management team with an emphasis on cost containment…Therefore, when the time came when Mr. Brock had the ultimate authority to do so he eliminated the President position in its entirety. Mr. Fredriksen's gender had absolutely nothing to do with Mr. Brock's decision, and there is simply no evidence to suggest otherwise.

Def.'s Appendix Ex. 21.E at 4-5. The fact that CONSOL noted conflicting management styles in the "Factual Background" section of the response does not constitute a different or evolving reason. Nor did Mr. Brock "change[] his story" in his deposition. Mr. Brock testified that Plaintiff was terminated because CONSOL did not need the separate President position. Def.'s Ex. 16 at 27:6-11. Plaintiff does not dispute that CONSOL has not hired anyone to fill the role of President and that Mr. Brock has performed the additional role of President. *Compare* SOF ¶ 102, *with* Pl.'s Resp. ¶ 102. It is of no consequence that Mr. Brock testified that he did not offer

17

Plaintiff *a different position* because he "didn't feel like she would be a good team player."

Def.'s Ex. 16 at 61:11-14.  This is not an explanation for the elimination of the President position

and Plaintiff's termination, and Plaintiff has not asserted a failure to hire claim in this case.

Thus, Plaintiff cannot establish any inconsistencies in the reason for her termination that would

support a finding of pretext.[13]

Second, contrary to Plaintiff's assertion, no reasonable fact finder could conclude that

Mr. Brock has a discriminatory animus towards women.   Realizing Mr. Brock's stray remarks

referring to Plaintiff as "girl" or "her" are not evidence of discrimination,[14] *see* Def.'s Opening

Br. at 32-33, Plaintiff argues that Mr. Brock's statement that "the guys" would have a hard time

accepting her as President and his response to Mr. DeIuliis' proposal of Plaintiff as CEO and Mr.

---

[13] *Roney v. Allegheny Intermediate Unit*, a case cited by Plaintiff, does not compel a different result. In *Roney*, a failure to rehire case, the Allegheny Intermediate Unit ("AIU") said the plaintiff was not rehired because she did not apply, but several AIU employees acknowledged that plaintiff had expressed an interest in an open position and in light of that one employee admitted he did not know why she was not rehired.  568 Fed. Appx. 172, 174 (3d Cir. June 11, 2014).  While the Third Circuit held it was a "close case," it reversed summary judgment in favor of the AIU.  *Id.*  Here, unlike in *Roney*, there are no inconsistencies in CONSOL's reason for Plaintiff's termination.

[14] Plaintiff's half-hearted argument in footnote 16 that little remains of the "stray remarks" doctrine in the wake of *Masterpiece Cakeshop, Ltd. v. Colorado Civil Righs Comm'n*, 138 S. Ct. 1719 (2018) is misguided.  *Masterpiece Cakeshop* did not remotely address "stray remarks" as evidence of employment discrimination.  Rather, the Supreme Court considered whether the Colorado Civil Rights Commission complied with the Free Exercise Clause's requirement of neutrality in adjudicating a case involving an alleged violation of the Colorado Anti-Discrimination Act.  *Id.*  Thus, *Masterpiece Cakeshop* has no relevance to this case.  Nor do the other cases cited by Plaintiff undermine the application of the "stray remarks" doctrine at this juncture in this case.  In *Ryder v. Westinghouse Corp.*,, the Third Circuit reviewed a district court's evidentiary ruling on the admissibility of a document, not whether the document or comments constituted "stray remarks."  128 F.3d 133 (3d Cir. 1997).  In *Reeves v. Sanderson Plumbing Prods. Inc.*, the Supreme Court considered whether an employer in an age discrimination was entitled to judgment as a matter of law when, *inter alia*, there was evidence that a director of employer told the plaintiff he "was so old [he] must have come over on the Mayflower" and "was too damn old to do [his] job."  530 U.S. 133, 151 (2000).  These statements do not constitute "stray remarks" and are clearly distinguishable from the alleged statements in this case.

Brock as President are evidence of a discriminatory mindset.  Neither of these responses, however, indicate any evidence of gender animus by Mr. Brock.

The fact that Mr. Brock believed that "the guys" would have a hard time accepting Plaintiff as President because they would think they are more qualified, more senior, or have more time on the job does not remotely reflect any gender bias on the part of Mr. Brock.[15]  Mr. Brock's belief regarding the response of "the guys" is clearly distinguishable from the comments in *Butt v. United Brotherhood of Carpenters & Joiners of Am.*, cited by Plaintiff, where there was testimony that Defendant Durkalec stated to plaintiffs that "I got these jobs but…. I can't give them to you," that he could give plaintiffs jobs "[t]hat men don't want," and that "my people are still out of work." 512 Fed. Appx. 233, 236 (3d Cir. 2013).  In that case, the comments could be seen as evidence of gender and race bias by the defendants in referring jobs to union members, the very basis of the plaintiffs' claim in that case.  Here, however, Mr. Brock's statement does not reflect Mr. Brock's belief and does not remotely reference Plaintiff's gender.

Nor does Mr. Brock's response to Mr. DeIuliis' initial proposal of Plaintiff as CEO and Mr. Brock as President establish any gender animus.  As an initial matter, Plaintiff does not claim that gender came up during the discussion between Mr. DeIuliis and Mr. Brock.  Moreover, Mr. Brock's response was based on the fact that he had already been running the coal business on behalf of CNX for three to four years, and reporting to ***anyone***, let alone Plaintiff who had only been underground in a mine only a dozen times, would have been a demotion.  Def.'s Appendix Ex. 16 at 64:5-10.  In fact, Mr. Brock asked Mr. DeIuliis, "Have I done something wrong?"  *Id.*

---

[15] Nor does this statement indicate in any way that Mr. Brock believed "the guys" had a problem with Plaintiff because of her gender.  Plaintiff's claim that there is "[n]o evidence" that the guys had a problem with Mr. DeIuliis as President is disingenuous, as this case has nothing to do with whether "the guys" were accepting of Mr. DeIuliis, who initially worked in the gas side of the business, when he was appointed President of CNX, the combined company, in 2011.

As such, Mr. Brock's "emotional" response to a proposed demotion – which in no way referenced gender – is not evidence of discriminatory animus.

## CONCLUSION

Plaintiff has not identified any genuine issues of material fact that preclude summary judgment.  Therefore, for the reasons stated herein and in CONSOL's initial motion papers, CONSOL respectfully requests that its Motion for Summary Judgment be granted and that Plaintiff's Amended Complaint be dismissed in its entirety, and for such other relief as the Court deems just and proper.

Dated:  February 14, 2019

Respectfully submitted,

/s/ *Gerald J. Stubenhofer*
Gerald J. Stubenhofer, Jr.
Pa. Id. No. 72921
Courtney S. Schorr
Pa. Id. No. 317370
McGuireWoods LLP
260 Forbes Avenue, Suite 1800
Pittsburgh, PA  15222
(412) 667-6000
gstubenhofer@mcguirewoods.com
cschorr@mcguirewoods.com

*Counsel for Defendant CONSOL Energy Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served upon the following counsel of record via the Court's CM/ECF Notification System, this 14th day of February, 2019:

Samuel J. Cordes
John E. Black, III
Rothman Gordon, P.C.
310 Grant Street, Third Floor
Pittsburgh, PA 15219

*/s/ Gerald J. Stubenhofer*

21