IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| KATHARINE ANN FREDRIKSEN, | ) | |
|---|---|---|
| | ) | |
| | ) | 2:18-CV-00379-MJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CONSOL ENERGY INC., | ) | |
| | ) | |
| Defendant, | | |

OPINION

Plaintiff, Katharine Ann Fredriksen, ("Fredriksen") brings claims under the Equal Pay Act (29 U.S.C. § 206(d)), for retaliation under the Equal Pay Act ("EPA") (29 U.S.C. § 215(a)(3)), Title VII, gender discrimination (42 U.S.C. § 2000e-2(a)(1)), and for retaliation under Title VII (42 U.S.C. § 2000e-3). (ECF No. 23). Her claims arise from alleged unequal pay by Defendant, Consol Energy, Inc. ("Defendant"), in relation to her and her male counterparts, and the disparate treatment that led to her eventual termination by Defendant.

Pending before the Court is a Motion for Summary Judgment, filed by Defendant. (ECF No. 38). Upon Consideration of the Amended Complaint (ECF No. 23); Defendant's Answer and Affirmative Defenses (ECF No. 25); Defendant's Motion for Summary Judgment, Concise Statement of Material Facts, Appendix to Concise Statement of Material Facts, and Brief in Support (ECF Nos. 38-41); Plaintiff's Brief in Opposition, Response to Defendant's, Concise Statement of Material Facts, Concise Statement of Material Facts, and Appendix to Concise Statement of Material Facts (ECF Nos. 42-45); Defendant's Response to Plaintiff's Concise Statement of Material Facts, Appendix to Response to Concise Statement of Material Facts, and

Reply Brief (ECF Nos. 48-50); and the arguments of counsel, Defendant's Motion for Summary Judgment is granted in part and denied in part.

I. **Background**

a. **Defendant's Origin**

Prior to January 2017, the Original Corporation, known as Consol Energy, ("Original Corporation") conducted business in both coal and natural gas. In January 2017, the Original Corporation announced that it would separate its coal business from its natural gas business. (ECF No. 39 at ¶12). On June 21, 2017, the Original Corporation formed Consol Mining, LLC ("Subsidiary Company") as a wholly owned subsidiary to hold its coal business. (ECF No. 40-1 at p. 5 and ECF No. 39 at ¶ 1). On November 28, 2017, the Original Corporation consummated a "spinoff" of the Subsidiary Company through a separation and distribution agreement that resulted in two companies: CNX, to replace the Original Corporation, absent the coal business, (CNX and Original Corporation, hereinafter referred to as Original Corporation) and Consol Energy, Inc, (Defendant herein) to replace the Subsidiary Company to operate the coal business. (ECF No. 39 at ¶ 13). Defendant, Consol Energy, Inc. is the sole defendant in this case.

b. **Plaintiff's Employment with Original Corporation and Defendant**

Between January 2011 and November 28, 2017, Plaintiff, Katharine Fredriksen, was an executive and employee of the Original Corporation. *Id.* at ¶¶ 3-4. She served as a Senior Vice President with the Original Corporation from January 2011 to July 2017. *Id.* at ¶¶ 19-25. In July 2017, in anticipation of the spinoff, which occurred on November 28, 2017, the CEO of the Original Corporation, Nicholas DeIuliis, with approval of the Board of Directors of the Subsidiary Company, named James Brock as CEO and Fredriksen as President of the Subsidiary Company. *Id.* at ¶ 42. After Fredriksen's appointment as President, neither the Original

Corporation nor the Subsidiary Company increased Fredriksen's pay. (ECF No. 44 at ¶ 8). The Original Corporation did not adjust the compensation of any of the newly appointed officers of the Subsidiary Company prior to the November 28, 2017 spinoff. (ECF No. 39 at ¶ 61). As such, all original corporation employees, who were newly appointed officers of Subidiary Company, remained at their Original Corporation earning level between July 2017 and the November 28, 2017 spinoff. In the months that followed the July 2017 spinoff, Fredriksen complained about gender-based pay discrepancies to the Subsidiary Company CEO, James Brock, to the Vice President of Administration, Kenneth Salvatori, and to the future chairman of Defendant's board of directors, William Powell. (ECF No. 45 at Ex. 4, pp. 67, 84, 85, 140, 141,143,144, 153, 165). Plaintiff has identified subordinate male officers of the Subsidiary Company who earned more than Fredriksen during the time period, July 2017 to November 28, 2017. (ECF No. 44 at ¶¶ 124-125).

At the time of the November 28, 2017, "spinoff" and creation of Consol Energy, Inc., Defendant herein, Brock became CEO and Fredriksen became the President of Defendant. *Id.* at ¶ 5. Six days later, On December 4, 2017, the Defendant's Board of Directors unanimously approved the termination of Fredriksen, and combined the President's duties with Defendant CEO, James Brock's position. *Id.* at ¶ 97.

### c. Brock's Response to Fredriksen's appointment as President

Brock testified that in July 2017, Nick DeIuliis, CEO of the Original Corporation, initially suggested that Brock should be President and Fredriksen should be CEO of the Subsidiary Company. *Id.* at ¶ 7. Brock told DeIuliis that he would rather retire than report to Fredriksen. *Id.* at ¶ 5. DeIulliis subsequently offered Brock the CEO position with the Subsidiary Company and Fredriksen the President position with the Subsidiary Company. (ECF

3

NO. 39 at ¶ 42). Shortly thereafter, Brock and Fredriksen met for breakfast. *Id.* at ¶ 44. During that meeting, Brock told Fredriksen, "the guys" would have a hard time accepting her as President. *Id.* at ¶ 45. Fredriksen testified that after she complained about her salary to Brock, she was excluded from presentations to investors at the direction of Brock because he did not want "her" involved. (ECF No. 44 at ¶¶ 151-156). In late summer 2017, at a meeting with Brock and Eric Schubel, Fredriksen ordered a Guinness beer. (ECF No. 39 at ¶ 117). Mr. Schubel stated that he had never seen a "girl" drink a Guinness. *Id.* at ¶ 118. Mr. Brock responded that Fredriksen "was not really a girl." *Id.* at ¶ 119.

When Brock terminated Fredriksen, he told her that she was being fired because the position of the President of Consol Energy, Inc, Defendant herein, was being eliminated. *Id.* at ¶ 169. Brock stated to Fredriksen that her termination was "not related to any performance issues." *Id.*. In responding to the EEOC Charge of Discrimination, the Defendant stated to the EEOC that Fredriksen's discharge was motivated by job elimination and conflicting management styles. *Id.* at ¶ 179. During his deposition, Brock denied he fired Fredriksen because of her management style. *Id.* at 171. However, he later testified that Fredriksen was fired because he "[d]idn't feel like she would be a good team player, and didn't feel like it would be the best thing for the company." *Id.* at 15.

## II. Standard of Review

Summary judgment may only be granted where the moving party shows that there is no genuine dispute about any material fact, and that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v.*

4

*Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations, or determine the truth of the matter; rather, its function is to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (citing decisions); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248–49 (1986); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248.

### III. Discussion

#### A. Successor Liability

In her Amended Complaint, Fredriksen argues that Defendant is liable for all of the alleged discriminatory actions of the Original Corporation. The Defendant argues that it did not employ Fredriksen until the November 28, 2017, spinoff event. As such, the Defendant argues that it cannot be liable, under the EPA or Title VII, for any of the prior conduct by the Original Corporation or the Subsidiary Company. Plaintiff contends that Defendant is a successor employer to the Original Corporation and/or the Subsidiary Company; such that, it is liable for any discriminatory acts that occurred before her December 4, 2017 termination by Defendant.

To determine successor liability in employment discrimination cases, the Third Circuit has directed the district courts to consider the following factors:

> (1) continuity in operations and work force of the successor and predecessor employers;
> (2) notice to the successor-employer of its predecessor's legal obligation; and
> (3) ability of the predecessor to provide adequate relief directly.

*Brzozowski v. Corr. Physician Servs., Inc.*, 360 F.3d 173, 178 (3d Cir. 2004) (recognizing factors cited in *Criswell v. Delta Air Lines, Inc.*, 868 F.2d 1093, 1094 (9th Cir.1989)). Successor liability is based upon equitable principles with an emphasis on the second and third factors listed above. *See Criswell*, 868 F.2d at 1094.

As regards continuity in operations and work force, the Defendant became a distinct corporate entity separate from the Original Corporation upon the November 28, 2017 spinoff. (ECF No. 39 at ¶ 13 and ECF No. 43 at ¶ 13). The SEC filings of the Subsidiary Company identified the Original Corporation as Fredriksen's employer immediately before the November 28, 2017 spinoff, which established the Defendant. (ECF No. 40-4 at p. 3). Fredriksen has produced no evidence to the contrary, thus her employer through November 28, 2017 was the Original Corporation. At the November 28, 2017 spinoff, the officers of the Subsidiary Company became the officers of the Defendant, including CEO, James Brock and President, Fredriksen. However, the Defendant's Board of Directors had different members from the Subsidiary Company's Board of Directors. Fredriksen testified that, from July 10, 2017 until her termination, she reported to James Brock, when he was CEO of the Subsidiary Corporation and when he was the CEO of the Defendant. (ECF No. 43 at ¶ 37). Also, as regards continuity of operations, the Original Corporation formed the Subsidiary Company on June 21, 2017 to hold its coal business, which would become Defendant's business. (ECF No. 40-1 at p. 5). However, Nick DeIulius testified that after the Subsidiary Company was formed, the officers of

the Subsidiary Company were "working on new company matters, but those were not necessarily the same matters they would be working on as a stand-alone public company." (ECF No. 40-6 at p. 9). On November 28, 2017, the Original Corporation completed a separation of its coal and gas business, resulting in the Original Corporation becoming CNX with the natural gas business, and the Subsidiary Corporation becoming Defendant with the coal business. (ECF No. 40-1 at p. 7). Given the evidence concerning the flow of work force and the transfer of the coal business, a reasonable juror could find some aspects of continuity in operations and workforce between Original Corporation/Subidiary Corporation and Defendant.

As to the second factor, notice of the Original Corporation's legal obligations, the inquiry centers on whether the successor, Defendant herein, had notice of the specific discrimination claim in question. *See e.g.*, *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1091 (6th Cir.1974)(successor liability requires that successor had notice of the Title VII charge); *Wheeler v. Snyder Buick, Inc.*, 794 F.2d 1228, 1236 (7th Cir. 1986)(Successor liability doctrine is applicable in a Title VII case, depending on whether the successor employer had prior notice of the claim against predecessor); *Herzfeld v. 1416 Chancellor, Inc.*, No. CV 14-4966, 2017 WL 2531949, at *4 (E.D. Pa. June 9, 2017)(finding successor liability because plaintiff's claims were specifically mentioned in sales agreement of successor company). Fredriksen has adduced no evidence of record that as of November 28, 2017, Defendant had notice of any pending discrimination claim by Fredriksen against either the Original Corporation or the Subsidiary Company. Fredriksen did not file her EEOC claim until March 9, 2018. While the November 28, 2017 Separation and Distribution Agreement ("Agreement") assigned some liabilities from Original Corporation to Defendant, it did not include any reference to any pending charges of discrimination, which is necessary to have put Defendant on notice of any discrimination claims

that Frederiksen would be filing. (ECF No. 45-4). Therefore, Fredriksen has not met her burden to produce evidence to give rise to any jury question as regards the second factor for successor liability.

As to the final factor, the ability of the Original Corporation to provide adequate relief directly, Fredriksen has not adduced any evidence of record to establish any question that the Original Corporation has any inability to provide adequate relief directly to her. Frederiksen has adduced no evidence that the Original Corporation is insolvent or otherwise unable to provide adequate relief directly. Therefore, Fredriksen has not satisfied the third factor.

Thus, after weighing the factors, with particular emphasis on the second and third factors, Defendant is not the successor of the Original Corporation for purposes of liability in this matter. Accordingly, since Fredriksen has not met her burden that successor liability should attach to Defendant for any claims related to her employment with the Original Corporation through November 28, 2017, Defendant's, Motion for Summary Judgment, regarding Fredriksen's allegations that it violated the Equal Pay Act or Title VII before November 28, 2017, is granted.

### B. EPA AND TITLE VII WAGE CLAIM (COUNTS I and III)

Fredriksen claims that she was paid less than her male comparators from December 2014 to December 2017 in violation of EPA and Title VII. Having decided in favor of the Defendants for claims under the Equal Pay Act and Title VII for her employment before November 28, 2017, the issue for consideration is Fredriksen's claim against Defendant for its actions after November 28, 2017. To state a wage discrimination claim under either the Equal Pay Act or Title VII, Fredriksen "must first establish a prima facie case [of unequal pay] by demonstrating that employees of the opposite sex were paid differently for performing 'equal work'—work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v.*

8

*Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000); see also *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1081 (3d Cir. 1996). Without proof of unequal payment, a wage discrimination claim under EPA or Title VII fails. *See e.g. Ingram v. Brink's, Inc.*, 414 F.3d 222, 233 (1st Cir. 2005); *Bertotti v. Philbeck, Inc.*, 827 F.Supp. 1005 (S.D.Ga.1993) (Plaintiff failed to establish prima facie violation of Equal Pay Act absent a showing that the pay she actually received during the two pay periods that she was employed was less than pay actually received during those periods by either of two "comparators"); *True v. New York State Dept. Of Correctional Services*, 613 F.Supp. 27 (D.C.N.Y.1984) (granting summary judgment as to Equal Pay Act claim because plaintiff neither contended nor alleged that she was actually paid at a lower rate than male employees); *McEwen v. MGM Grand Detroit*, 2006 WL 83476 (E.D.Mich.2006) (Plaintiff's claims of wage discrimination fail because there is no dispute that he was never paid less than his comparator); *Spears v. Louisiana*, 767 F. Supp. 2d 629, 643 (M.D. La. 2011). The Defendant argues that Fredriksen cannot establish a wage discrimination claim against it under the EPA or Title VII because neither she nor her comparators were paid between November 28, 2017 and December 4, 2017. However, Fredriksen's EPA and Title VII claims against Defendant are dependent upon the time when she was employed by Defendant.

As the Court has found above, Defendant did not employ Fredriksen until November 28, 2017. She was terminated on December 4, 2017. There is no evidence of wages or any amount of wages paid by Defendant to either Fredriksen or to her male comparators between November 28, 2017 and December 4, 2017,. Defendant's Compensation Committee did not meet to determine the salaries of its executives until after Frederiksen had been terminated. (ECF No. 40-1 at p. 8). Thus, there is no evidence that Defendant acted to discriminate in regards to wage disparity, where the Board did not determine any salaries until after Fredriksen's position was

terminated. Therefore, her evidence does not support a wage discrimination claim against Defendant under the EPA or Title VII. Thus, Defendant's Motion for Summary Judgment, as regards the EPA claim, is granted. Claims in Count I and any Title VII-wage discrimination claim in Count III of Plaintiff's Amended Complaint against Defendant are dismissed.

### C. Retaliation claims under Title VII and EPA (COUNTS II and IV)

Fredriksen claims that Defendant terminated her because she complained to officers of both the Original Corporation and of the Defendant that male comparators and male subordinates earned more than she did. Defendant argues that Fredriksen cannot establish a retaliation claim because her complaints regarding compensation did not constitute a "protected activity," and because she cannot demonstrate a causal connection between her alleged complaints and her termination. For EPA and Title VII retaliation claims, Fredriksen must establish a prima facie case showing (1) that she engaged in a protected activity, (2) that the employer took an adverse employment action against her, and (3) that there was a causal connection between the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d. Cir. 2006).

With respect to the first element, engaging in a "protected activity," while "[f]iling a complaint with the EEOC or with the court is obviously a protected activity; so is an "informal" protest and a complaint to management." *See Moore*, 461 F.3d at 343. "For the protection to adhere, Plaintiff, although he 'need not prove the merits of the underlying ... complaint' must show that 'a reasonable person in [his] circumstances would have concluded that the employer was engaging in discriminatory conduct' in the complained-of action." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 n. 9 (3d Cir.2007) (citing *Moore*, 461 F.3d at 344). Plaintiff's complaint must also allege discrimination "on the basis of race, color, sex, religion, or

10

national origin"; a "general complaint of unfair treatment" is "facially invalid" and therefore not sufficient to invoke the protections of § 2000e–3(a). *Slagle*, 435 F.3d at 265–67. Defendant contends that no reasonable person could conclude that the Original Corporation engaged in discriminatory conduct before November 28, 2017 when it refused to adjust the compensation of all newly appointed officers of the Subsidiary Company (males and females alike) before the spinoff. Defendant also contends that Fredriksen's complaints about compensation fail, because she did not reference gender when she made her complaints. Fredriksen counters that, after she was appointed President of the Subsidiary Company in July 2017, she explicitly complained about gender-based pay discrepancies to Brock, Salvatori, and Powell. (ECF No. 45 at Ex. 4, pp. 67, 84, 85140, 141,143,144, 153, 165). Fredriksen further testified that Brock acknowledged the discrepancy in Fredriksen's pay relative to her male colleagues, calling it "embarrassing." (ECF No. 44 at ¶ 125). Therefore, the evidence establishes a question of fact for the jury. As such there is a jury question of whether a reasonable person in circumstances would have concluded that the Original Corporation was engaging in discriminatory conduct by paying Fredriksen differently on account of gender in violation of the EPA and Title VII. *LeBoon* 503 F.3d at 232 n. 9 (3d Cir.2007). Accordingly, a reasonable juror could find that Frederiksen engaged in a protected activity.

Courts have held that a subsequent employer may be held liable for retaliation against a current employee for engaging in protected activity at a past employer. *Sessom v. Home Depot, U.S.A., Inc.*, 2006 WL 3210484 (N.D. Miss. 2006) (citing *McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir.2001) and *Austin v. Norfolk Southern Corp.*, 158 Fed.Appx. 374 (3d Cir.2005)). Thus, presently, although Fredriksen made her complaints (i.e., the protected activity) while she was employed by Original Corporation, she made them to persons who also became employees

11

of Defendant. Therefore, a juror could conclude that Defendant is liable for retaliation if the elements are met. The second element is satisfied because Defendant terminated Fredriksen.

To establish the third element for retaliation claims, the plaintiff must prove a causal connection between her protected activity and her termination. The Third Circuit has recognized that a plaintiff may rely on a "broad array of evidence" to demonstrate a causal link between the plaintiff's protected activity and the adverse action taken against that plaintiff. *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), as amended (Aug. 28, 2007). In certain narrow circumstances, an "unusually suggestive" proximity in time between the protected activity and the adverse action may be sufficient, on its own, to establish the requisite causal connection. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir.1997); *see Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989) (discharge of plaintiff two days after filing EEOC complaint was found to be sufficient, under the circumstances, to establish causation). Also, "[t]he mere passage of time is not legally conclusive proof against retaliation." *Robinson v. Southeastern Pa. Transp. Auth.*, 982 F.2d 892, 894 (3d Cir.1993) (citation omitted); *see also Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir.1997). Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee or other types of circumstantial evidence, such as inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000).

Presently, Defendant argues that there exists no causal connection, given the passage of time between her complaints and her termination. Fredriksen testified that, before the November 28, 2017 spinoff and before they had any authority to terminate her, she complained to both Brock and Powell about the gender disparity in her wages. Fredriksen argues that the close timing, within six days of the November 28, 2017 spinoff and the beginning of her employment with Defendant, Brock and Powell, as CEO and Chairman of the Board of Directors of Defendant respectively voted to terminate Fredriksen at the Defendant's first Board Meeting (ECF No. 40-7), support a causal connection. Fredriksen argues that the causal connection is also demonstrated through Brock's pattern of antagonism towards her after the complaints. Fredriksen contends that Brock thereafter excluded her from meetings, assignments, and presentations. (ECF No. 44 at ¶¶ 150-153). In light of this evidence, there is a question of fact for the jury to decide. Therefore, as regards the issue of causation, Plaintiff has presented sufficient evidence to establish a jury question for the element of causation between Fredriksen's protected activity and her termination.

Based upon the above, Fredriksen has presented sufficient evidence to establish a question for the jury to determine a prima facie claim for retaliation. Next if the plaintiff can prevail on her prima facie case, then the burden shifts to the employer to establish a legitimate, nonretaliatory reason for the adverse employment action. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n. 2 (3d Cir. 1997). The Defendant's burden at this stage is relatively light: it is satisfied if the Defendant articulates any legitimate reason for the discharge; the Defendant need not prove that the articulated reason actually motivated the discharge. *Id.* at 920. "The defendant satisfies its burden of production, and rebuts the plaintiff's prima facie showing of discrimination, simply by introducing admissible evidence that, if taken as true, would permit a

finding that the challenged employment action was taken for legitimate, nondiscriminatory reasons." *Blackwell–Murray v. PNC Bank,* 963 F.Supp.2d 448, 461 (E.D. Pa. 2013).

Presently, as regards a legitimate non-retaliatory reason for Plaintiff's termination, Defendant argues that it terminated Fredriksen because it eliminated the position of President for financial reasons. Fredriksen contends that job elimination/financial concerns are insufficient reasons to articulate a legitimate non-discriminatory reason. Her citations for this contention, however, concern the pretext analysis. Rather, courts have held that reasons for position elimination and financial bases can serve as legitimate nonretaliatory reasons for termination. *See Wildi v. Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640, 668 (W.D. Pa. 2009); *Eshelman v. Magee-Womens Hosp. of Univ. of Pittsburgh Med. Ctr.*, No. 02:03CV1990, 2005 WL 2546445, at *6 (W.D. Pa. Oct. 11, 2005); *Chambers v. Metropolitan Prop. and Cas. Inc. Co.*, 2002 U.S. Dist. LEXIS 11075 (D. Minn. June 13, 2002); *Minton v. American Bankers Ins. Group, Inc.*, 2002 U.S. Dist. LEXIS 7539 (S.D. Fla. April 24, 2002). Brock testified that he proposed that Defendant needed to operate as a lean company and that he suggested to Powell that the President position was not necessary, and that its elimination would save money for Defendant. (ECF No. 39 at ¶¶ 88-90). Defendant's executive managers presented these proposals to the Defendant's Board, who then voted to eliminate the President position, terminate Fredriksen, and to name Brock as the combined CEO and President of the Defendant. *Id.* at ¶¶ 95-97. Based upon the evidence, Defendant has articulated a legitimate, non-retaliatory reason for terminating Fredriksen.

Next, for a pretext claim, if the burden of production is met by the defendant, the ultimate burden of persuasion shifts back to the plaintiff to prove "that the alleged reasons proffered by the defendant were pretextual and that the defendant intentionally discriminated against the

plaintiff." *Jalil v. Avdel Corp.*, 873 F.2d 701, 706 (3d Cir.1989) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). To survive summary judgment, the plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

> Under the first prong from *Fuentes*, a plaintiff must produce evidence to establish:
>
> weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons [such] that a reasonable factfinder could rationally find them "unworthy of credence" and hence infer that the proffered nondiscriminatory reason "did not actually motivate" the employer's action.

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir.1998). The district court must focus on the legitimate, nondiscriminatory reason offered by the employer. *Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 531 (3d Cir.1992). The court is neither permitted to get involved in the subjective business decisions of the employer, nor set its own employment standards for the employer, unless there is evidence of discrimination. *Id.* at 527.

Here, Fredriksen identifies several inconsistencies in Defendant's proffered legitimate reasons that it presents for terminating her. At the time she was terminated, Brock told Fredriksen that she was not fired for any performance issue. (ECF No. 39 at ¶ 169). However, in responding to the EEOC Charge of Discrimination, Defendant reported that Fredriksen's discharge was because of conflicting management styles. *Id.* at ¶ 179. During his deposition, Brock denied terminating Fredriksen because of her management style; however, he later testified that he did not feel like she would be a good team player. *Id.* at ¶¶ 15 and 171. Through this testimony, Fredriksen has raised an issue of fact that requires a jury's decision. A

reasonable juror could disbelieve the proffered reason for terminating Fredriksen, i.e. financial considerations for the new Defendant's operations did not actually motivate Defendant's decision. As such, a jury could find that Fredriksen has met the first prong under *Fuentes*, and therefore find pretext.

While this prong alone is sufficient to find pretext, the Court will also consider the second *Fuentes* prong in relation to pretext. A plaintiff may also survive summary judgment if he or she can demonstrate, through evidence of record, that "discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762. With respect to this prong, the United States Court of Appeals for the Third Circuit has stated:

> To show that discrimination was more likely than not a cause for the employer's action, the plaintiff must point to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that [the protected activity] was a motivating or determinative factor in the employment decision.

*Simpson*, 142 F.3d at 644–45 (emphasis added). The kinds of evidence that may be relied upon under this prong of the *Fuentes* analysis are: (1) whether the employer previously discriminated against the plaintiff, (2) whether the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, and (3) whether the employer has more favorably treated similarly situated non-protected class persons. Here, Fredriksen states that after her complaints about pay inequities, James Brock directed that she was to be excluded from presentations to investors while other male employees were permitted to attend the events. (ECF No. 44 at ¶¶ 151-156). Thus, evidence of Defendant's exclusion of Plaintiff in favor of other male employees is sufficient to give rise to a jury question as to the second prong of *Fuentes*.

16

Accordingly, a reasonable juror could find Defendant's proffered reasons are pretextual. Defendant's Motion for Summary Judgment, as regards the Plaintiff's retaliation claims in Counts II and IV of the Amended Complaint, is denied.

### D. TITLE VII CLAIM (COUNT III-Gender Discrimination)

Fredriksen claims that Defendant terminated her because of her gender as evidenced by Brock's animus towards her. Defendant denies that it terminated Fredriksen based upon gender, and asserts that it terminated her for financial reasons. To establish a prima facie case of gender discrimination, a plaintiff must establish that: (1) she is a member of a protected class; (2) that she was qualified for the position in question; (3) that she suffered an adverse employment action; and (4) retention by the employer of employees outside the protected class. *McNamara v. Susquehanna Cty.*, No. 3:17-cv-02182, 2018 WL 2183266, at *4 (M.D. Pa. May 11, 2018) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)); see also *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Defendant argues that Fredriksen's prima facie case fails because she cannot establish the fourth element for her claim, in that she has not produced sufficient evidence to show that she was treated less favorably than males at the time the President position was eliminated. The Third Circuit has held that plaintiffs, in reduction in force cases, must show that the retained employee and the plaintiff were "similarly situated." *Lepore v. Lanvision Sys., Inc.*, 113 F. App'x 449, 452 (3d Cir. 2004) (citing *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249-50 (3d Cir. 2002)). "In a reduction in force case, ... employees who are 'similarly situated' ... work in the same area [and] in approximately the same positions." *Id.* The Third Circuit has noted that "a plaintiff whose employment position is eliminated in a corporation reorganization or work force reduction carries a heavier burden in supporting charges of discrimination than does an employee

discharged for other reasons." *Hook v. Ernst & Young*, 28 F.3d 366, 375 (3d Cir. 1994). However, in other decisions the Third Circuit has held that when there is a reduction in force, the fourth element to establish a prima facie case is relaxed. *See In re Carnegie Ctr. Assocs.*, 129 F.3d 290, 294-95 (3d Cir. 1997)). In the reduction-of-force context, a plaintiff does not need to show that the retained employee and the plaintiff were similarly situated. *Id.* Rather, "plaintiff must simply proffer evidence that 'persons outside of the protected class were retained.' " *Id.* at 295); *see also Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999). Here, Fredriksen fulfills the relaxed standard because other male officers of Defendant were not terminated. (ECF No. 40-7). The parties do not dispute that Fredriksen meets the other three elements in that she was in a protected class, qualified for the position, and was terminated from the President position. Accordingly, a reasonable juror could find that Fredriksen has established a prima facie case of gender discrimination. As such, the burden shifts to Defendant to rebut the prima facie case.

For the defense to rebut the prima facie case of gender discrimination, the *McDonnell Douglas* standard, discussed above, applies. As the Court discussed above, Defendant has met its burden of production in articulating a legitimate non-discriminatory reason. As for pretext, given the gender-centric nature of the evidence, a reasonable juror could infer that gender was the "but for" cause of Defendant's adverse action, i.e. terminating Fredriksen. Therefore, a reasonable juror could find that Defendant's proffered reasons for terminating Fredriksen were pretextual. Accordingly, Defendant's Motion for Summary Judgment, as regards Fredriksen's termination, under Title VII, asserting a claim for gender discrimination at Count III, is denied.

## IV. Conclusion

The Court concludes that Defendant has no successor liability for any claims within Plaintiff's Amended Complaint, which may have arisen before November 28, 2017. Fredriksen did not establish that Defendant paid Fredriksen or her male comparators disparately; therefore, Fredriksen cannot sustain wage discrimination claims under the EPA or Title VII, Counts I and III. Therefore, Defendant's Motion for Summary Judgment is granted against Plaintiff on Count I and any Title VII-wage discrimination claim in Count III of the Amended Complaint. Finally, at the summary judgment stage, Fredriksen has sufficiently met her burden that a reasonable juror could find that she could recover against Defendant for retaliation claims under the EPA (Count II) and Title VII (Count IV) and for a Title VII gender discrimination claim (Count III). Accordingly, Defendants' Motion for Summary Judgment is denied as to retaliation claims in Counts II and IV and as to the Title VII gender discrimination claims in Count III. A separate Order will be entered consistent with this opinion.

BY THE COURT:

Marilyn J. Horan
United States District Judge